HONORABLE RONALD B. LEIGHTON

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| RICHARD LEE RYNEARSON, III,<br><br>Plaintiff,<br><br>v.<br><br>ROBERT FERGUSON, Attorney General of the State of Washington, and<br><br>TINA R. ROBINSON, Prosecuting Attorney for Kitsap County,<br><br>Defendants. | Case No. 3:17-cv-05531-RBL<br><br>**BRIEF OF *AMICI CURIAE* ELECTRONIC FRONTIER FOUNDATION AND AMERICAN CIVIL LIBERTIES UNION OF WASHINGTON IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION** |


Judith A. Endejan, WSBA #11016
GARVEY SCHUBERT BARER
1191 Second Avenue, 18th Floor
Seattle, WA 98101-2939
Tel: (206) 464-3939
Fax: (206) 464-0125
Email: jendejan@gsblaw.com

*Attorney for Amici Curiae Electronic Frontier Foundation and American Civil Liberties Union of Washington*

**DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER ENTITIES WITH A DIRECT FINANCIAL INTEREST IN LITIGATION**

Pursuant to Rule 26.1 of the Federal Rules of Appellate Procedure, *amici curiae* Electronic Frontier Foundation and American Civil Liberties Union of Washington state that they do not have a parent corporation and that no publicly held corporation owns 10% or more of the stock of *amici*.



GARVEY SCHUBERT BARER
A PARTNERSHIP OF PROFESSIONAL CORPORATIONS
eighteenth floor
1191 second avenue
seattle, washington 98101-2939
(206) 464-3939

## TABLE OF CONTENTS

DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER ENTITIES WITH A DIRECT FINANCIAL INTEREST IN LITIGATION....... i

TABLE OF CONTENTS....... ii

TABLE OF AUTHORITIES....... iii

I. INTEREST OF *AMICI*....... 1

II. INTRODUCTION....... 2

III. ARGUMENT....... 2

A. The Statute's restraint on Internet speech violates the First Amendment. ....... 2

1. The First Amendment protects "making an electronic communication."....... 3

2. The First Amendment protects online expression with intent to "embarrass."....... 3

3. The statute's other prohibitions are overbroad, online and off....... 5

4. The statute criminalizes anonymous and repeated speech, which is protected by the First Amendment....... 6

5. The statute is overbroad because it lacks any requirement of harm. ....... 8

B. Portions Of The Statute Also Violate The Due Process Clause Because They Are Vague....... 9

1. The term "repeated" is vague....... 9

2. The phrase "harass, intimidate, torment, or embarrass" is vague....... 10

C. Conduct criminalized by phone harassment statutes is qualitatively different from Internet-related speech. ....... 11

IV. CONCLUSION....... 12

CERTIFICATE OF SERVICE....... 13



GARVEY SCHUBERT BARER
A PARTNERSHIP OF PROFESSIONAL CORPORATIONS
eighteenth floor
1191 second avenue
seattle, washington 98101-2939
(206) 464-3939

**TABLE OF AUTHORITIES**

Cases

*Ashcroft v. ACLU*, 542 U.S. 656 (2004) ........ 3

*Boos v. Barry*, 485 U.S. 312 (1988) ........ 3

*Buckley v. American Constitutional Law Found., Inc.*, 525 U.S. 182 (1999) ........ 7

*City of Bellevue v. Lorang*, 992 P.2d 496 (Wash. 2000) ........ 10

*City of Chicago v. Morales*, 527 U.S. 41 (1999) ........ 9

*City of Seattle v. Huff*, 767 P.2d 572 (Wash. 1989) ........ 11

*Coates v. City of Cincinnati*, 402 U.S. 611 (1971) ........ 10

*Commonwealth v. Kwiatkowski*, 637 N.E.2d 854 (Mass. 1994) ........ 9

*Doe v. 2TheMart.com Inc.*, 140 F. Supp. 2d 1088 (W.D. Wash. 2001) ........ 7

*Doe v. Cahill*, 884 A.2d 451 (Del. 2005) ........ 7

*Doe v. Marion County*, 705 F.3d 694 (7th Cir. 2013) ........ 2

*Elonis v. United States*, 135 S. Ct. 2001 (2015) ........ 6

*Frisby v. Schultz*, 487 U.S. 474 (1988) ........ 11

*Hustler Magazine, Inc. v. Falwell*, 485 U.S. 46 (1988) ........ 3

*Hynes v. Borough of Oradell*, 425 U.S. 610 (1976) ........ 9

*KKK v. City of Erie*, 99 F. Supp. 2d 583 (W.D. Pa. 2000) ........ 5, 10



GARVEY SCHUBERT BARER
A PARTNERSHIP OF PROFESSIONAL CORPORATIONS
eighteenth floor
1191 second avenue
seattle, washington 98101-2939
(206) 464-3939

*Kolender v. Lawson*, 461 U.S. 352 (1983)........ 9

*McIntyre v. Ohio Elections Comm'n*, 514 U.S. 334 (1995)........ 7

*NAACP v. Claiborne Hardware Co.*, 458 U.S. 886 (1982)........ 3

*New York Times v. Sullivan*, 376 U.S. 254 (1964)........ 3

*Packingham v. North Carolina*, 137 S. Ct. 1730 (2017)........ 11

*People v. Marquan M.*, 19 N.E.3d 480 (N.Y. 2014)........ 2, 3, 5

*Reno v. ACLU*, 521 U.S. 844 (1997)........ *passim*

*Sable Commc'ns v. FCC*, 492 U.S. 115 (1989)........ 6

*State v. Alexander*, 888 P.2d 175 (Wash. Ct. App. 1995)........ 11

*State v. Alphonse*, 197 P.3d 1211 (Wash. Ct. App. 2008)........ 11

*State v. Bishop*, 787 S.E.2d 814 (N.C. 2016)........ 3, 5

*State v. Brobst*, 857 A.2d 1253 (N.H. 2004)........ 5

*State v. Bryan*, 910 P.2d 212 (Kan. 1996)........ 10

*State v. Dyson*, 872 P.2d 1115 (Wash. Ct. App. 1994)........ 11

*Survivors Network of Those Abused by Priests, Inc. v. Joyce*, 779 F.3d 785 (8th Cir. 2015)........ 7

*Talley v. California*, 362 U.S. 60 (1960)........ 7

*Terminiello v. City of Chicago*, 337 U.S 1 (1949)........ 4

*United States v. Alvarez*, 567 U.S. 709 (2012)........ 8



GARVEY SCHUBERT BARER
A PARTNERSHIP OF PROFESSIONAL CORPORATIONS
*eighteenth floor*
*1191 second avenue*
*seattle, washington 98101-2939*
*(206) 464-3939*

*United States v. Popa*, 187 F.3d 672 (D.C. Cir. 1999) .......... 5

*United States v. Stevens*, 559 U.S. 460 (2010) .......... 2

*Virginia v. Black*, 538 U.S. 343 (2003) .......... 6

*Watts v. United States*, 394 U.S. 705 (1969) .......... 6

Constitutional Provisions

U.S. Const. amend. I .......... *passim*

U.S. Const. amend. XIV .......... 9, 12

**Statutes**

Washington Revised Code RCW 9.61.260 .......... *passim*



GARVEY SCHUBERT BARER
A PARTNERSHIP OF PROFESSIONAL CORPORATIONS
eighteenth floor
1191 second avenue
seattle, washington 98101-2939
(206) 464-3939

## I. INTEREST OF *AMICI*[1]

The **Electronic Frontier Foundation** ("EFF") is a San Francisco-based, non-profit, member-supported digital rights organization. Focusing on the intersection of civil liberties and technology, EFF actively encourages industry, government, and the courts to support free expression, privacy, and openness in the information society. Founded in 1990, EFF has over 38,000 dues-paying members nationwide. EFF publishes a comprehensive archive of digital civil liberties information at www.eff.org. EFF serves as counsel or amicus curiae in many cases addressing free speech online. *See e.g., City of Vancouver v. Edwards*, No. 18998V (Clark County Superior Court 2012); *Backpage.com v. McKenna*, 2:12-cv-00954-RSM (W.D. Wa. 2012); *United States v. Cassidy*, 814 F. Supp. 2d 574, 585-86 (D. Md. 2011); *Savage v. Council of American-Islamic Relations, Inc.*, No. 07-cv-06076-SI (N.D. Cal. 2007).

**American Civil Liberties Union of Washington** ("ACLU-WA") is a statewide, nonpartisan, nonprofit organization, with over 75,000 members and supporters, that is dedicated to the preservation of civil liberties including the right to free speech. The ACLU-WA strongly opposes laws and government action that infringe on the free exchange of ideas or that unconstitutionally restrict protected expression. It has advocated for free speech and the First Amendment directly, and as amicus curiae, at all levels of the state and federal court systems. *See, e.g., Berger v. City of Seattle*, 569 F.3d 1029, 1034 (9th Cir. 2009).

[1] No party or party's counsel participated in the writing of the brief in whole or in part. No party, party's counsel or other person contributed money to fund the preparation or submission of the brief.



GARVEY SCHUBERT BARER
A PARTNERSHIP OF PROFESSIONAL CORPORATIONS
eighteenth floor
1191 second avenue
seattle, washington 98101-2939
(206) 464-3939

## II. INTRODUCTION

Amici curiae EFF and ACLU-WA support Plaintiff's motion for a preliminary injunction to enjoin enforcement of RCW 9.61.260(1)(b) because the First Amendment clearly, and fully applies to protect the Internet speech and other electronic communications impacted by this cyberstalking statute.

Plaintiff properly attacks subsection (1)(b) of RCW 9.61.260, as unconstitutionally vague and overbroad, lacking the precision the First Amendment requires when government regulates speech on the Internet. *Reno v. ACLU*, 521 U.S. 844, 874 (1997).

RCW 9.61.260(1)(b) criminalizes everyday uses of electronic communications such as a parents' posting of embarrassing photographs of their children on Facebook, or tweeted photos of ugly shirts and bad haircuts by a classmate before a 25-year class re-union.

Plaintiff is correct. Subsection (1)(b) of the cyberstalking statute is unconstitutional.

## III. ARGUMENT

### A. The Statute's restraint on Internet speech violates the First Amendment.

Under the overbreadth doctrine, a statute violates the First Amendment on its face when "a substantial number of its applications are unconstitutional, judged in relation to the statute's plainly legitimate sweep." *United States v. Stevens*, 559 U.S. 460, 473 (2010). The First Amendment's facial overbreadth doctrine applies fully to Internet speech and other electronic communications. *See, e.g., id.* (striking down a ban on creating and disseminating video depictions of animal cruelty); *Reno*, 521 U.S. 844 (striking down a ban on indecency on the Internet); *Doe v. Marion County*, 705 F.3d 694 (7th Cir. 2013) (striking down a ban on Internet social media use by registered sex offenders); *People v. Marquan M.*, 19 N.E.3d 480 (N.Y. 2014) (striking down a ban on harassment on the Internet).

Here, a substantial amount of constitutionally protected speech is swept up in the statute's facially overbroad prohibitions.



GARVEY SCHUBERT BARER
A PARTNERSHIP OF PROFESSIONAL CORPORATIONS
eighteenth floor
1191 second avenue
seattle, washington 98101-2939
(206) 464-3939

### 1. *The First Amendment protects "making an electronic communication."*

The Washington cyberstalking statute is subject to First Amendment scrutiny because the core activity that it restrains is "mak[ing] an electronic communication" to a targeted person or any "third party." RCW 9.61.260(1). "Electronic communication" is broadly defined to cover any digital transmission of information, including "internet-based communications." RCW 9.61.260(5). Thus, the statute applies to any conceivable form of modern electronic communications, including websites, blogs, social media, emails, instant messages, etc. Also, it applies both to one-on-one communications (such as email), communications to a closed list of people (such as Facebook), and communications available to everyone (such as a website).

It is well-settled that restraints on Internet speech may violate the First Amendment. *See, e.g., Ashcroft v. ACLU*, 542 U.S. 656 (2004) (preliminarily enjoining the Child Online Protection Act); *State v. Bishop*, 787 S.E.2d 814 (N.C. 2016) (striking down a North Carolina cyberbullying statute). *See also, e.g., Reno*, 521 U.S. 844; *Doe*, 705 F.3d 694; *Marquan M.*, 19 N.E.3d 480.

### 2. *The First Amendment protects online expression with intent to "embarrass."*

The core activity restrained by the Washington cyberstalking statute—making an electronic communication—enjoys the fullest First Amendment protection, even if such a communication is sent with "intent to . . . embarrass any other person." RCW 9.61.260(1). A speaker's intent to embarrass someone else does not diminish the First Amendment's protection of electronic communication. Indeed, the First Amendment protects the right to express messages that are intended to cause embarrassment, insult, and outrage. *See, e.g., Boos v. Barry*, 485 U.S. 312, 322 (1988) ("[I]n public debate our own citizens must tolerate insulting, and even outrageous, speech in order to provide adequate breathing space to the freedoms protected by the First Amendment."); *Hustler Magazine, Inc. v. Falwell*, 485 U.S. 46, 55 (1988) (emphasizing the Court's "longstanding refusal to allow damages to be awarded because the speech in question may have an adverse emotional impact"); *NAACP v. Claiborne Hardware Co.*, 458 U.S. 886, 910 (1982) ("Speech does not lose its protected character . . . simply because it may embarrass others or coerce them into action."); *New York Times v. Sullivan*, 376 U.S. 254, 270 (1964) ("[D]ebate



GARVEY SCHUBERT BARER
A PARTNERSHIP OF PROFESSIONAL CORPORATIONS
eighteenth floor
1191 second avenue
seattle, washington 98101-2939
(206) 464-3939

on public issues should be uninhibited, robust, and wide-open, and it may well include vehement, caustic, and sometimes unpleasantly sharp attacks on government and public officials”). The First Amendment “may indeed best serve its high purpose when it induces a condition of unrest, creates dissatisfaction with conditions as they are, or even stirs people to anger.” *Terminiello v. City of Chicago*, 337 U.S 1, 4 (1949).

Nothing in First Amendment case law distinguishes First Amendment protection on the basis of the mode of communication, i.e., online. Such protection exists to cover the nature of the communication. Hence, the First Amendment should protect online speech intended to cause “embarrassment” to the same extent as embarrassing speech distributed via broadcast or the press, particularly because embarrassment caused by online speech has been become quite common. Examples of online or electronic speech that the statute criminalizes blatantly illustrate why it violates the First Amendment because it is facially overbroad:

- A newspaper website editorial argues that an elected public official should be removed from office because of drunken behavior at a Little League game.
- A government reform activist publishes on YouTube a video recording of a government employee stuffing her purse with office pens, and texts the message to her boss, to embarrass the wrongdoer and the boss, and thus encourage reform.
- A losing election challenger posts on his website a list of the incumbent’s past domestic violence arrests.
- A mother posts on Facebook embarrassing anecdotes and photos each year about her children, including stories the children might not want shared to commemorate the children’s birthdays.
- A college friend publishes embarrassing photos of his former classmates—the out-of-style hair and clothing!
- A fellow law partner embarrasses a colleague by posting an excessively laudatory message on the firm’s web-site about a big “win.”

Clearly, the “embarrass” provision of the statute sweeps too broadly, encompassing



GARVEY SCHUBERT BARER
A PARTNERSHIP OF PROFESSIONAL CORPORATIONS
eighteenth floor
1191 second avenue
seattle, washington 98101-2939
(206) 464-3939

protected speech within its net and this provision should be stricken. *Reno*, 521 U.S. 844

***3. The statute's other prohibitions are overbroad, online and off.***

The statute also bans Internet communications sent with intent to "harass, intimidate, [or] torment" someone else. RCW 9.61.260(1). This speech restraint, also facially overbroad, violates the First Amendment.

Courts have struck down online harassment statutes with similar words as facially unconstitutional. *Bishop*, 787 S.E.2d at 821 (striking down a ban on posting a minor's private sexual information on the Internet with intent "to intimidate or torment"); *People v. Marquan M.*, 19 N.E.3d 480 (N.Y. 2014) (striking down a ban on digital posts with "intent to harass, annoy, threaten, abuse, taunt, intimidate, torment, humiliate, or otherwise inflict significant emotional harm on another person").

Likewise, phone harassment statutes that contain similar words have been stricken as facially overbroad. *State v. Brobst*, 857 A.2d 1253 (N.H. 2004) (striking down a ban on phone calls with intent to "annoy or alarm"). S*ee also United States v. Popa*, 187 F.3d 672, 678 (D.C. Cir. 1999) (holding that a ban on anonymous phone calls with intent to "annoy, abuse, threaten, or harass" was unconstitutional as applied to a person who repeatedly called a government officer to complain about the government).

Speech bans containing language similar to that in RCW 9.61.260(1)(b) simply do not pass constitutional muster in any circumstance. For instance in *KKK v. City of Erie*, 99 F. Supp. 2d 583, 591-92 (W.D. Pa. 2000), the court struck down as facially overbroad a ban on wearing a mask with intent "to intimidate, threaten, abuse or harass." The court reasoned that there were too many ways to apply this ban to constitutionally protected messages:



GARVEY SCHUBERT BARER
A PARTNERSHIP OF PROFESSIONAL CORPORATIONS
*eighteenth floor*
*1191 second avenue*
*seattle, washington 98101-2939*
*(206) 464-3939*

> A statement, for example, that the white race is supreme and will rise again to dominate all other races may seem intimidating, or even threatening, particularly when advocated by a large group of demonstrators showing solidarity. Advocacy for a return to segregation may likewise be intimidating, particularly if accompanied by rough language. A diatribe against a local official who is an ethnic minority, or a homosexual, may be considered "abuse."

*Id.*

***4. The statute criminalizes anonymous and repeated speech, which is protected by the First Amendment.***

The statute bans Internet communications, with the requisite state-of-mind, if they are sent "anonymously or repeatedly." RCW 9.61.260(1)(b). But the First Amendment protects anonymous and repeated communications.[2]

Online communications protected by the First Amendment are no less protected when posted anonymously. The statute makes it a crime to make a single electronic communication, if one does so "anonymously," and with intent to embarrass (or harass, intimidate, or torment) another person. RCW 9.61.260(1)(b).

Anonymous speech[3] through electronic communications is common across the Internet and it allows for valuable, protected discussions to occur. Internet anonymity is critical for

---

[2] Plaintiff does not at this time challenge the statute's ban on "lewd, lascivious, indecent, or obscene" words or images. RCW 9.61.260(1)(a). However, *amici* note that the First Amendment protects all but "obscene" communication. *Sable Commc'ns v. FCC*, 492 U.S. 115, 126 (1989). Thus, the prohibition involving "lewd, lascivious, [or] indecent" communication in the statute may also be constitutionally defective. The statute's ban on threats, RCW 9.61.260(1)(c), would violate the First Amendment as applied to speech that is not a "true threat." At a minimum, the speaker of an unprotected true threat must have a subjective intent "to communicate a serious expression of an intent to commit an act of unlawful violence to a particular individual or group of individuals." *Virginia v. Black*, 538 U.S. 343, 359 (2003). *See also Elonis v. United States*, 135 S. Ct. 2001, 2012 (2015) (interpreting a federal threat statute to require a subjective "purpose of issuing a threat" or "knowledge that the communication will be viewed as a threat"). *See, e.g.*, *Watts v. United States*, 394 U.S. 705 (1969) (protecting the statement, at a protest, that "if they ever make me carry a rifle the first man I want to get in my sights is L.B.J.").

[3] Anonymity can be created through use of pseudonyms. Myriad communication platforms, like Twitter, Tumblr, and Reddit, invite speakers to use pseudonyms to participate in public forums and private conversations. Email and messaging providers also typically allow speakers to create accounts and send electronic communications using pseudonyms.



GARVEY SCHUBERT BARER
A PARTNERSHIP OF PROFESSIONAL CORPORATIONS
eighteenth floor
1191 second avenue
seattle, washington 98101-2939
(206) 464-3939

activists and others who could face harm and intimidation for publicly criticizing their powerful opponents.

The First Amendment protects the right to communicate anonymously. *See, e.g., Buckley v. American Constitutional Law Found., Inc.*, 525 U.S. 182 (1999) (striking down a ban on anonymous solicitation of ballot access signatures); *McIntyre v. Ohio Elections Comm'n*, 514 U.S. 334 (1995) (striking down a ban on anonymous leafleting designed to influence voters in an election); *Talley v. California*, 362 U.S. 60 (1960) (striking down a ban on any anonymous leafleting). The Supreme Court has explained:

> Under our Constitution, anonymous pamphleteering is not a pernicious, fraudulent practice, but an honorable tradition of advocacy and of dissent. Anonymity is a shield from the tyranny of the majority. . . . It thus exemplifies the purpose behind the Bill of Rights, and of the First Amendment in particular: to protect unpopular individuals from retaliation—and their ideas from suppression—at the hand of an intolerant society.

*McIntyre*, 514 U.S. at 357. *See also id.* at 341-42 (emphasizing the use of anonymous speech by the founders of the American republic).

The First Amendment right to communicate anonymously extends to the Internet. *See, e.g., Doe v. 2TheMart.com Inc.*, 140 F. Supp. 2d 1088, 1092 (W.D. Wash. 2001); *Doe v. Cahill*, 884 A.2d 451, 456 (Del. 2005). "Internet anonymity facilitates the rich, diverse, and far ranging exchange of ideas. The ability to speak one's mind on the Internet without the burden of the other party knowing all the facts about one's identity can foster open communication and robust debate." *2TheMart.com Inc.*, 140 F. Supp. 2d at 1092.

The statute also criminalizes electronic communication made "repeatedly" and with intent to embarrass (or harass, intimidate, or torment). RCW 9.61.260(1)(b). But speech does not lose its First Amendment protection, online or offline, merely because of its repetition. *See, e.g., Survivors Network of Those Abused by Priests, Inc. v. Joyce*, 779 F.3d 785 (8th Cir. 2015) (in a case brought by a group that regularly protested outside of churches, striking down a ban on such protests).



GARVEY SCHUBERT BARER
A PARTNERSHIP OF PROFESSIONAL CORPORATIONS
eighteenth floor
1191 second avenue
seattle, washington 98101-2939
(206) 464-3939

There is no compelling state interest in banning repeated electronic communications, which are commonplace in an electronic environment, such as duplicate e-mail messages. Moreover, the recipients of unwanted messages typically have simple tools at their disposal to block, delete, or ignore repeated communications that are unwanted, without ever viewing the content of the communication itself.

***5. The statute is overbroad because it lacks any requirement of harm.***

The statute's facial overbreadth is aggravated by the absence of the element of harm to the subject of the speech or to anyone else.

When a law burdens speech, government must "demonstrate that the recited harms are real, not merely conjectural, and that the regulation will in fact alleviate these harms in a direct and material way." *Turner Broad. Sys., Inc. v. FCC*, 512 U.S. 622, 664 (1994) (plurality). Without a demonstration of harm, restraint on speech is not narrowly tailored. *See also United States v. Alvarez*, 567 U.S. 709, 732-37 (2012) (Breyer, J., concurring in the judgment) (distinguishing the unconstitutional Stolen Valor Act, which did not require proof of actual or likely harm, from constitutional limits on false speech, which do).

Here, the forbidden electronic communication need not cause any actual harm, or even be seen by the targeted person. Nor does the statute require any proof of any plausible possibility that the electronic communication might have caused harm to a reasonable person. Because there are myriad applications of the statute where "the recited harms" are not "real," *Turner*, 512 U.S. at 664, the statute is facially overbroad.[4]

---

[4] A limiting construction cannot save the statute. At its core, the statute prohibits what the First Amendment protects: Internet communication that is intended to embarrass, if sent in a manner that is anonymous, repeated, or indecent. *See Reno*, 521 U.S. at 884 (limiting constructions are allowed only if the statute is "readily susceptible" to such construction, and courts cannot "rewrite" the statute).



GARVEY SCHUBERT BARER
A PARTNERSHIP OF PROFESSIONAL CORPORATIONS
eighteenth floor
1191 second avenue
seattle, washington 98101-2939
(206) 464-3939

## B. Portions Of The Statute Also Violate The Due Process Clause Because They Are Vague.

A criminal statute that is vague violates the Due Process Clause of the Fourteenth Amendment. The vagueness doctrine applies with "particular force" to laws that restrain speech. *Hynes v. Borough of Oradell*, 425 U.S. 610, 620 (1976). "[T]he void-for-vagueness doctrine requires that a penal statute define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement." *Kolender v. Lawson*, 461 U.S. 352, 357 (1983). *See also City of Chicago v. Morales*, 527 U.S. 41, 60 (1999) (criminal statutes must "establish minimal guidelines to govern law enforcement").

### *1. The term "repeated" is vague.*

The statutory term "repeated," RCW 9.61.260(1)(b), is vague as applied to online communications.[5] Because online communications, such as messaging and social media interactions, tend to resemble real-time oral conversations rather than time-delayed written correspondence, it is unclear when an offending communication will be considered "repeated." Consider three common online scenarios. First, some electronic communicators may send multiple short transmissions in quick succession (such as "hello" followed by "how are you"). Second, some electronic communicators correspond via multiple transmissions on both sides in quick succession (such as "hello", "hello yourself", "how are you", and "ok"). Third, a sender might transmit a message to one person, and then quickly forward it to a second person. It is possible for any of the foregoing to be considered "repeated" communications due to the imprecision of the meaning of "repeated," making the communicators vulnerable to prosecution under RCW 9.61.260(1)(b).

---

[5] The word "repeatedly" is also unconstitutionally vague in the context of offline harassment statutes. *Commonwealth v. Kwiatkowski*, 637 N.E.2d 854 (Mass. 1994).



GARVEY SCHUBERT BARER
A PARTNERSHIP OF PROFESSIONAL CORPORATIONS
eighteenth floor
1191 second avenue
seattle, washington 98101-2939
(206) 464-3939

***2. The phrase "harass, intimidate, torment, or embarrass" is vague.***

The terms "harass, intimidate, torment, or embarrass," RCW 9.61.260(1)(b), are also unconstitutionally vague, particularly in the context of Internet speech. A person who communicates on social media and other Internet channels often does not know who will receive their messages, and whether the recipients are susceptible to embarrassment, intimidation, torment, or harassment.

For each of these statutory terms, the application of the statute will turn on the unpredictable effect of words on people with varying sensibilities. In *KKK*, the court on vagueness grounds struck down a ban on wearing a mask with intent to intimidate, threaten, abuse, or harass. The court explained: "To some extent, the speaker's liability is potentially defined by the reaction or sensibilities of the listener," and "what is 'intimidating or threatening' to one person may not be to another." 99 F. Supp. 2d at 592.

Likewise, in *State v. Bryan*, 910 P.2d 212 (Kan. 1996), the court struck down as unconstitutionally vague a statute against "following" where doing so "seriously alarms, annoys or harasses." The court reasoned: "In the absence of an objective standard, the terms 'annoys,' 'alarms,' and harasses' subject the defendant to the particular sensibilities of the individual victim. Different persons have different sensibilities." *Id.* at 220. *See also Coates v. City of Cincinnati*, 402 U.S. 611 (1971) (striking down a ban on "annoying" loitering); *City of Bellevue v. Lorang*, 140 Wn.2d 19, 992 P.2d 496, (2000) (striking down a ban on phone calls lacking a "legitimate" purpose).

The nature of the Internet, and social media postings in particular, exacerbate this forbidden unpredictability. In *KKK* and *Bryan*, the speakers could not predict the impact of their speech on the finite and knowable set of people that they physically encountered. On the Internet, speakers simply cannot predict the impact of their speech on the infinite and unknowable set of people that might come across their speech in cyberspace.



GARVEY SCHUBERT BARER
A PARTNERSHIP OF PROFESSIONAL CORPORATIONS
*eighteenth floor*
*1191 second avenue*
*seattle, washington 98101-2939*
*(206) 464-3939*

### C. Conduct criminalized by phone harassment statutes is qualitatively different from Internet-related speech.

Internet communications are materially different than phone communications. Thus, while Washington courts have upheld telephone harassment and threat statutes against overbreadth and vagueness challenges, the Washington cyberstalking statute addresses fundamentally different conduct. *See State v. Alphonse*, 147 Wn. App. 891, 197 P.3d 1211 (2008); *State v. Alexander*, 888 P.2d 175 (1995); *State v. Dyson*, 74 Wn. App. 237, 872 P.2d 1115 (Ct. App. 1994); *City of Seattle v. Huff*, 111 Wn.2d 923, 767 P.2d 572 (1989). These courts relied on distinctively invasive features of phone calls that are not shared by Internet communications. *See Alexander*, 888 P.2d at 180 ("The gravamen of the offense [of telephone harassment] is the thrusting of an offensive and unwanted communication upon one who is unable to ignore it."); *id.* at 179 ("[A] ringing telephone is an imperative which must be obeyed with a prompt answer."); *Dyson*, 872 P.2d at 1120 ("[T]he telephone . . . presents to some people a unique instrument through which to harass and abuse others."). Moreover, "the recipient of a telephone call does not know who is calling, and once the telephone has been answered, the victim is at the mercy of the caller until the call can be terminated by hanging up." *Alexander*, 888 P.2 at 179. Finally, "telephone communication occurs in a nonpublic forum." *Id. Accord Huff*, 767 P.2d at 574.

Unlike a phone call that is directed to one person, a Facebook update, a Tweet, and a blog post are directed to many people. Where a phone call "occurs in a nonpublic forum," *Alexander*, 888 P.2 at 179, the "vast democratic forums of the Internet" are today "the most important places (in a spatial sense) for the exchange of views." *Packingham v. North Carolina*, 137 S. Ct. 1730, 1735 (2017). *Cf. Frisby v. Schultz*, 487 U.S. 474, 486 (1988) (distinguishing a protest directed at a specific person's home, which is not protected, from a protest directed at all of the homes in a neighborhood, which is protected). Moreover, while a phone call can "thrust[] an offensive and unwanted communication upon one who is unable to ignore it," *Alexander*, 888 P.2 at 180, people have tools of choice to avoid unwanted electronic communications.



GARVEY SCHUBERT BARER
A PARTNERSHIP OF PROFESSIONAL CORPORATIONS
eighteenth floor
1191 second avenue
seattle, washington 98101-2939
(206) 464-3939

Even one-to-one digital communications, like many emails and text messages, lack key features that might justify telephone harassment statutes. Recipients of electronic communications, unlike recipients of phone calls, can more easily avoid unwanted messages. No ring requires an immediate response; email recipients can delay review at their discretion. There is no risk that a recipient will accidentally speak to a person they are avoiding; email recipients can decide which messages to delete without reading their contents. *Cf. Reno*, 521 U.S. at 869 ("the Internet is not as 'invasive' as radio or television," because it does not "'invade' an individual's home or appear on one's computer screen unbidden").

## IV. CONCLUSION

For the reasons above, *amici* Electronic Frontier Foundation and American Civil Liberties Foundation of Washington respectfully request that this Court grant Plaintiff's motion for preliminary injunction, and strike down RCW 9.61.260(1)(b) in Washington's cyberstalking statute as facially overbroad in violation of the First Amendment and vague in violation of the Fourteenth Amendment.

Dated this 21st day of August, 2017.

Respectfully Submitted,

GARVEY SCHUBERT BARER

By: *s/Judith A. Endejan*
Judith A. Endejan, WSBA #11016
GARVEY SCHUBERT BARER
1191 Second Avenue, 18th Floor
Seattle, WA 98101-2939
Tel: (206) 464-3939
Fax: (206) 464-0125
Email: jendejan@gsblaw.com

*Attorney for Amici Curiae*
*Electronic Frontier Foundation and*
*American Civil Liberties Union of Washington*

## CERTIFICATE OF SERVICE

I hereby certify that on this date I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will automatically send notification of such filing to those attorneys of record registered on the CM/ECF system.

DATED this 21st day of August, 2017, at Seattle, Washington.

*s/Adina Davis*
Adina Davis

GSB:8886692.1



GARVEY SCHUBERT BARER
A PARTNERSHIP OF PROFESSIONAL CORPORATIONS
eighteenth floor
1191 second avenue
seattle, washington 98101-2939
(206) 464-3939