UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF WASHINGTON AT TACOMA

_____

RICHARD L. RYNEARSON, III,       )
                                 )
                                 )
            Plaintiff,           )
                                 )
v.                               ) 3:17-CV-05531
                                 )
ROBERT FERGUSON, Attorney        )
General of the State of          )
Washington,                      ) September 22, 2017
                                 )
and,                             )
                                 )
TINA R. ROBINSON,                )
Prosecuting Attorney for         )
Kitsap County,                   )
                                 )
            Defendants.          )

_____

VERBATIM REPORT OF PROCEEDINGS
BEFORE THE HONORABLE RONALD B. LEIGHTON
UNITED STATES DISTRICT JUDGE
_____

PRELIMINARY INJUNCTION HEARING

1

2                           APPEARANCES:

3

4

5    For the Plaintiff:        GARRETT HEILMAN
                               Focal PLLC
6                              900 First Avenue South
                               Suite 201
7                              Seattle, Washington 98134

8                              EUGENE VOLKH
                               UCLA School of Law
9                              405 Hilgard Avenue
                               Los Angeles, California 90095
10

11                             VENKAT BALASUBRAMANI
                               Focal PLLC
12                             900 First Avenue South
                               Suite 201
13                             Seattle, Washington 90095

14
     For the Defendant         DARWIN P. ROBERTS
15   Robert Ferguson:          Attorney General's Office
                               800 Fifth Avenue
16                             Suite 2000
                               Seattle, Washington 98134
17
     For the Defendant         IONE S. GEORGE
18   Tina R. Robinson:         Kitsap County Prosecutor's Office
                               614 Division Street
19                             MS-35A
                               Port Orchard, Washington 98366
20

21

22

23

24

25

MORNING SESSION

SEPTEMBER 22, 2017

1

2

3

4    THE COURT:  Good morning.

00:09:43   5    THE CLERK:  Rynearson versus Ferguson, C17-5531RBL,

00:09:49   6    Counsel, please make an appearance for the record.

00:09:52   7    MR. VOLOKH:  Eugene Volokh representing Rynearson.

00:09:57   8    THE COURT:  Anyone over there?

00:09:58   9    MR. BALASUBRAMANI:  Mr. Balasubramani for Rynearson.

00:10:04  10    MR. HEILMAN: Garrett Heilman for Plaintiff Rynearson.

00:10:07  11    MR. ROBERTS:  Darwin Roberts for the Office of

00:10:11  12 Attorney General.

00:10:13  13    MS. GEORGE:  Ione George, Kitsap County Prosecutor's

00:10:18  14 Office.

00:10:18  15    THE COURT:  This is on the motion for preliminary

00:10:31  16 injunction filed by plaintiff.  I have reviewed all of the

00:10:34  17 memorandum.  I have reviewed the declarations, the Findings

00:10:46  18 of Fact and Conclusions of Law.

00:10:47  19        Given the history of the dispute, as painful as that

00:10:53  20 is, I am focused on the constitutionality issue.  I know that

00:11:09  21 the Attorney General has arguments ex rel Younger, Young,

00:11:16  22 Younger abstention, collateral bar, all that.  You can weave

00:11:23  23 that into your argument.  I am most interested in the

00:11:28  24 substantive issue on the constitutionality of the statute.

00:11:34  25 That is just where I am thinking.

00:11:38 1       Mr. Volokh, if you are going to be the spokesman, you

00:11:42 2   are up.

00:11:43 3       MR. VOLOKH:  All right.  Your Honor, thank you very

00:11:48 4   much.

00:11:48 5       So the relevant statute provides in relevant part

00:11:53 6   that it is a crime to anonymously or repeatedly communicate

00:11:57 7   electronically to a third party, could be the public, could

00:12:01 8   be somebody else, with the intent to, among other things,

00:12:04 9   harass, torment or embarrass any person.  We think that

00:12:09 10  cannot be constitutional.

00:12:10 11      If you think about much of what goes on these days

00:12:13 12  during the election, could be Candidate Trump might have

00:12:18 13  been, under this statute, guilty of cyberstalking

00:12:20 14  Secretary Clinton and vice versa.  We think even as to

00:12:23 15  matters of purely private concern, the statute is

00:12:27 16  unconstitutional and overbroad.  For example, if somebody

00:12:30 17  posts something online about how she broke up with her

00:12:33 18  boyfriend because he cheated on her, and she wants him to

00:12:35 19  feel embarrassed for how badly he treated her, but the

00:12:40 20  statute is not limited to matters of private concern, applies

00:12:44 21  to speech about --

00:12:50 22      THE COURT:  Can you keep up with him?

00:12:50 23      MR. VOLOKH:  My students have remarked the same in

00:12:54 24  class.

00:12:55 25    The statute equally applies to public figures and matters

00:12:59 1  of public concern.  To give one example from the case law,

00:13:02 2  <u>Hustler vs Falwell</u>, that almost certainly was intended to

00:13:06 3  embarrass and torment Jerry Falwell.  It wasn't online.

00:13:11 4  There was no online then. It was only one issue.  Imagine if

00:13:14 5  it had been posted twice.  That, too, would have been --

00:13:17 6  would have been covered by the statute, and that shows the

00:13:21 7  statute is substantially overbroad.

00:13:23 8      In the First Amendment substantial overbreadth

00:13:28 9  challenge, all we need to show is it applies to a substantial

00:13:30 10 range of constitutionally protected behavior.  It may have a

00:13:35 11 legitimate scope, for example, as to threatening statements,

00:13:39 12 statements that are so intimidating as to be threatening.

00:13:42 13 True threats, we do not object to its application there or to

00:13:45 14 the word "intimidate" there.

00:13:47 15    The statute, we think we have shown, is substantially

00:13:52 16 overbroad because it covers a substantial range of speech.

00:13:55 17    Your Honor, I would be happy to go on, but I prefer to

00:14:00 18 answer any questions you have about this or about some of the

00:14:03 19 procedural issues in this case.

00:14:05 20    THE COURT:  I have questions about the overbreadth.

00:14:11 21 We can do this in the round, and the defense can make their

00:14:15 22 arguments and you can get back up.  It is a serious issue

00:14:24 23 about an innate argument.  The substance of this case is, the

00:14:40 24 social media is painfully, painfully absurd.  What we are

00:14:59 25 doing in our society with these rants from people who have

00:15:07  1  too much time on their hands and overactive fingers is tough,

00:15:16  2  tough to do.  I have known you, and I have observed you in

00:15:24  3  the CACM Committee with your requests for access to PACER and

00:15:30  4  all that stuff, and I respect so much your work and that of

00:15:42  5  Mr. Roberts and Ms. Ione.  It is a precious right.  We have

00:15:54  6  to tread lightly on the contours of that right, but reading

00:16:13  7  the ramp up to the cyberstalking allegation is just painful,

00:16:30  8  painful.

00:16:31  9      I want to hear from Mr. Roberts and Ms. Ione, and then we

00:16:36 10  will have you back out.

00:16:38 11          Your point is that it is just vague, overly broad,

00:16:46 12  and it is not enforceable as constitutional.

00:16:51 13          I'll hear from Mr. Roberts.

00:16:53 14          MR. VOLOKH:  Thank you.

00:16:56 15          MR. ROBERTS:  Thank you, Your Honor.

00:16:58 16          With great respect to the Court and your interest in

00:17:01 17  the constitutionality issues, I feel like I would be remiss

00:17:05 18  on behalf of my client if --

00:17:07 19          THE COURT:  You spent 80 percent of your brief on

00:17:12 20  those issues of why we shouldn't decide this.

00:17:17 21          MR. ROBERTS:  Not just why you shouldn't decide this,

00:17:19 22  but there is no jurisdiction over the Attorney General.  In

00:17:25 23  particular, the Ex parte Young argument.  If what they are

00:17:31 24  requesting is an injunction against the Attorney General

00:17:34 25  enforcing the statute, they cannot get that.  We lack

00:17:37 1    jurisdiction to enforce it. Our jurisdiction would depend on

00:17:42 2    contingent future events, and under the line of Ninth Circuit

00:17:46 3    cases we cited, the Southern Pacific case, the Van de Kamp

00:17:49 4    case, it is just not there. On that grounds, the Attorney

00:17:53 5    General should be out.

00:17:56 6          THE COURT: How about Planned Parenthood?

00:17:59 7          MR. ROBERTS: Planned Parenthood -- I realize this

00:18:02 8    came up late in the briefing, that's why I prominently cited

00:18:06 9    Planned Parenthood because I didn't want there to be any

00:18:09 10    suggestion I was hiding negative authority.

00:18:11 11         Planned Parenthood is distinguishable because the

00:18:14 12    Idaho AG stands in a different position. They can deputize

00:18:18 13    themselves. Although in both states the governor can

00:18:21 14    deputize the AG, the court cited that as the distinguishing

00:18:33 15    factor. Here, you have to look at whether there is any

00:18:34 16    likelihood of that happening. It is such a rare event in the

00:18:37 17    state of Washington the governor deputizes the AG to take

00:18:40 18    criminal jurisdiction. Planned Parenthood should not control

00:18:47 19    this case. On that ground, they cannot obtain an injunction

00:18:52 20    against the Attorney General's Office.

00:18:54 21       Beyond that, the Court does also, on Ex parte Young

00:19:00 22    grounds, need to look at whether the Kitsap County

00:19:04 23    Prosecuting Attorney's Office has made adequate threat of

00:19:09 24    enforcement to trigger jurisdiction over the constitutional

00:19:11 25    question here. I appreciate the Court's concern about the

00:19:14 1  constitutional questions.  Obviously the state courts have

00:19:17 2  questions about the constitutionality of this statute as

00:19:20 3  well.

00:19:21 4       The state courts can do things this Court can't.

00:19:24 5  They can adopt limiting constructions of the statute as the

00:19:28 6  Washington Court of Appeals did in the Kohonen case.  They,

00:19:32 7  themselves, can declare the statute unconstitutional as they

00:19:35 8  did in the Dodd case.

00:19:37 9       These issues, Your Honor, are firmly teed up for the

00:19:41 10 Kitsap County Superior Court right now with no question of

00:19:45 11 standing, no question of abstention, no Article III issues.

00:19:50 12      Mr. Rynearson can go into court and file these

00:19:55 13 questions wherever.  I don't think there is any suggestion

00:19:57 14 that the Washington state courts are less sympathetic or more

00:20:03 15 hostile to First Amendment overbreadth claims than this Court

00:20:07 16 would be.

00:20:08 17     If this Court finds that the e-mail correspondence from

00:20:14 18 the Kitsap County Deputy Prosecuting Attorney does not

00:20:18 19 satisfy the standard for threatened enforcement under Ex

00:20:23 20 parte Young, there is no jurisdiction. Both the Prosecutor's

00:20:28 21 Offices have 11th Amendment immunity.  They cannot raise the

00:20:31 22 overbreadth argument without jurisdiction.  That is the Dream

00:20:36 23 Palace vs Maricopa County case.

00:20:37 24      I believe Ms. George may want to address further the

00:20:41 25 issue of why that e-mail does not indicate an intent by the

00:20:49 1  Prosecuting Attorney's Office, who, as plaintiffs have

00:20:52 2  emphasized, is the defendant here, why the Prosecuting

00:20:55 3  Attorney's Office does not have intent to enforce the statute

00:20:58 4  against Mr. Rynearson.

00:21:03 5      THE COURT:  All right.

00:21:05 6      MR. ROBERTS:  I would be happy to address Younger

00:21:08 7  because I don't think it is -- I think it is an important

00:21:12 8  consideration here.  I think principles of comity and

00:21:16 9  federalism should apply, particularly when you don't have any

00:21:20 10 indication the state -- when you don't have any indication

00:21:23 11 the state forum is an inadequate forum for this question.

00:21:31 12      It does appear to me that the effort by the

00:21:37 13 plaintiffs to enjoin the prosecutors, who would ultimately be

00:21:42 14 responsible for enforcing any violations of the protection

00:21:45 15 order from enforcing the statute that is the predicate for

00:21:49 16 the enforcement order.  I mean, I gather we are not talking

00:21:53 17 here about whether Mr. Rynearson can engage in online speech

00:21:58 18 about President Trump or Former President Obama.  We are

00:22:02 19 talking about whether he can engage in speech about

00:22:05 20 Mr. Moriwaki, and what will happen if he resumes engaging in

00:22:09 21 speech about Mr. Moriwaki.

00:22:11 22      I cannot imagine a circumstance in which the

00:22:14 23 plaintiffs obtained an injunction against the Kitsap County

00:22:18 24 Prosecuting Attorney's Office barring them from prosecuting

00:22:21 25 Mr. Rynearson under this statute and him not saying, in the

00:22:25 1 protection order appeal in the superior court, this doesn't

00:22:30 2 affect me whatsoever.  As they said in their brief, you know,

00:22:33 3 it is persuasive authority on you, but we will have to

00:22:36 4 relitigate the entire question of the constitutionality of

00:22:39 5 the statute.  He is going to argue it has the effect of

00:22:42 6 kicking the legs out from under the prosecution, Your Honor.

00:22:47 7 THE COURT:  You concede the State has questions about

00:22:54 8 the overbreadth of the statute?

00:22:57 9 MR. ROBERTS:  Litigants in the Washington courts have

00:23:01 10 raised questions about the overbreadth of the statute, which,

00:23:05 11 in the decisions that we cited and the plaintiffs did not

00:23:10 12 cite, were resolved in favor of the defendants, and again --

00:23:15 13 and limiting the sweep of the statute.

00:23:18 14 THE COURT:  Right.  Okay.  Thank you.

00:23:21 15 Ms. George, I apologize, I --

00:23:29 16 MS. GEORGE:  That's okay.  I like Ms. Ione. It works

00:23:31 17 for me.  Thank you, Your Honor.

00:23:33 18 THE COURT:  It has been about about a year since you

00:23:35 19 have been here.  I forgot.

00:23:37 20 MS. GEORGE:  All good. My involvement, my statements

00:23:40 21 here will be very short.  I have deferred to the State for

00:23:44 22 these arguments.  I don't want to belabor the point.  My

00:23:47 23 comments will be very short with regard to those statements

00:23:50 24 made about the prosecutor's specific threats.  I would say,

00:23:53 25 there have been no specific threats.

00:23:56 1    The statements have been focused on this e-mail. I

00:23:58 2  would point out that all that has been referred to is the

00:24:02 3  prosecutor's response. The prosecutor made no specific

00:24:06 4  threats. In those cases that have been cited in the Attorney

00:24:10 5  General's brief, we are talking about statements made by

00:24:13 6  prosecuting authorities where they have reached out to a

00:24:16 7  defendant and said, "Cease and desist what you are doing or

00:24:19 8  we will prosecute you. You are at risk. Stop it."

00:24:23 9    What we have here is a situation where a couple of

00:24:26 10 referrals were made to the Prosecutor's Office. One of them

00:24:28 11 was prosecuted. There was another case where the prosecutor

00:24:31 12 did nothing. The prosecutor has no obligation to respond,

00:24:35 13 and they didn't. They had it. We didn't do anything. It

00:24:39 14 was an attorney who reached out and they said to a deputy

00:24:44 15 prosecutor, sorry to pester you. This case is certainly --

00:24:47 16 another case is circling back and the judge will -- well, to

00:24:51 17 be specific, "Sorry, to pester you. My other Bainbridge

00:24:56 18 Island case is circling back around next week. I know the

00:24:59 19 judge will want a status update on whether the charges will

00:25:02 20 be filed or not. Do you happen to have an idea?" Somebody

00:25:07 21 reached out and said, "What are you going to do?" The deputy

00:25:10 22 prosecutor said, "I haven't made a decision. If something

00:25:12 23 happens, I might do something." That is not a specific

00:25:14 24 threat.

00:25:15 25    What the statute requires when we are talking about this

00:25:18 1    is, is there a genuine possibility of prosecution under the

00:25:21 2    law.

00:25:22 3        THE COURT:  There has to be a concrete threat.

00:25:24 4        MS. GEORGE:  The prosecutor has to articulate a

00:25:27 5    specific warning or threat to prosecute.  There has to be

00:25:30 6    also the history of past prosecution or an action under the

00:25:35 7    specific statute.  That has never been addressed here.

00:25:37 8    Never, in any of the briefing.  There has been no showing of

00:25:41 9    this Prosecutor's Office ever taking an action under the

00:25:44 10   statute.  It is a vacuum under this litigation.  It is a hole

00:25:47 11   in this case that hasn't been shown and can't be shown.

00:25:51 12       THE COURT:  You guys are two ships passing in the

00:25:54 13   night.  Professor deals with the core issue of the

00:25:59 14   constitutionality.  The defendants are relying, perhaps

00:26:09 15   persuasively, on the limitations of the Court to address this

00:26:14 16   issue.

00:26:15 17       Mr. Volokh.

00:26:16 18       MR. VOLOKH:  Thank you very much.  Let me turn to

00:26:18 19   some of these procedural issues in the order that were

00:26:21 20   raised.  First, is the jurisdiction over the Washington

00:26:24 21   Attorney General.  The leading decision on this, district

00:26:27 22   court decision from this very courtroom, Judge Robart, is

00:26:31 23   Skokomish Indian Tribe vs Goldmark.  It interprets the

00:26:36 24   statute that describes the authority of the Washington

00:26:41 25   Attorney General which says not just that the Attorney

00:26:44  1    General may prosecute upon the request of, but upon the

00:26:47  2    request of or with a concurrence of, among other things,

00:26:52  3    county prosecutors, and the Court concluded that was

00:26:55  4    sufficient to provide jurisdiction.  That case is 949 F.Supp.

00:27:00  5    2d, 1168.  It is from 2014 from this district.  That's what

00:27:06  6    we have to say about jurisdiction over the Attorney General,

00:27:08  7    although, of course, our case can proceed if we have

00:27:10  8    jurisdiction over either the Attorney General or the County

00:27:13  9    Prosecutor's Office.

00:27:14  10        Now, as to the standing required to show sufficient threat

00:27:19  11   of enforcement, California Pro-Life Council is the leading

00:27:23  12   precedent on that, we think, in the Ninth Circuit from 2003,

00:27:27  13   although it is also echoed in the Wolfson vs Brammer case in

00:27:31  14   2010.  California Pro-Life Council makes clear it doesn't

00:27:35  15   have to be a specific threat as to this particular defendant.

00:27:37  16   Quoting favorably the Seventh Circuit the Court says, "The

00:27:40  17   threat is latent in the existence of the statute if the

00:27:43  18   statute arguably covers the person's speech."  In that case,

00:27:47  19   the person can take a hold-your-tongue-and-challenge-now

00:27:52  20   approach, which is ultimately more respectful of the judicial

00:27:55  21   process and of the law. To say, I am not going to say

00:27:59  22   something that might be illegal, I am going to try to get

00:28:02  23   adjudication of my rights under this.

00:28:05  24            This is not the standard rule in other areas.  It is

00:28:09  25   the rule for First Amendment purposes because of the threat

```
00:28:11  1   that overbroad statutes can have a chilling effect.  That is
00:28:14  2   relevant and substantive, but under the California Pro-Life
00:28:18  3   Council it is also relevant to the standing point.
00:28:21  4       We think there is ample standing here. Partly that is
00:28:26  5   because of the very existence of the statute.  Also partly
00:28:29  6   because of the e-mail.  To be sure, a response to the defense
00:28:34  7   lawyer's question, that's one way prosecutors communicate
00:28:38  8   their intention. The e-mail has to do with case report
00:28:41  9   I-17000145.  That is the police report.  Your Honor can take
00:28:47 10   judicial notice.  If you want a copy of it, we have copies.
00:28:50 11   That is clearly a report that is about a claim of
00:28:53 12   cyberstalking.  It is not about a claim of violation of the
00:28:55 13   protective order.  It is a claim, because at the time the
00:28:59 14   challenge on that happened, there had been no protective
00:29:02 15   order.  This was a cyberstalking referral by the police
00:29:05 16   department.  They found there was probable cause to conclude
00:29:08 17   Mr. Rynearson was cyberstalking, referred to the prosecutor,
00:29:13 18   and when asked what was going on, the prosecutor says, "I am
00:29:14 19   not formally declining, but I am not going to charge it at
00:29:17 20   this time.  I am going to sit on it with the hope
00:29:19 21   Mr. Rynearson abides by the NCO.  If I get any future
00:29:23 22   referrals" -- I take it referrals for violation of the
00:29:28 23   cyberstalking, the issue involved -- "I will revisit the
00:29:31 24   charging decision."
00:29:32 25       We think a reasonable, law abiding person that
```

00:29:34 1   doesn't want to get arrested, doesn't want to get prosecuted,

00:29:36 2   is asking is it safe for me to speak now or should I hold my

00:29:40 3   tongue and challenge it in court, would say, you know, there

00:29:44 4   is a sufficient and reasonable threat to me of enforcement of

00:29:48 5   the cyberstalking statute for any speech that I may -- might

00:29:53 6   engage in that might arguably be seen as intended to

00:29:56 7   embarrass and be repeated.  Those are the only elements of

00:29:58 8   that in the electronic communication that is under the

00:30:03 9   statute.

00:30:03 10      Now, as to the question of whether a state court might

00:30:07 11  kind of interpret the statute more broadly, that is a

00:30:10 12  separate abstention question not raised in the brief.  The

00:30:13 13  leading precedent is <u>City of Houston vs Hill</u> from 1987 where

00:30:18 14  one of the things the court specifically said is abstention

00:30:22 15  is not encouraged in constitutional and First Amendment

00:30:25 16  cases -- that was a First Amendment case -- because the

00:30:28 17  speakers are entitled to go to federal court and have their

00:30:32 18  federal rights adjudicated.

00:30:35 19         Finally, as to the <u>Younger</u> abstention, there is a

00:30:41 20  state proceeding for sure.  The state proceeding is not

00:30:46 21  brought by the parties here.  We are not seeking to enjoin

00:30:49 22  the parties to that proceeding.  We are not seeking to enjoin

00:30:53 23  Mr. Moriwaki.  We are not seeking to enjoin the Court or any

00:30:58 24  of the other witnesses or whatever else are issues.  All of

00:31:01 25  the precedents that have been cited, to our knowledge the

00:31:05  1    precedents in <u>Younger</u>, have to do with that kind of

00:31:10  2    interference in state proceedings. We don't think there is

00:31:12  3    such a thing.

00:31:12  4        Now, it is true the state proceeding is based on a civil

00:31:16  5    statute where one of the predicates, and the state judge

00:31:19  6    found there was another statute provided a predicate, is the

00:31:22  7    statute here.  Under Washington's Collateral Bar Rule,

00:31:26  8    Mr. Rynearson has to comply with that order regardless of

00:31:31  9    whether -- of whether he thinks the statute is invalid.

00:31:38  10   Ultimately if hypothetically there is a contempt proceeding,

00:31:41  11   we think the Collateral Bar Rule would likely prevent us

00:31:45  12   raising the constitutionality of the statute as a challenge.

00:31:48  13       In any event, that has to do with hypothetical future

00:31:52  14   event proceedings.  <u>Younger</u> has to do with injunctions

00:31:54  15   dealing with current proceedings.  We think this injunction

00:31:57  16   would not interfere with those proceedings.  It wouldn't

00:32:00  17   enjoin anybody.  We think it would have a powerful persuasive

00:32:04  18   precedential effect.  That is an interference.  If the judge

00:32:08  19   says, I am persuaded by the federal district court's

00:32:11  20   reasoning, that's not federal district court interfering with

00:32:16  21   the proceeding.  It is providing useful input.

00:32:21  22       THE COURT:  It is a difficult position to be in the

00:32:30  23   case of the federal court to seem like poaching in a state

00:32:40  24   proceeding that is -- it is not proceeding right now. There

00:32:53  25   is good reason why state courts should have the first crack

| | |
|---|---|
| 00:33:10 | 1 |

at their statute.  Federal courts are the keepers of the

Constitution, the United States Constitution.  We take that

very seriously.

      Mr. Roberts, Ms. George, do you have anything to add?

            MR. ROBERTS:  Your Honor, if I may be heard briefly

on the jurisdiction issue.  I frankly haven't read the

Skokomish Indian Tribe case they are referring to.

            THE COURT:  It intersected the Skokomish hunting

decision that I made just a couple months ago.  That is why I

am familiar with Goldmark.

            MR. ROBERTS:  Got you.  I don't mean to turn myself

into a witness here.  We certainly don't argue that the

concurrence language isn't there.  That is just not the way

it works.  I mean, the prosecutors have the jurisdiction.

Under the law could we say to them, hey, could we have some

jurisdiction, and they concur.  Yes, absolutely.  Again, that

is a contingent future event that hasn't happened.  There is

no indication that it will.  That is the real test here, is

there a threat?  Practically speaking, it never looks that

way.  If you filed the public records request and got all the

letters confirming jurisdiction and all the cases, they

always go from the county prosecutors to the Attorney

General's Office.  We don't have jurisdiction until they say,

"Why don't you take it."

      Thank you, Your Honor.

|       |    |                                                                  |
|-------|----|------------------------------------------------------------------|
| 00:34:50 | 1  | THE COURT:  Anything further, Ms. George?                     |
| 00:34:52 | 2  | MS. GEORGE:  No.                                               |
| 00:34:53 | 3  | MR. VOLOKH:  I want to mention one thing that hasn't          |
| 00:34:56 | 4  | come up, for the sake of completeness.  I believe it was in   |
| 00:35:00 | 5  | the County's reply to the motion to dismiss.  They raise the  |
| 00:35:05 | 6  | prosecutorial immunity question.  They argue attorney fees    |
| 00:35:10 | 7  | are barred by prosecutorial immunity.  Turns out there is     |
| 00:35:15 | 8  | precedent on that. The leading case is Supreme Court of       |
| 00:35:16 | 9  | Virginia vs Consumers Union of the U.S., 446 U.S. 17, 1980.   |
| 00:35:22 | 10 | There is also a follow-up circuit court decision from the     |
| 00:35:26 | 11 | Tenth Circuit in Wilson vs Stocker, 819, F.2d, 1987.  They    |
| 00:35:35 | 12 | make clear that prosecutorial immunity does not extend to     |
| 00:35:40 | 13 | either declaratory judgment or injunctions or attorney fees.  |
| 00:35:42 | 14 | It only extends to damages, which we are not claiming.  We    |
| 00:35:45 | 15 | wanted to mention that, for the sake of completeness.         |
| 00:35:48 | 16 | THE COURT:  Thank you.                                         |
| 00:35:49 | 17 | I'll have a decision out in about two weeks.  Thank you       |
| 00:35:58 | 18 | for your written materials, your oral presentations.  I am    |
| 00:36:12 | 19 | questioning whether we got everybody up and dressed for this. |
| 00:36:19 | 20 | There wasn't the direct, head-on debate on the                |
| 00:36:28 | 21 | constitutionality of this statute that I wanted to invite.    |
| 00:36:35 | 22 | Little bit of a rope-a-dope.  I see why you are arguing that   |
| 00:36:44 | 23 | way.  We have encountered Younger abstention and Ex parte     |
| 00:36:54 | 24 | Young in the past, and we will ferret out your argument and   |
| 00:37:02 | 25 | render a decision in a couple of weeks.                       |

00:37:04   1         Thank you.  Have a great weekend.

00:37:16   2                     (The proceedings adjourned.)

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

C E R T I F I C A T E

    I certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.

*/s/ Angela Nicolavo*

ANGELA NICOLAVO
COURT REPORTER