UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| RICHARD L. RYNEARSON, III<br><br>    Plaintiff,<br><br>v.<br><br>ROBERT FERGUSON, Attorney General of the State of Washington,<br><br>and<br><br>TINA R. ROBINSON, Prosecuting Attorney for Kitsap County,<br><br>    Defendants. | NO. 3:17-cv-5531<br><br>PLAINTIFF'S RENEWED MOTION FOR A PRELIMINARY INJUNCTION<br><br>NOTE ON MOTION CALENDAR:<br><u>November 2, 2018</u><br><br>ORAL ARGUMENT REQUESTED |

**focal** PLLC
900 1st Avenue S., Suite 201
Seattle, WA 98134
Tel (206) 529-4827
Fax (206) 260-3966

# TABLE OF CONTENTS

I. INTRODUCTION ................................................................................................ 1

II. STATEMENT OF FACTS ................................................................................. 2

III. ARGUMENT ..................................................................................................... 4

    A. Plaintiff likely will succeed in establishing that Section 9.61.260(1)(b) violates the First Amendment .................................................................... 4

        1. Section 9.61.260(1)(b) is an alarmingly broad restriction on pure speech ............................................................................................. 4

        2. The requirement of a bad purpose does not salvage Section 9.61.260(1)(b) ................................................................................. 8

        3. Section 9.61.260(1)(b) is also not saved by the requirement of repetition or anonymity ........................................................... 10

        4. Section 9.61.260(1)(b) restricts protected speech based on its content, and must therefore be judged under strict scrutiny (which it cannot pass) ........................................................................... 11

    B. Plaintiff will suffer irreparable harm without a preliminary injunction .............. 12

    C. The balance of equities favors Plaintiff ................................................. 13

    D. A preliminary injunction is in the public interest .................................. 13

    E. Plaintiff faces a genuine threat of prosecution ..................................... 13

IV. CONCLUSION ............................................................................................... 15

**focal** PLLC
900 1st Avenue S., Suite 201
Seattle, WA 98134
Tel (206) 529-4827
Fax (206) 260-3966

**TABLE OF AUTHORITIES**

<u>**Cases**</u>

*ACLU of Nev. v. City of Las Vegas*, 466 F.3d 784 (9th Cir. 2006)........................................ 11, 12

*Acosta v. City of Costa Mesa*, 718 F.3d 800 (9th Cir. 2013) ..................................................... 4

*Backpage.com, LLC v. McKenna*, 881 F. Supp. 2d 1262 (W.D. Wash. 2012)..................... 12, 13

*Boos v. Barry*, 485 U.S. 312 (1988)......................................................................................... 11

*Cal. Pro-Life Council, Inc. v. Getman*, 328 F.3d 1088 (9th Cir. 2003)..................................... 14

*Doe v. Harris*, 772 F.3d 563 (9th Cir. 2014) ........................................................ 4, 10, 12, 13

*Elrod v. Burns*, 427 U.S. 347 (1976) ....................................................................................... 12

*FEC v. Wis. Right to Life, Inc.*, 551 U.S. 449 (2007) ................................................................. 9

*Frisby v. Schultz*, 487 U.S. 474 (1988) ..................................................................................... 7

*Garrison v. Louisiana*, 379 U.S. 64 (1964) .......................................................................... 8, 9

*Hedges v. Obama*, 890 F. Supp. 2d 424 (S.D.N.Y. 2012) ......................................................... 2

*Hustler Magazine, Inc. v. Falwell*, 485 U.S. 46 (1988).......................................................... 7, 9

*Klein v. City of San Clemente*, 584 F.3d 1196 (9th Cir. 2009) ............................................. 4, 13

*McIntyre v. Ohio Elections Comm'n*, 514 U.S. 334 (1995)...................................................... 10

*Organization for a Better Austin v. Keefe*, 402 U.S. 415 (1971)........................................... 7, 10

*Packingham v. North Carolina*, 137 S. Ct. 1730 (2017) ......................................................... 10

*Reed v. Town of Gilbert*, 135 S. Ct. 2218 (2015).............................................................. 11, 12

*Rowan v. U.S. Post Office Dep't*, 397 U.S. 728 (1970) .............................................................. 7

*Seattle v. Huff*, 767 P.2d 572 (Wash. 1989)............................................................................. 5

*Sheehan v. Gregoire*, 272 F. Supp. 2d 1135 (W.D. Wash. 2003).......................................... 9, 11

*Snyder v. Phelps*, 562 U.S. 443 (2011) ..................................................................................... 9

*State v. Bishop*, 787 S.E.2d 814 (N.C. 2016) ........................................................................... 12

*Steffel v. Thompson*, 415 U.S. 452 (1974) .............................................................................. 15

*Susan B. Anthony List v. Driehaus*, 134 S. Ct. 2334 (2014).............................................. 14, 15

*Texas v. Johnson*, 491 U.S. 397 (1989) ................................................................................... 11

PLAINTIFF'S RENEWED MOTION FOR A PRELIMINARY
INJUNCTION
CASE NO. 3:17-cv-5531 - iii

**focal** PLLC
900 1st Avenue S., Suite 201
Seattle, WA 98134
Tel (206) 529-4827
Fax (206) 260-3966

*United States v. Osinger*, 753 F.3d 939 (9th Cir. 2014) ................................................................ 8

*United States v. Stevens*, 130 S. Ct. 1577 (2010) ................................................................ 4, 8

*Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7 (2008) ................................................................ 4

**<u>Statutes</u>**

Laws of 2004, ch. 94, § 6 ................................................................ 1

RCW 9.61.230 ................................................................ 7, 13

RCW 9.61.260 ................................................................ *passim*

RCW 9A.46.020 ................................................................ 13

RCW 9A.46.110 ................................................................ 13

PLAINTIFF'S RENEWED MOTION FOR A PRELIMINARY
INJUNCTION
CASE NO. 3:17-cv-5531 - iv

**focal** PLLC
900 1st Avenue S., Suite 201
Seattle, WA 98134
Tel (206) 529-4827
Fax (206) 260-3966

# I.    INTRODUCTION

It is a crime for Washingtonians to speak online "repeatedly or anonymously" if a jury finds that their purpose is to "harass, intimidate, torment, or embarrass." *See* RCW 9.61.260(1)(b) (criminalizing "mak[ing] an electronic communication to . . . a third party" "with intent to harass, intimidate, torment, or embarrass any other person" if communication is done "[a]nonymously or repeatedly"). Yet the First Amendment protects even speech intended to insult or motivated by hostility—both because that speech is itself constitutionally valuable, and because restricting such speech unduly chills even well-motivated speech.

Section 9.61.260(1)(b) therefore violates the First Amendment on its face. Plaintiff Richard Rynearson asks this Court to find the statute's prohibition on speech "to . . . a third party" "with intent to harass, intimidate, torment, or embarrass any other person . . . repeatedly or anonymously" to be facially overbroad, and to issue a preliminary injunction—and ultimately, after a hearing, a declaratory judgment and permanent injunction—against its enforcement. Rynearson is not challenging the prohibition on "[u]sing any lewd, lascivious, indecent, or obscene words, images, or language" about a person. He similarly does not object to the prohibition on communications that "[t]hreaten[] to inflict injury on the person or property of the person called or any member of his or her family or household." These provisions can be severed from the unconstitutional prohibitions on "repeated[] or anonymous[]" speech; the Washington Legislature expressly made the cyberstalking statute severable. Laws of 2004, ch. 94, § 6. Rynearson likewise does not object to the prohibition on "repeated[] or anonymous[]" communication *to* a particular person. But the prohibition on truthful statements about someone else, made to the public—including willing third-party listeners—runs afoul of the First Amendment.

Rynearson first filed this motion for a preliminary injunction in July 2017. The Court dismissed the suit on abstention grounds under *Younger v. Harris*, 401 U.S. 37 (1971), in light of a then-pending civil protection order case in state court. In an expedited appeal, the Ninth Circuit reversed and remanded the case. *Rynearson v. Ferguson*, No. 17-35853, 2018 WL 4263253 (9th

PLAINTIFF'S RENEWED MOTION FOR A PRELIMINARY INJUNCTION
CASE NO. 3:17-cv-5531 - 1

**focal** PLLC
900 1st Avenue S., Suite 201
Seattle, WA 98134
Tel (206) 529-4827
Fax (206) 260-3966

Cir. Sept. 7, 2018). Accordingly, Rynearson now renews his motion.

## II.      STATEMENT OF FACTS

Rynearson is an online author and activist who regularly writes online posts and comments to the public related to civil liberties, including about police abuse and the expansion of executive power in the wake of September 11. (Declaration of Richard L. Rynearson, III in Support of Motion for Preliminary Injunction (Rynearson Decl.) ¶¶ 6-7.) Rynearson's writings are often critical—and sometimes harshly so—of local public figures and government officials. (*Id.* ¶¶ 11-12.) These writings are well within the traditions of independent American political discourse, and are intended both to raise the awareness of other citizens regarding the civil-liberties issues that Rynearson writes about, and to hold civic and political leaders accountable to the community through pointed criticism. This sort of expression is at the very heart of political speech which the First Amendment most strongly protects.

Many of Rynearson's online posts and comments relate to a detention provision in the National Defense Authorization Act ("NDAA") of 2012. Specifically, Section 1021, which was found to authorize the unconstitutional detention of American citizens without trial under the laws of war. *See Hedges v. Obama*, 890 F. Supp. 2d 424, 458 (S.D.N.Y. 2012), *rev'd for lack of jurisdiction*, 724 F.3d 170 (2d Cir. 2013). (Rynearson Decl. ¶ 3.) Given his interest in indefinite-detention issues, Rynearson became interested years ago in public and civic organizations in the Seattle area that memorialize and seek to present the lessons of the Japanese-American internment in World War II, such as the Bainbridge Island Japanese-American Exclusion Memorial and Seattle-based Densho. (*Id.* ¶¶ 4-5, 8.)

In the past, Rynearson has regularly posted on public Facebook pages and groups criticizing the leadership of those public and civic organizations, either because those leaders failed to condemn the NDAA or because they vocally and strongly support politicians who voted for or signed the NDAA, such as Governor Jay Inslee and former President Barack Obama. (*Id.* ¶¶ 11-12.) For example, in February 2017, Rynearson wrote a series of public posts on Facebook criticizing Clarence Moriwaki, the founder of the Bainbridge Island Japanese-American

PLAINTIFF'S RENEWED MOTION FOR A PRELIMINARY INJUNCTION
CASE NO. 3:17-cv-5531 - 2

**focal** PLLC
900 1st Avenue S., Suite 201
Seattle, WA 98134
Tel (206) 529-4827
Fax (206) 260-3966

Exclusion Memorial ("Memorial"), for failing to criticize Governor Inslee and President Obama for voting for/signing the NDAA. (*Id.* ¶ 12.) The thrust of Rynearson's posts was that Moriwaki should be removed from his role as board member and de facto spokesperson for the Memorial because Moriwaki used the lessons of the internment, and his role with the Memorial, to criticize Republican politicians (chiefly, President Trump) in many media articles or appearances related to the Memorial, but failed to criticize Democratic politicians. (*Id.*)

Rynearson's posts often include invective, ridicule, and harsh language (but no profanity, obscenity, or threats) intended to criticize or call into question the actions and motives of these civic leaders and other public figures. (*Id.* ¶¶ 11-12.) He reasonably fears prosecution under the cyberstalking statute for such posts. (*Id.* ¶¶ 16-17.) In fact, the Bainbridge Island Police Department referred a police report to the Kitsap County Prosecutor finding probable cause for cyberstalking based on such critical posts to and about Moriwaki. (*Id.* ¶ 13.) The prosecutor has not brought charges, but sent an email stating that he would revisit his decision regarding charges based on Rynearson's future behavior, including his future speech. (*Id.* ¶ 15.)

For a period of time, from March 2017 to January 2018, Rynearson was also subject to a civil protection order imposed by the Bainbridge Island Municipal Court based on posts critical of Moriwaki. (*Id.* ¶ 14; *Moriwaki v. Rynearson*, No. 17-2-01463-1, 2018 WL 733811, at *12 (Wash. Sup. Ct. Jan. 10, 2018). The cyberstalking statute was one of the statutes invoked by the Municipal Court in imposing the protection order. *Moriwaki*, 2018 WL 733811, at *5. The order imposed sharp limits on Rynearson's speech, such as barring the use of Moriwaki's name in the titles or domain names of webpages. (Declaration of Eugene Volokh in Support of Motion for Preliminary Injunction, Ex. B.) The order has now been vacated on the ground that it was impermissibly based on Rynearson's constitutionally-protected speech. *Moriwaki*, 2018 WL 733811, at *12. But the lifting of the order's limits on Rynearson's speech does not lift the restraint imposed by the cyberstalking statute itself. *See Rynearson*, 2018 WL 4263253, at *7 ("The stalking protection orders issued by the municipal court and the cyberstalking statute covered different conduct.").

**focal** PLLC
900 1st Avenue S., Suite 201
Seattle, WA 98134
Tel (206) 529-4827
Fax (206) 260-3966

Rynearson engages in core political expression squarely within the heartland of what the First Amendment protects, and yet legitimately fears prosecution under the cyberstalking statute based upon the provocative and critical nature of what he writes and publishes online.

### III.     ARGUMENT

To obtain a preliminary injunction, the movant must establish "[1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest." *Doe v. Harris*, 772 F.3d 563, 570 (9th Cir. 2014) (citing *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008)) (alteration in original). When evaluating the likelihood of success in a First Amendment challenge, the movant "bears the initial burden of making a colorable claim that [his] First Amendment rights have been infringed, or are threatened with infringement." *Id.* Then, the "burden shifts to the government to justify the restriction." *Id.* "[C]aselaw clearly favors granting preliminary injunctions to a plaintiff . . . who is likely to succeed on the merits of his First Amendment claim." *Klein v. City of San Clemente*, 584 F.3d 1196, 1208 (9th Cir. 2009).

### A.     Plaintiff likely will succeed in establishing that Section 9.61.260(1)(b) violates the First Amendment

A statute is facially invalid under the First Amendment if it is "overbroad," meaning "'a substantial amount of its applications are unconstitutional, judged in relation to [its] plainly legitimate sweep.'" *Acosta v. City of Costa Mesa*, 718 F.3d 800, 811 (9th Cir. 2013) (quoting *United States v. Stevens*, 130 S. Ct. 1577, 1587 (2010)) (alteration in original). Section 9.61.260(1)(b) is unconstitutionally overbroad on its face, because it criminalizes much heated political and personal commentary of the sort that is routine when people discuss matters that outrage them.

#### 1.     Section 9.61.260(1)(b) is an alarmingly broad restriction on pure speech

Section 9.61.260(1)(b) provides that a "person is guilty of cyberstalking if he or she, with intent to harass, intimidate, torment, or embarrass any other person, . . . makes an electronic

**focal** PLLC
900 1st Avenue S., Suite 201
Seattle, WA 98134
Tel (206) 529-4827
Fax (206) 260-3966

communication to such other person or a third party . . . [a]nonymously or repeatedly whether or not conversation occurs." An "electronic communication" is the "transmission of information by wire, radio, optical cable, electromagnetic, or other similar means . . . includ[ing], but . . . not limited to, . . . internet-based communications." RCW 9.61.260(5). The statute separately criminalizes electronic speech that contains "any lewd, lascivious, indecent, or obscene words, images, or language," *id.* 9.61.260(1)(a), or that "[t]hreaten[s] to inflict injury on the person or property of the person called or any member of his or her family or household," *id.* 9.61.260(1)(c). Accordingly, Section 9.61.260(1)(b) criminalizes a vast range of non-obscene, non-threatening speech, based only on (1) purportedly bad intent and (2) repetition or anonymity.

The breadth of the statute extends in several dimensions. First, the intent provision—sweeping in speech that a jury might find was intended to "harass, intimidate, torment, or embarrass any other person"—reaches broadly. The terms "harass, intimidate, torment, or embarrass" are not defined by the statute. The Washington Supreme Court, in a case examining the similarly-worded telephone-harassment statute, has defined "intimidate" to include "compel[ling] to action or inaction (as by threats)," *Seattle v. Huff*, 767 P.2d 572, 576 (Wash. 1989), but it did not provide a definition for the other proscribed purposes.

When statutory terms are undefined, however, Washington courts generally give them their ordinary meaning, including the dictionary definition. *See id.* (defining "intimidate" by reference to definition in Webster's Third New International Dictionary). The dictionary definition of "harass" includes "to vex, trouble, or annoy continually or chronically," Webster's Third New International Dictionary, Unabridged (online ed. 2017), and the meaning of "torment" includes "to cause worry or vexation to," *id.* Finally, "embarrass" means "to cause to experience a state of self-conscious distress." *Id.* As a result, even public criticisms of public figures and public officials could be subject to criminal prosecution and punishment if they are seen as intended to persistently "vex" or "annoy" those public figures, or to embarrass or make them "self-conscious" about something.

Second, Section 9.61.260(1)(b) is not limited to true threats, obscenity, defamation, or

**focal** PLLC
900 1st Avenue S., Suite 201
Seattle, WA 98134
Tel (206) 529-4827
Fax (206) 260-3966

any other category of unprotected speech. In fact, because paragraphs (1)(a) and (1)(c) plainly cover obscenity and threats, respectively, much of the speech that can be restricted under the First Amendment is excluded from Section 9.61.260(1)(b)'s reach, so most of the speech that falls within Section 9.61.260(1)(b) is actually protected speech.

And even paragraph (1)(a)—which covers "any lewd, lascivious, [or] indecent . . . words, images, or language" in addition to "obscene" speech—reaches mostly protected speech, i.e., speech that would not fall within the definition of unprotected "obscenity." That paragraph is not directly at issue here, but it illustrates the extreme breadth of the cyberstalking statute and how it reaches core political speech to the public that is protected by the First Amendment. In 2011, for example, the Renton Police Department obtained a search warrant to compel Google to identify the individual who had anonymously posted cartoon videos on YouTube making fun of, and criticizing, the City of Renton and its Police Department. Jennifer Sullivan, *Web cartoons making fun of Renton taken seriously*, Seattle Times, Aug. 4, 2011. The videos communicated criticisms related to a new jail, internal investigations, and department morale, but also referred to alleged sex acts involving Police Department employees. *Id.* The police obtained a warrant by contending that the videos were "cyberstalking" due to "lewd content" or "indecent language that is meant to embarrass and emotionally torment" the police officers who were the subjects of the criticism. *Id.* The same content could just have easily been charged as repeated or anonymous under paragraph (1)(b), because more than one video was posted and the poster used a pen name. The police later dropped the case, but it is nonetheless a useful example of how far the statute reaches.

Third, Section 9.61.260(1)(b) is not confined to harassing speech directed to an unwilling listener. Rather, it expressly covers online speech with intent to embarrass any other person both when spoken to "such person" and to "a third party." Traditionally, criminal harassment laws covered speech made to a particular unwilling person—for instance, telephone calls, letters sent to a particular home, or e-mails sent to a particular person. Thus, for instance, the Supreme Court upheld a federal law forbidding people from sending certain material to others once the

**focal** PLLC
900 1st Avenue S., Suite 201
Seattle, WA 98134
Tel (206) 529-4827
Fax (206) 260-3966

recipients have told senders to stop. *Rowan v. U.S. Post Office Dep't*, 397 U.S. 728, 730 (1970). "[N]o one has a right to press even 'good' ideas on an unwilling recipient," the Court reasoned. *Rowan*, 397 U.S. at 738. For that reason, Washington may constitutionally be permitted to bar repeated unwanted e-mails after the recipient has told the speaker to stop, as it has done with unwanted telephone calls. RCW 9.61.230.

But Section 9.61.260(1)(b) goes much further, by criminalizing even public commentary *about* people. While "attempting to stop the flow of information into [one's] own household" (speech to a person) is permissible, trying to block criticism of a person said "to the public" (speech about a person) violates the First Amendment. *Organization for a Better Austin v. Keefe*, 402 U.S. 415, 420 (1971); *see also Frisby v. Schultz*, 487 U.S. 474, 486 (1988) (upholding ban on targeted residential picketing, because such picketing "is narrowly directed at the household, not the public," and is thus "fundamentally different from more generally directed means of communication that may not be completely banned").

And this distinction makes sense: restrictions on speech *to* a person (such as unwanted telephone calls) nonetheless allow dissemination of information to willing listeners. On the other hand, restrictions on speech *about* a person are far broader, and thus unconstitutionally undermine "robust political debate" (as well as conversation on other topics). *Hustler Magazine, Inc. v. Falwell*, 485 U.S. 46, 51 (1988).

Finally, because the statute criminalizes public speech about a person with certain intent, Section 9.61.260(1)(b) regulates pure speech, without any associated noncommunicative conduct. With respect to prohibitions on speech directed to a person, for example with telephone harassment, it is the harassing conduct that is prohibited—i.e., the unwelcome ringing of the telephone, which can awaken or distract people regardless of the message conveyed. The conduct of publicly posting something (independent of the post's content) cannot itself be harassing, intimidating, or embarrassing. Rather, a person can be convicted of cyberstalking based only on the content of his pure speech, without any associated harassing conduct. This distinguishes the Washington cyberstalking statute from other cyberstalking statutes that have

been upheld against facial challenges. *See United States v. Osinger*, 753 F.3d 939, 944 (9th Cir. 2014) (holding that "because 18 U.S.C. § 2261A proscribes harassing and intimidating conduct, the statute is not facially invalid under the First Amendment," as the "proscribed acts are tethered to the underlying criminal conduct and not to speech"); *id.* at 954 (Watford, J., concurring) ("If a defendant is doing nothing but exercising a right of free speech, without engaging in any non-speech conduct, the exception for speech integral to criminal conduct shouldn't apply.").

Section 9.61.260(1)(b) is thus "a criminal prohibition of alarming breadth." *Stevens*, 130 S. Ct. at 1588. It potentially punishes a vast range of harsh rhetoric about political candidates. Even Hillary Clinton and Donald Trump could have been punished under this statute, if they had tweeted things in Washington that were intended to "harass" or "embarrass" each other. The statute also punishes a vast range of criticism of local civic and political leaders on matters of local or national public concern, because any harsh or repeated critique could be perceived as being done with intent to harass or embarrass.

Beyond that, the statute punishes a wide range of speech that is part of everyday life. Say, for instance, that a woman breaks up with her unfaithful boyfriend, and she posts on her Facebook page about how she feels about him. A prosecutor may easily conclude that the woman posted her Facebook message with the "intent to harass . . . or embarrass" her ex-boyfriend, by making him feel ashamed. Yet such speech on the details of our daily lives is also constitutionally protected. Even "[w]holly neutral futilities" that lack political, artistic, or similar value are "still sheltered from government regulation." *Stevens*, 130 S. Ct. at 1591.

**2.      The requirement of a bad purpose does not salvage Section 9.61.260(1)(b)**

Section 9.61.260(1)(b) is not rendered constitutional by the requirement that the speech be intended to harass, torment, intimidate, or embarrass. The Supreme Court has repeatedly held that bad intentions do not strip speech of constitutional protection. Thus, in *Garrison v. Louisiana*, the Court rejected the view that reputation-injuring speech could be punished because of the speaker's allegedly bad motives, such as a "wanton desire to injure." 379 U.S. 64, 78 (1964). As the Court explained, "[i]f upon a lawful occasion for making a publication, [a

**focal** PLLC
900 1st Avenue S., Suite 201
Seattle, WA 98134
Tel (206) 529-4827
Fax (206) 260-3966

speaker] has published the truth, and no more, there is no sound principle which can make him liable, even if he was actuated by express malice." *Id.* at 73 (internal quotation marks and citation omitted).

Likewise, in *Hustler Magazine*, the Supreme Court overturned an intentional infliction of emotional distress verdict, concluding that a bad motive does not strip speech of constitutional protection. 485 U.S. at 53. And in *Snyder v. Phelps*, the Court applied this principle to speech about private figures as well as public figures. 562 U.S. 443, 458 (2011). More broadly, the Supreme Court has held that a "speaker's motivation" is generally "entirely irrelevant to the question of constitutional protection." *FEC v. Wis. Right to Life, Inc.*, 551 U.S. 449, 468 (2007) (lead opinion) (citation omitted); *id.* at 495 (Scalia, J., concurring in part and concurring in the judgment) (likewise rejecting a test based on speaker motivation). This Court has likewise struck down as overbroad a ban on publishing certain information "with the intent to harm or intimidate," *Sheehan v. Gregoire*, 272 F. Supp. 2d 1135, 1149 (W.D. Wash. 2003), reasoning that the First Amendment "preclude[s] the State of Washington from proscribing pure speech based solely on the speaker's subjective intent." And this was so even though the statute was limited to publishing the home address and phone numbers of law enforcement officials.

The Supreme Court has offered two reasons for protecting speech without regard to purpose. First, speech remains valuable even if the speaker's motives may be unsavory. "[E]ven if [a speaker] did speak out of hatred, utterances honestly believed contribute to the free interchange of ideas and the ascertainment of truth." *Garriso*n, 379 U.S. at 73.

Second, restricting speech based on its bad motive risks chilling even well-motivated speech. "Debate on public issues will not be uninhibited if the speaker must run the risk that it will be proved in court that he spoke out of hatred . . . ." *Id.* "No reasonable speaker would choose to run an ad covered by [the statute] if its only defense to a criminal prosecution would be that its motives were pure. An intent-based standard blankets with uncertainty whatever may be said, and offers no security for free discussion." *Wis. Right to Life*, 551 U.S. at 468 (Roberts, C.J., joined by Alito, J.) (internal quotation marks omitted). "First Amendment freedoms need

PLAINTIFF'S RENEWED MOTION FOR A PRELIMINARY INJUNCTION
CASE NO. 3:17-cv-5531 - 9

**focal** PLLC
900 1st Avenue S., Suite 201
Seattle, WA 98134
Tel (206) 529-4827
Fax (206) 260-3966

breathing space to survive," and "[a]n intent test provides none." *Id.* at 468-69 (citations omitted). Any effort to distinguish restricted speech from unrestricted speech "based on intent of the speaker would 'offe[r] no security for free discussion,' and would 'compe[l] the speaker to hedge and trim.'" *Id.* at 495 (Scalia, J., concurring in part and concurring in the judgment, joined by Kennedy and Thomas, JJ.) (internal citations and some internal quotation marks omitted).

The same applies to Section 9.61.260(1)(b). Rynearson, and others like him, will constantly have to worry that their harsh criticism of public figures or public officials might be seen as ill-motivated by a prosecutor, and might put them at risk of prosecution (and jail). Section 9.61.260(1)(b) "offe[rs] no security for free discussion," and "provides no[]" "breathing space" for speech; it is therefore unconstitutional.

### 3. Section 9.61.260(1)(b) is also not saved by the requirement of repetition or anonymity

Other than intent, the only requirement for speech to be proscribed by Section 9.61.260(1)(b) is that it be "repeated" or "anonymous." The anonymity element only renders the prohibition more unconstitutional, not less. An "'author's decision to remain anonymous, like other decisions concerning omissions or additions to the content of a publication, is an aspect of the freedom of speech protected by the First Amendment.'" *Doe*, 772 F.3d at 574 (quoting *McIntyre v. Ohio Elections Comm'n*, 514 U.S. 334, 342 (1995)). Anonymity on the internet is no less protected, because "online speech stands on the same footing as other speech." *Id.* (citation omitted). Indeed, the Supreme Court has recently recognized "the most important place[] . . . for the exchange of views . . . is cyberspace—the vast democratic forums of the Internet in general, and social media in particular." *Packingham v. North Carolina*, 137 S. Ct. 1730, 1735 (2017).

And the repetition element does not save the statute, either. Speech does not lose its protection because it is said more than once. The individuals distributing leaflets in *Organization for a Better Austin* distributed at least four different leaflets targeting a realtor and criticizing his business practices, and they distributed leaflets for "several days" at a shopping center, on "two

PLAINTIFF'S RENEWED MOTION FOR A PRELIMINARY INJUNCTION
CASE NO. 3:17-cv-5531 - 10

**focal** PLLC
900 1st Avenue S., Suite 201
Seattle, WA 98134
Tel (206) 529-4827
Fax (206) 260-3966

other occasions" at the realtor's church, and at least one other time, at the houses of the realtor's neighbors. 402 U.S. at 417. That is surely "repeated" speech targeting a particular individual, but the Supreme Court nonetheless held it was protected by the First Amendment, even though it was "intended to exercise a coercive impact on" the realtor. *Id.* at 419.

### 4. Section 9.61.260(1)(b) restricts protected speech based on its content, and must therefore be judged under strict scrutiny (which it cannot pass)

The government generally "has no power to restrict expression because of its message, its ideas, its subject matter, or its content." *Reed v. Town of Gilbert*, 135 S. Ct. 2218, 2226 (2015) (citation omitted). Defining "regulated speech by its function *or purpose*" makes a restriction "content based." *Id.* at 2227 (emphasis added). And that is precisely what Section 9.61.260(1)(b) does—it criminalizes speech based on the speaker's purpose, i.e. intent. Moreover, a law is content-based when, "[i]n order to enforce the regulation, an official must necessarily examine the content of the message that is conveyed." *ACLU of Nev. v. City of Las Vegas*, 466 F.3d 784, 794 (9th Cir. 2006); *see also Sheehan*, 272 F. Supp. 2d at 1146 ("When an individual enforcing a statute must examine the content of the speech to determine whether the statute governs, the statute is content-based."). Determining whether online speech about someone was intended to harass or embarrass will necessarily require examination of the speech's content.

Nor can the restriction be treated as content-neutral under the so-called "secondary effects" doctrine, under which the government can adopt a "time, place, or manner regulation aimed at the 'secondary effects' of the proscribed speech." *Sheehan*, 272 F. Supp. 2d at 1146. "The emotive impact of speech on its audience is not a 'secondary effect'"; laws that "regulate[] speech due to its potential primary impact"—such as their emotive impact on the targets of the speech—"must be considered content-based." *Boos v. Barry*, 485 U.S. 312, 321 (1988) (lead opinion); *id.* at 334 (Brennan, J., concurring in the judgment). *See also Texas v. Johnson*, 491 U.S. 397, 412 (1989) ("[T]he emotive impact of speech on its audience is not a 'secondary effect' unrelated to the content of the expression itself.") (internal quotation marks omitted); *Sheehan*, 272 F. Supp. 2d at 1146. Likewise, Section 9.61.260(1)(b), which aims to control the

**focal** PLLC
900 1st Avenue S., Suite 201
Seattle, WA 98134
Tel (206) 529-4827
Fax (206) 260-3966

emotional impact of speech by banning speech intended to "harass, torment, intimidate, or embarrass," is therefore content-based.

Section 9.61.260(1)(b) is thus subject to strict scrutiny, and is therefore "presumptively unconstitutional" unless it "furthers a compelling interest and is narrowly tailored to achieve that interest." *Reed*, 135 S. Ct. at 2226–27, 2230-31 (internal quotation marks and citation omitted). Moreover, because Rynearson has made a "colorable claim that [his] First Amendment rights have been infringed, or are threatened with infringement," it is Defendants' burden "to justify the restriction." *Doe*, 772 F.3d at 570; *Backpage.com, LLC v. McKenna*, 881 F. Supp. 2d 1262, 1283 (W.D. Wash. 2012) ("Since Plaintiffs have met their burden of showing that [the statute] is a content-based restriction that implicates First Amendment rights, it is Defendants' burden to demonstrate that the statute is constitutional."). Defendants cannot meet that burden. There is no compelling state interest in forbidding all non-threatening and non-obscene online speech that is seen as having a caustic purpose.

Moreover, Section 9.61.260(1)(b) is far from "narrowly tailored." To be narrowly tailored, a content-based restriction on speech must be "the least restrictive means of furthering a compelling government interest." *ACLU of Nev.*, 466 F.3d at 794. Yet Section 9.61.260(1)(b) restricts a broad range of speech that falls far outside any First Amendment exception—indeed, it mostly restricts such speech because it excludes speech that could be considered to fall within the unprotected categories of obscenity and true threats. Nor does Section 9.61.260(1)(b) require that the subject of the offending speech suffer any legally cognizable injury, or even be aware of the speech. *See State v. Bishop*, 787 S.E.2d 814, 820 (N.C. 2016) (reasoning that an anti-cyberbullying statute did not satisfy strict scrutiny, in part, because the statute did not require that the victim suffer an injury or even know about the offending speech). It is the antithesis of a narrowly-tailored restriction.

**B.     Plaintiff will suffer irreparable harm without a preliminary injunction**

"The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373 (1976); *see*

PLAINTIFF'S RENEWED MOTION FOR A PRELIMINARY
INJUNCTION
CASE NO. 3:17-cv-5531 - 12

**focal** PLLC
900 1st Avenue S., Suite 201
Seattle, WA 98134
Tel (206) 529-4827
Fax (206) 260-3966

*also Doe*, 772 F.3d at 583 (same). Because Rynearson is likely to prevail on his overbreadth challenge, it therefore follows that he will suffer irreparable harm if the State is not enjoined from enforcing the law. A "colorable First Amendment claim is irreparable injury sufficient to merit the grant of relief," and an injunction should issue "[i]f the underlying constitutional question is close." *Doe*, 772 F.3d at 583 (internal quotation marks omitted); *see also Backpage.com*, 881 F. Supp. 2d at 1286 (finding irreparable injury to support granting a preliminary injunction based on the movant's likelihood of success on its overbreadth challenge).

**C.     The balance of equities favors Plaintiff**

Because Rynearson is likely to prevail on his overbreadth challenge—and because such an injunction will leave the government free to punish genuinely dangerous online speech, such as true threats, as well as harassing physical conduct (through the anti-stalking and anti-harassment statutes, RCW 9A.46.020, 9A.46.110) and harassing telephone calls (RCW 9.61.230)—the balance of equities favors granting the injunction. *Cf. Backpage.com*, 881 F. Supp. 2d at 1286 (finding that balance of equities tipped toward plaintiff who had demonstrated likelihood of success on overbreadth challenge when "Washington can enforce other laws banning prostitution and the exploitation of minors" while preliminary injunction was in place).

**D.     A preliminary injunction is in the public interest**

The Ninth Circuit has "consistently recognized the significant public interest in upholding free speech principles," because "the ongoing enforcement of the potentially unconstitutional regulations . . . would infringe not only the free expression interests of [plaintiff], but also the interests of others subjected to the same restriction." *Klein*, 584 F.3d at 1208 (internal quotation marks and citation omitted). Here, the public interest favors a preliminary injunction, because it would vindicate important First Amendment principles in light of Rynearson's likelihood of success on his overbreadth challenge.

**E.     Plaintiff faces a genuine threat of prosecution**

Whether the court "frame[s] [its] jurisdictional inquiry as one of standing or of ripeness, the analysis is the same." *Cal. Pro-Life Council, Inc. v. Getman*, 328 F.3d 1088, 1093 (9th Cir.

**focal** PLLC
900 1st Avenue S., Suite 201
Seattle, WA 98134
Tel (206) 529-4827
Fax (206) 260-3966

2003). A plaintiff "must face a genuine threat of imminent prosecution." *Id.* at 1094 (internal quotation marks omitted). A plaintiff satisfies that requirement when "he alleges an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute, and there exists a credible threat of prosecution thereunder." *Susan B. Anthony List v. Driehaus*, 134 S. Ct. 2334, 2342 (2014). The Ninth Circuit considers "(1) whether the plaintiffs have articulated a 'concrete plan' to violate the law in question, (2) whether the prosecuting authorities have communicated a specific warning or threat to initiate proceedings, and (3) the history of past prosecution or enforcement under the challenged statute." *Cal. Pro-Life Council*, 328 F.3d at 1094 (internal quotation marks omitted).

A threat or warning of prosecution is not an essential element of standing. *Id.* Rather, a plaintiff suffers "the constitutionally recognized injury of self-censorship" so long as he "fear[s] enforcement proceedings might be initiated by the State" and that "fear was reasonable." *Id.* at 1094-95. A "well-founded fear that the law will be enforced" exists in "the free speech context" so long as "the plaintiff's intended speech arguably falls within the statute's reach." *Id.* at 1095. Rynearson has established that well-founded fear and self-censorship injury here: he fears enforcement proceedings, he has curtailed his speech as a result, and both his past and planned future speech arguably fall within the cyberstalking statute's reach. (Rynearson Decl. ¶¶ 16-17.)

With that, Rynearson "need not show that the authorities have threatened to prosecute him; the threat is latent in the existence of the statute." *Cal. Pro-Life Council*, 328 F.3d at 1095 (citation omitted). But there is more here. The police department referred a probable cause finding to the prosecutor. (Rynearson Decl. ¶ 13.) Moreover, a representative of the Kitsap County Prosecutor's office indicated that the decision whether to file charges would be based in part on whether the office receives any further referrals related to Rynearson, which Rynearson reasonably believes could occur based on future speech arguably falling within the scope of RCW 9.61.260(1)(b). (*Id.* ¶ 15, Ex. C.) While these threats of prosecution are not necessary to establish standing, their chilling effect remains to this day. And Rynearson has articulated his intent to engage in the future in speech substantially similar to the speech that gave rise to the

**focal** PLLC
900 1st Avenue S., Suite 201
Seattle, WA 98134
Tel (206) 529-4827
Fax (206) 260-3966

police department's probable cause finding; that is enough to show his "concrete plan" with respect to the future. *See Susan B. Anthony List*, 134 S. Ct. at 2345 ("Nothing in this Court's decisions requires a plaintiff who wishes to challenge the constitutionality of a law to confess that he will in fact violate that law.").

It "is not necessary that [a plaintiff] first expose himself to actual arrest or prosecution to be entitled to challenge a statute that he claims deters the exercise of his constitutional rights." *Steffel v. Thompson*, 415 U.S. 452, 459 (1974). Because Rynearson's fear of prosecution is not "imaginary or wholly speculative," Rynearson has established a genuine threat of prosecution sufficient to satisfy the Article III justiciability requirements. *Susan B. Anthony List*, 134 S. Ct. at 2343.

## IV.    CONCLUSION

Section 9.61.260(1)(b) criminalizes a wide range of protected speech, both on political and personal topics, going far beyond unprotected categories of speech (such as true threats or libel). This Court should therefore grant Rynearson's motion for preliminary injunction, so that Rynearson and other Washingtonians can speak their minds without fear of criminal penalty.

DATED: October 5, 2018.                    Respectfully submitted,

FOCAL PLLC

By: *s/Venkat Balasubramani*
    Venkat Balasubramani, WSBA #28269
    900 1st Avenue S., Suite 201
    Seattle, WA 98134
    Tel: (206) 529-4827
    Fax: (206) 260-3966
    venkat@focallaw.com


SCOTT & CYAN BANISTER FIRST AMENDMENT CLINIC

UCLA SCHOOL OF LAW

By: *s/Eugene Volokh*
    Eugene Volokh

**focal** PLLC
900 1st Avenue S., Suite 201
Seattle, WA 98134
Tel (206) 529-4827
Fax (206) 260-3966

405 Hilgard Ave.
Los Angeles, CA 90095
Tel: (310) 206-3926
volokh@law.ucla.edu
Admitted pro hac vice

*Attorneys for Plaintiff*

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27

**CERTIFICATE OF SERVICE**

I hereby certify that on October 5, 2018 I electronically filed the PLAINTIFF'S

RENEWED MOTION FOR A PRELIMINARY INJUNCTION; DECLARATION OF

RICHARD LEE RYNEARSON, III IN SUPPORT OF PLAINTIFF'S MOTION FOR

PRELIMINARY INJUNCTION; DECLARATION OF EUGENE VOLOKH IN SUPPORT OF

PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION; and [PROPOSED] ORDER

GRANTING PLAINTIFF'S REQUEST FOR INJUNCTIVE RELIEF with the Clerk of the

Court using the CM/ECF system which will send notification of such filing to all parties of

record.

DATED: October 5, 2018                    *s/Venkat Balasubramani*
                                          Venkat Balasubramani

PLAINTIFF'S RENEWED MOTION FOR A PRELIMINARY
INJUNCTION
CASE NO. 3:17-cv-5531 - 17

**focal** PLLC
900 1st Avenue S., Suite 201
Seattle, WA 98134
Tel (206) 529-4827
Fax (206) 260-3966