# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF WASHINGTON
# AT TACOMA

| | |
|---|---|
| RICHARD L. RYNEARSON, III,<br><br>                     Plaintiff,<br><br>  v.<br><br>ROBERT FERGUSON, Attorney General of the State of Washington, and TINA R. ROBINSON, Kitsap County Prosecuting Attorney,<br><br>                  Defendants. | NO. 3:17-cv-05531-RBL<br><br>DEFENDANTS' MOTION TO DISMISS AND OPPOSITION TO PLAINTIFF'S RENEWED MOTION FOR PRELIMINARY INJUNCTION<br><br>NOTE ON MOTION CALENDAR: November 30, 2018 |

# TABLE OF CONTENTS

I.   INTRODUCTION ........................................................................................................ 1

II.  FACTS RELEVANT TO MOTION ............................................................................ 2

III. ARGUMENT ............................................................................................................... 3

    A.   Rynearson Lacks Standing to Challenge Washington's
        Cyberstalking Statute ....................................................................................... 3

    B.   Rynearson Cannot Meet His High Burden to Obtain Injunctive Relief ................... 7

        1.   Rynearson Has Not Shown He Is Likely to Prevail on His
             Overbreadth Challenge to Wash. Rev. Code § 9.61.260(1)(b) ........................ 8

             a.   Overbreadth doctrine is strong medicine and requires
                 Rynearson to show real and substantial overbreadth
                 judged in relation to the statute's plainly legitimate sweep ...................... 8

             b.   The statute's plainly legitimate sweep is extensive
                 because it regulates mostly conduct, not speech ....................................... 9

             c.   Whatever hypothetical protected speech Wash. Rev.
                 Code § 9.61.260(1)(b) may proscribe is marginal
                 relative to its plainly legitimate sweep ................................................... 15

        2.   Wash. Rev. Code § 9.61.260(1)(b) is not facially invalid
             for failure to meet intermediate or strict scrutiny ............................................. 20

    C.   Rynearson Has Not Shown He Will Suffer Immediate
        Irreparable Harm ............................................................................................ 23

    D.   The Balance of Equities and Public Interest Do Not Favor
        an Injunction ................................................................................................... 24

IV.  CONCLUSION .......................................................................................................... 25

DEFENDANTS' MOTION TO DISMISS
AND OPPOSITION TO PLAINTIFF'S
RENEWED MOTION FOR
PRELIMINARY INJUNCTION --
NO. 3:17-CV-05531-RBL

i

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA  98504-0100
(360) 753-6200

**TABLE OF AUTHORITIES**

**Cases**

*4805 Convoy, Inc. v. City of San Diego,*
  183 F.3d 1108 (9th Cir. 1999) ......................................................................... 21

*Ala. Fed'n of Labor, Local Union 103 v. McAdory,*
  325 U.S. 450 (1945) ......................................................................................... 10

*Alaska Right to Life Political Action Comm. v. Feldman,*
  504 F.3d 840 (9th Cir. 2007) ......................................................................... 3-4

*Ashcroft v. ACLU,*
  535 U.S. 564 (2002) ......................................................................................... 20

*Ashcroft v. Free Speech Coal.,*
  535 U.S. 234 (2002) ......................................................................................... 20

*Ashwander v. Tenn. Valley Auth.,*
  297 U.S. 288 (1936) ......................................................................................... 10

*Baker v. Carr,*
  369 U.S. 186 (1962) ........................................................................................... 3

*Bd. of Airport Comm'rs of the City of Los Angeles v. Jews for Jesus, Inc.,*
  482 U.S. 569 (1987) ......................................................................................... 15

*Bini v. City of Vancouver,*
  No. C16-5460 BHS, 2017 WL 2226233 (W.D. Wash. May 22, 2017) ................ 18

*Broadrick v. Oklahoma,*
  413 U.S. 601 (1973) .................................................................................. 8-9, 21

*Brockett v. Spokane Arcades, Inc.,*
  472 U.S. 491 (1985) ......................................................................................... 19

*Burroughs v. Corey,*
  92 F. Supp. 3d 1201 (M.D. Fla. 2015),
  *aff'd,* 647 Fed. App'x 967 (11th Cir. 2016) ....................................................... 15

*Cal. Pro-Life Council, Inc. v. Getman,*
  328 F.3d 1088 (9th Cir. 2003) ........................................................................... 4

*Caribbean Marine Servs. Co. v. Baldrige,*
  844 F.2d 668 (9th Cir. 1988) ........................................................................... 23

*City of Los Angeles v. Alameda Books, Inc.,*
  535 U.S. 425 (2002) ......................................................................................... 21

DEFENDANTS' MOTION TO DISMISS
AND OPPOSITION TO PLAINTIFF'S
RENEWED MOTION FOR
PRELIMINARY INJUNCTION --
NO. 3:17-CV-05531-RBL

ii

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA 98504-0100
(360) 753-6200

*City of Los Angeles v. Lyons,*
   461 U.S. 95 (1983) ............................................................................... 23

*City of Seattle v. Huff,*
   111 Wash. 2d 923, 767 P.2d 572 (1989) ................................................. 10, 13

*DISH Network Corp. v. FCC,*
   653 F.3d 771 (9th Cir. 2011) ............................................................... 23

*Dombrowski v. Pfister,*
   380 U.S. 479 (1965) ............................................................................. 10

*Doran v. Salem Inn, Inc.,*
   422 U.S. 922 (1975) ............................................................................... 7

*Drakes Bay Oyster Co. v. Jewell,*
   747 F.3d 1073 (9th Cir. 2013) .............................................................. 24

*Edward J. DeBartolo Corp. v. Fla. Gulf Coast Bldg. & Constr. Trades Council,*
   485 U.S. 568 (1988) ............................................................................. 10

*FCC v. Pacifica Found.,*
   438 U.S. 726 (1978) ............................................................................. 22

*Fed. Election Comm'n v. Wis. Right To Life, Inc.,*
   551 U.S. 449 (2007) ............................................................................. 14

*Flast v. Cohen,*
   392 U.S. 83 (1968) ................................................................................. 3

*Foti v. City of Menlo Park,*
   146 F.3d 6295 (9th Cir. 1998),
    *as amended on denial of reh'g* (July 29, 1998) .................................. 21

*Frisby v. Schultz,*
   487 U.S. 474 (1988) ............................................................................. 22

*Garrison v. Louisana,*
   379 U.S. 64 (1964) ............................................................................... 14

*Goldie's Bookstore. Inc. v. Superior Court of California,*
   739 F.2d 466 (9th Cir. 1984) ............................................................... 23

*Gresham v. Picker,*
   705 Fed. App'x 554 (9th Cir. 2017) ...................................................... 23

*Holmes v. Lovick,*
   No. C11-1097-RSM-BAT, 2012 WL 1357028 (W.D. Wash. Jan. 30, 2012),
   *report and recommendation adopted,* 2012 WL 1327813 (W.D. Wash. Apr. 16, 2012) ...... 13

DEFENDANTS' MOTION TO DISMISS
AND OPPOSITION TO PLAINTIFF'S
RENEWED MOTION FOR
PRELIMINARY INJUNCTION --
NO. 3:17-CV-05531-RBL

iii

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA 98504-0100
(360) 753-6200

*Hustler Magazine, Inc. v. Falwell*,
    485 U.S. 46 (1988) ................................................................................................... 14

*INS v. St. Cyr*, 533 U.S. 289 (2001) .................................................................................. 10

*Klein v. San Diego Cty.*,
    463 F.3d 1029 (9th Cir. 2006) ................................................................................. 20

*Laird v. Tatum*,
    408 U.S. 1 (1972) ....................................................................................................... 4

*Lopez v. Gandaele*,
    630 F.3d 775 (9th Cir. 2010) ................................................................................. 4, 5

*Lujan v. Defs. of Wildlife*,
    504 U.S. 555 (1992) ................................................................................................ 3, 6

*McCormack v. Hiedeman*,
    694 F.3d 1004 (9th Cir. 2012) ..................................................................................... 7

*Members of the City Council of Los Angeles v. Taxpayers for Vincent*,
    466 U.S. 789 (1984) .............................................................................................. 9, 21

*Moriwaki v Rynearson*,
    No. 17-2-01463-1, 2018 WL 733811 (Wash. Super. Jan. 10, 2018) ........................ 2, 5

*Munaf v. Geren*,
    553 U.S. 674 (2008) ..................................................................................................... 7

*New York v. Ferber*,
    458 U.S. 747 (1982) ....................................................................................... 8, 15, 20

*NLRB v. Catholic Bishop of Chi.*,
    440 U.S. 490 (1979) .................................................................................................. 10

*Orantes-Hernandez v. Thornburgh*,
    919 F.2d 549 (9th Cir. 1990) ................................................................................... 23

*Parker v. Levy*,
    417 U.S. 733 (1974) .................................................................................................. 15

*Pennhurst State Sch. & Hosp. v. Halderman*,
    465 U.S. 89 (1984) ...................................................................................................... 5

*Powell's Books, Inc. v. Kroger*,
    622 F.3d 1202 (9th Cir. 2010) .................................................................................... 9

*Preminger v. Principi*,
    422 F.3d 815 (9th Cir. 2005) ................................................................................... 24

DEFENDANTS' MOTION TO DISMISS
AND OPPOSITION TO PLAINTIFF'S
RENEWED MOTION FOR
PRELIMINARY INJUNCTION --
NO. 3:17-CV-05531-RBL

iv

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA 98504-0100
(360) 753-6200

*Regal Knitwear Co. v. NLRB*,
  324 U.S. 9 (1945)............................................................................................................6

*S. Pac. Co. v. Conway*,
  115 F.2d 746 (9th Cir. 1940) ........................................................................................5

*S.O.C., Inc. v. Cty. of Clark*,
  152 F.3d 1136,
  *as amended by*, 160 F.3d 541 (9th Cir. 1998) ...........................................................20

*Sheehan v. Gregoire*,
  272 F. Supp. 2d 1135 (W.D. Wash. 2003) .................................................................14

*Simon v. E. Ky. Welfare Rights Org.*,
  426 U.S. 26 (1976)..........................................................................................................6

*Snyder v. Phelps*,
  562 U.S. 443 (2011).................................................................................................14, 22

*State Dep't of Ecology v. Campbell & Gwinn, LLC*,
  146 Wash. 2d 1, 43 P.3d 4 (2002) ................................................................................9

*State ex rel. Hamilton v. Superior Court for Whatcom Cty.*,
  3 Wash. 2d 633, 101 P.2d 588 (1940) .........................................................................6

*State v. Alexander*,
  76 Wash. App. 830, 888 P.2d 175 (1995) ..................................................................13

*State v. Alphonse*,
  147 Wash. App. 891, 197 P.3d 1211 (2008) ..............................................................13

*State v. Bell*,
  183 Wash. App. 1029 (2014)................................................................................13, 19

*State v. Bryant*,
  146 Wash. 2d 90, 42 P.3d 1278 (2002) .......................................................................6

*State v. Dyson*,
  74 Wash. App. 237, 872 P.2d 1115 (1994) ...............................................................12

*State v. Gonzalez*,
  168 Wash. 2d 256, 226 P.3d 131 (2010) ...................................................................10

*State v. Gregory*,
  427 P.3d 621 (Wash. Oct. 11, 2018)............................................................................6

*State v. Kohonen*,
  192 Wash. App. 567, 370 P.3d 16 (2016) ..................................................................13

*State v. Lilyblad*,
  163 Wash. 2d 1, 177 P.3d 686 (2008) ........................................................................11

*State v. Sanchez*,
   177 Wash. 2d 835, 306 P.3d 935 (2013) ........................................ 13

*State v. Sloan*,
   149 Wash. App. 736, 205 P.3d 172 (2009) .................................... 11

*State v. Stanley*,
   200 Wash. App. 1035,  (2017),
   *review denied*, 189 Wash. 2d 1036 (2018),
   *cert. denied*, 138 S. Ct. 1702 (2018),
   *reh'g denied*, 138 S. Ct. 2670 (2018) ...................................... 13, 18

*State v. Yates*,
   161 Wash. 2d 714, 168 P.3d 359 (2007) ....................................... 6

*Stormans, Inc. v. Selecky*,
   586 F.3d 1109 (9th Cir. 2009) ............................................. 7, 23-24

*Thalheimer v. City of San Diego*,
   645 F.3d 1109 (9th Cir. 2011) .................................................. 20

*Turner Broad. Sys., Inc. v. FCC*,
   512 U.S. 622 (1994) ............................................................ 22

*United States v. Bowker*,
   372 F.3d 365(6th Cir. 2004)
   *vacated on other grounds*, 543 U.S. 1182 (2005),
   *reinstated in relevant part*, 125 Fed. App'x. 701 (6th Cir. 2005) ........ 15

*United States v. Moreland*,
   207 F. Supp. 3d 1222 (N.D. Okla. 2016) ...................................... 15

*United States v. Osinger*,
   753 F.3d 939 (9th Cir. 2014) ................................................. 14

*United States v. Petrovic*,
   701 F.3d 849 (8th Cir. 2012) ................................................. 14

*United States v. Sayer*,
   No. 2:11-CR-113-DBH, 2012 WL 1714746 (D. Me. May 15, 2012),
   *aff'd*, 748 F.3d 425 (1st Cir. 2014) ......................................... 17

*United States v. Williams*,
   553 U.S. 285 (2008) ........................................................... 8-9

*Virginia v. Hicks*,
   539 U.S. 113 (2003) ......................................................... 9, 19

*Vivid Entm't, LLC v. Fielding*,
   774 F.3d 566 (9th Cir. 2014) ................................................. 23

DEFENDANTS' MOTION TO DISMISS
AND OPPOSITION TO PLAINTIFF'S
RENEWED MOTION FOR
PRELIMINARY INJUNCTION  --
NO. 3:17-CV-05531-RBL

vi

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA  98504-0100
(360) 753-6200

*Weinberger v. Romero-Barcelo*,
456 U.S. 305 (1982)......................................................................... 7

*Winter v. Nat. Res. Def. Council, Inc.*,
555 U.S. 7 (2008)..................................................7, 20, 23-24

*Young v. New York City Transit Auth.*,
903 F.2d 146 (2d Cir. 1990) ........................................... 18

**Statutes**

18 U.S.C. § 2261A ......................................................... 14

2004 Wash. Sess. Laws 326......................................... 19, 24

National Defense Authorization Act of 2012,
Pub. L. No. 112-81 (Dec. 31, 2011) ....................... 2

Wash. Rev. Code 43.10 ...................................... 6

Wash. Rev. Code § 43.10.090 ............................ 4

Wash. Rev. Code § 43.10.232 ............................ 4

Wash. Rev. Code § 9.61.230 ........................ 12-13

Wash. Rev. Code § 9.61.260 ...............1-2, 11-12, 16, 22

Wash. Rev. Code § 9.61.260(1) ....................... 10

Wash. Rev. Code § 9.61.260(1)(b) .................. passim

**Other Authorities**

Denver Pratt, *He was sent to jail for harassing her. A year later, the threatening messages started again*,
Bellingham Herald, Oct. 17, 2018,
https://www.courts.wa.gov/content/publicupload/
eclips/2018%2010%2017%20He%20was%20sent%20to%20jail%20for%
20harassing%20her%20A%20year%20later%20the%20threatening%20
messages%20started%20again.pdf ........................... 12

H.B. Rep. on Engrossed Substitute H.B. 2771,
58th Leg., Reg. Sess. (Wash. 2004)............................. 12, 16-17, 22, 24

Joanna Lee Mishler, *Cyberstalking: Can Communication Via the Internet Constitute a Credible Threat, and Should an Internet Service Provider Be Liable If It Does?*,
17 Santa Clara Computer & High Tech. L.J. 115 (Dec. 2000 ............ 18

DEFENDANTS' MOTION TO DISMISS
AND OPPOSITION TO PLAINTIFF'S
RENEWED MOTION FOR
PRELIMINARY INJUNCTION --
NO. 3:17-CV-05531-RBL

vii

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA 98504-0100
(360) 753-6200

Nisha Ajmani, *Cyberstalking and Free Speech: Rethinking the Rangel Standard in the Age of the Internet*,
   90 Or. L. Rev. 303 (2011) ............................................................... 16

S.B. Rep. on Engrossed Substitute H.B. 2771, 58th Leg., Reg. Sess. (Wash. 2004) ......... 12, 17

Scott Hammack, *The Internet Loophole: Why Threatening Speech On-Line Requires a Modification of the Courts' Approach to True Threats and Incitement*,
   36 Colum. J.L. & Soc. Probs. 65(2002) .............................................. 16

Webster's Third New International Dictionary of the English Language  (2002) ................... 11

**Constitutional Provisions**

U.S.  Const. amend. I ......................................................... 3, 4, 14, 20, 22-23

U.S. Const. art. III ....................................................................... 3

Wash. Const. art. III, § 21 ................................................................ 4

DEFENDANTS' MOTION TO DISMISS
AND OPPOSITION TO PLAINTIFF'S
RENEWED MOTION FOR
PRELIMINARY INJUNCTION  --
NO. 3:17-CV-05531-RBL

viii

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA  98504-0100
(360) 753-6200

# I.    INTRODUCTION

This Court should reject Rynearson's attack on Washington's cyberstalking law, Wash. Rev. Code § 9.61.260(1)(b), which protects against stalkers using the Internet and other electronic means to terrorize and harm their intended victims.

As a threshold issue, this matter is not justiciable because of Rynearson's lack of standing. Rynearson cannot satisfy the constitutional requirement of having a personal, credible injury or threat of injury because the type of speech he wishes to engage in does not fall within the scope of Wash. Rev. Code § 9.61.260. Indeed, a Washington state court has already held Rynearson's speech to be protected under the First Amendment. Rynearson also cannot satisfy the constitutional requirements of causation and redressability when he faces no threat of prosecution for his protected speech from either of the named Defendants and any judgment in this case would provide ineffectual relief from enforcement of the statute statewide. Because Rynearson cannot establish an actual, genuine case or controversy instead of one based on hypotheticals or conjecture, his claims cannot proceed.

Even on the merits of Rynearson's motion, Rynearson has not met his heavy burden to obtain injunctive relief. Wash. Rev. Code § 9.61.260(1)(b) satisfies constitutional scrutiny. While Rynearson asserts the statute criminalizes protected speech, he ignores the wide swath of plainly legitimate applications to stalking conduct that are supported by the statute's plain meaning and Washington state case law. Even if Rynearson could show a likelihood of success on the merits, he has failed to prove the other elements required to obtain injunctive relief. In particular, Rynearson cannot demonstrate a likelihood of irreparable harm absent an injunction when his speech is constitutionally protected and outside the scope of cyberstalking law. He thus faces no risk that either Attorney General Ferguson or Kitsap County Prosecutor Robinson would seek to prosecute him or anyone else for engaging in the type of speech for which he seeks relief. Rynearson also cannot show that the balance of equities are in his favor or that an injunction against the cyberstalking law is in the public interest.

DEFENDANTS' MOTION TO DISMISS
AND OPPOSITION TO PLAINTIFF'S
RENEWED MOTION FOR
PRELIMINARY INJUNCTION --
NO. 3:17-CV-05531-RBL

1

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA  98504-0100
(360) 753-6200

## II.    FACTS RELEVANT TO MOTION

Clarence Moriwaki and Richard Lee Rynearson, III both reside on Bainbridge Island, Washington and have homes that are about 300 feet apart. Moriwaki is the founder of Bainbridge Island Japanese-American Exclusion Memorial, an organization dedicated to raising awareness about the internment of Japanese-Americans in Washington State during World War II. Rynearson regularly posts online about civil liberties issues. At issue in this case are Rynearson's repeated criticisms that Moriwaki failed to vocally condemn a provision in the National Defense Authorization Act of 2012 that Rynearson believed would permit indefinite detention of American citizens. The criticism came in the form of Facebook posts and messages to and about Moriwaki on Moriwaki's personal Facebook page; text messages to Moriwaki's cell phone; Rynearson's creation of a public Facebook page calling into question Moriwaki's fitness as President and board member of the Memorial; and public posting of a "meme" about Moriwaki on that Facebook page. *See* Dkt. 45 (Rynearson Decl.) ¶¶ 2-12; Mot. at 2:3-3:14; *see also* Dkt. 46 (Volokh Decl.) at 5-10, (Ex. A, Bainbridge Island Municipal Court Findings of Fact).

Based on allegations that Rynearson had stalked, cyberstalked, and harassed Moriwaki, a state municipal court entered a temporary stalking protection order against Rynearson in July 2017. Rynearson appealed the protection order. *See* Dkt. 46, Ex. B. In January 2018, the Washington State Kitsap County Superior Court vacated the protection order on grounds that Rynearson's speech was protected by the First Amendment. *Moriwaki v Rynearson*, No. 17-2-01463-1, 2018 WL 733811, at *1 (Wash. Super. Jan. 10, 2018). Applying Supreme Court precedent to Wash. Rev. Code § 9.61.260, the superior court found that Rynearson's online speech, "while causing emotional distress to Moriwaki, cannot be restricted solely because it is upsetting or arouses contempt." *Id*. at *10-11. The superior court therefore vacated the protection order because Rynearson's communications and conduct fell under the umbrella of constitutionally protected speech. *Id*. at *12.

DEFENDANTS' MOTION TO DISMISS
AND OPPOSITION TO PLAINTIFF'S
RENEWED MOTION FOR
PRELIMINARY INJUNCTION --
NO. 3:17-CV-05531-RBL

2

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA 98504-0100
(360) 753-6200

While these proceedings were pending in state court, Rynearson filed this lawsuit seeking a declaratory judgment that Washington's cyberstalking statute, Wash. Rev. Code § 9.61.260(1)(b) is facially invalid under the First Amendment, and an injunction prohibiting the named Defendants or any one "acting for, with or in active concert with" Defendants from enforcing Section .260(1)(b). Dkt. 1, at 7. This Court dismissed Rynearson's complaint based on *Younger* abstention. The Ninth Circuit reversed the dismissal and, following remand, Rynearson filed this motion for preliminary injunction again seeking to enjoin Attorney General Ferguson and Kitsap County Prosecutor Robinson from enforcing Wash. Rev. Code § 9.61.260(1)(b) to prohibit his "criticism of Mr. Moriwaki through online speech" and "substantially similar criticism of other civic leaders in the future" (Dkt. 45 ¶ 16), and so that "other Washingtonians can [similarly] speak their minds without fear of criminal penalty" (Mot. at 15:14-15).

## III.    ARGUMENT

### A.    Rynearson Lacks Standing to Challenge Washington's Cyberstalking Statute

As a threshold issue, this case is not justiciable because Rynearson lacks standing to challenge the constitutionality of Washington's cyberstalking statute. Article III of the federal Constitution limits the judicial power of federal courts to "cases" and "controversies." *Flast v. Cohen*, 392 U.S. 83, 94 (1968). Standing to bring a claim is a "controlling element[ ] in the definition of a case or controversy." *Alaska Right to Life Political Action Comm. v. Feldman*, 504 F.3d 840, 848 (9th Cir. 2007) (alteration in original). "At an 'irreducible constitutional minimum,' Article III standing requires proof (1) that the plaintiff suffered an injury in fact that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical;' (2) of a causal connection between that injury and the complained-of conduct; and (3) that a favorable decision will likely redress the alleged injury." *Id.* (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992)).

As part of this inquiry, the plaintiff must establish a "personal stake in the outcome" so as to assure "concrete adverseness" in the controversy. *Baker v. Carr*, 369 U.S. 186, 204 (1962).

While the Supreme Court has adopted a "relaxed approach" to standing when First Amendment overbreadth is asserted, it has done so only upon a showing that the plaintiff is "immediately in danger of sustaining[ ] a direct injury as a result of an [executive or legislative] action." *Alaska Right to Life*, 504 F.3d at 851 (alterations in original) (quoting *Laird v. Tatum*, 408 U.S. 1, 12-13 (1972)). In other words, even when the plaintiff challenges the constitutionality of a statute because it may "unconstitutionally chill" the First Amendment rights of others, the plaintiff must still satisfy the "rigid constitutional requirement" of having a personal, credible injury or threat of injury from the challenged statute. *Lopez v. Gandaele*, 630 F.3d 775, 785 (9th Cir. 2010). This requires proof not only that the plaintiff has "an actual and well-founded fear that the law will be enforced against [him]," but also that the "plaintiff's intended speech arguably falls within the statute's reach." *Cal. Pro-Life Council, Inc. v. Getman*, 328 F.3d 1088, 1095 (9th Cir. 2003) (alteration in original). If, however, the enforcing jurisdiction has already interpreted the challenged law as not applying to the plaintiff, then the plaintiff's claims of future harm "lack credibility" and dismissal is required. *Lopez*, 630 F.3d at 788.

Here, Rynearson cannot establish any "case" or "controversy" because the type of speech that he wishes to engage in does not fall within the scope of Washington's cyberstalking statute. First, Rynearson cannot show an "actual and well-grounded fear" that he risks criminal prosecution for violating the cyberstalking law. As a preliminary matter, Attorney General Ferguson does not possess inherent criminal law enforcement authority, Wash. Const. art. III, § 21, but may, pursuant to state law, only investigate or prosecute criminal matters if specifically requested to do so by the Governor or a local county prosecuting attorney. *See* Wash. Rev. Code §§ 43.10.090, .232. But Rynearson does not allege, nor could he, that Attorney General Ferguson has ever been asked by the Governor or a county prosecutor to "communicate a specific warning" or "threaten to initiate proceedings" against Rynearson—or anyone else—to enforce the

DEFENDANTS' MOTION TO DISMISS
AND OPPOSITION TO PLAINTIFF'S
RENEWED MOTION FOR
PRELIMINARY INJUNCTION --
NO. 3:17-CV-05531-RBL

4

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA 98504-0100
(360) 753-6200

cyberstalking statute.[1] *Cf. S. Pac. Co. v. Conway*, 115 F.2d 746, 750 (9th Cir. 1940) (affirming dismissal of declaratory judgment action when no proof that state attorney general had ever threatened or taken any action to enforce statute). Further, while Rynearson points to the probable cause police report and resulting email from the Kitsap County Prosecuting Attorney's Office as a threat of prosecution (*see* Mot. at 14;Dkt. 45, Ex. C), a Washington superior court rejected the notion that the communications and conduct at issue in those reports fell under the scope of the cyberstalking statute. *Moriwawki*, 2018 WL 733811, at *10-12. If Rynearson cannot be subject to a protective order for cyberstalking because he was engaging in protected speech, then he certainly cannot be criminally prosecuted for the same communications. Thus, Rynearson faces no reasonable threat of prosecution from Kitsap County Prosecutor Robinson, as he claims. *See* Mot. at 14-15.

Second, Rynearson cannot establish that his proposed speech falls within the reach of the cyberstalking statute. One Washington court has already said Rynearson's speech was protected and thus could not be subject to a stalking protection order brought under the cyberstalking statute. There is no reason to believe that other Washington courts would apply a different interpretation should Rynearson "engage in the future in speech substantially similar to the speech that gave rise to the police department's probable cause finding." Mot. at 14-15. While Rynearson may claim he is chilled from future speech, his continued self-censorship is not based on any real threat of present or future harm because of application of the cyberstalking statute to him. *See Lopez*, 630 F.3d at 792 ("injury-in-fact does not turn on the strength of plaintiffs' concerns about a law, but rather on the credibility of the threat that the challenged law will be enforced against them").

_____

[1] If Rynearson included Attorney General Ferguson not because of his own individual actions, but as an attempt to enjoin the State of Washington from enforcing Wash. Rev. Code § 9.61.260(1)(b), then his claims are barred by the Eleventh Amendment. *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 101 (1984) (The Eleventh Amendment bars a suit against state officials when "the state is the real, substantial party in interest," regardless whether the plaintiff seeks "damages or injunctive relief.").

DEFENDANTS' MOTION TO DISMISS
AND OPPOSITION TO PLAINTIFF'S
RENEWED MOTION FOR
PRELIMINARY INJUNCTION --
NO. 3:17-CV-05531-RBL

5

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA 98504-0100
(360) 753-6200

Finally, Rynearson has provided no proof that either Defendant has any intent to enforce Wash. Rev. Code § 9.61.260(1)(b) against him. Thus without a threat of injury from these Defendants there is no "redress" for this Court to provide. *See Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 41 (1976) (federal court may act only to "redress injury that fairly can be traced to the challenged action of the defendant"). Even if there were, granting injunctive and declaratory relief against Attorney General Ferguson and Kitsap County Prosecutor Robinson would not provide Rynearson complete, effectual relief from enforcement of the cyberstalking statute, and thus Rynearson cannot establish the final prong for standing. *See Lujan*, 504 U.S. at 569. The Supreme Court has long held that "courts . . . may not grant an enforcement order or injunction so broad as to make punishable the conduct of persons who act independently and whose rights have not been adjudged according to law." *Regal Knitwear Co. v. NLRB*, 324 U.S. 9, 13 (1945). To the extent that Rynearson seeks protection from prosecution should he engage in actual cyberstalking—not protected speech—in other jurisdictions, Rynearson has neither named any other local county prosecutor in this lawsuit nor attempted to show that either named Defendant could control the prosecutors' actions. In fact, they cannot. *See State v. Yates*, 161 Wash. 2d 714, 740, 168 P.3d 359 (2007) (recognizing that each county prosecutor has a "sovereign right" under the state constitution to determine how crimes within each county should be prosecuted), *overturned on other grounds by State v. Gregory*, 427 P.3d 621 (Wash. Oct. 11, 2018); *State v. Bryant*, 146 Wash. 2d 90, 102, 42 P.3d 1278 (2002) (decision to prosecute or not is within discretion of each county prosecutor; power does not include authority to bind prosecutors of neighboring counties); *State ex rel. Hamilton v. Superior Court for Whatcom Cty.*, 3 Wash. 2d 633, 638-40, 101 P.2d 588 (1940) (limiting attorney general's "supervisory control and direction" over county prosecutors to that specifically stated in Wash. Rev. Code 43.10, which does not include prohibiting prosecutors from taking specific criminal or civil action within their authority). Thus, even if this Court were to provide redress in this

DEFENDANTS' MOTION TO DISMISS
AND OPPOSITION TO PLAINTIFF'S
RENEWED MOTION FOR
PRELIMINARY INJUNCTION --
NO. 3:17-CV-05531-RBL

6

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA 98504-0100
(360) 753-6200

1    case, it would not bind other prosecutors from enforcing Wash. Rev. Code § 9.61.260(1)(b) and

2    would not provide Rynearson effective relief.

3        In sum, Rynearson lacks standing to raise his overbreadth challenge to Washington's

4    cyberstalking statute because he cannot show that he personally faces a specific, credible threat

5    of prosecution from the named Defendants for violating Washington's cyberstalking statute

6    based on his intended communications. More importantly, Rynearson's public, online speech

7    has already been held to be protected by the First Amendment. There is thus no present genuine

8    case or controversy requiring this Court's attention. This action must be dismissed.

9    **B.    Rynearson Cannot Meet His High Burden to Obtain Injunctive Relief**

10       A preliminary injunction is an "extraordinary remedy never awarded as of right." *Winter*

11   *v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008) (citing *Munaf v. Geren*, 553 U.S. 674, 689-

12   90 (2008)). In each case, the court must balance the competing claims and consider the effects

13   on each party, paying "'particular regard for the public consequences in employing the

14   extraordinary remedy of injunction.'" *Id.* (quoting *Weinberger v. Romero-Barcelo*, 456 U.S.

15   305, 312 (1982)). The party seeking injunctive relief bears the burden of establishing that (1) he

16   is likely to succeed on the merits; (2) he is likely to suffer irreparable harm in the absence of

17   preliminary relief; (3) the balance of equities tips in his favor; and (4) an injunction is in the

18   public interest. *Id.* at 20. Any preliminary relief "must be tailored to remedy the specific harm

19   alleged" and can only apply to the specific plaintiff before the court. *McCormack v. Hiedeman*,

20   694 F.3d 1004, 1019 (9th Cir. 2012); *see also Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1140

21   (9th Cir. 2009). Moreover, "neither declaratory nor injunctive relief can directly interfere with

22   enforcement of contested statutes or ordinances except with respect to the particular federal

23   plaintiffs, and the State is free to prosecute others who may violate the statute." *McCormack*,

24   694 F.3d at 1020 (quoting *Doran v. Salem Inn, Inc.*, 422 U.S. 922, 931 (1975)).

25       Rynearson has not met his burden to obtain injunctive relief. He cannot show a likelihood

26   of success on the merits. Rynearson mischaracterizes the function and application of Wash. Rev.

DEFENDANTS' MOTION TO DISMISS
AND OPPOSITION TO PLAINTIFF'S
RENEWED MOTION FOR
PRELIMINARY INJUNCTION --
NO. 3:17-CV-05531-RBL

7

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA  98504-0100
(360) 753-6200

Code § 9.61.260(1)(b), which primarily regulates stalking conduct achieved through electronic means and has never been held by a Washington court to apply to pure speech. Even if Rynearson could show a likelihood of success on the merits, he has failed to show the other elements required to obtain injunctive relief. In particular, Rynearson can show no likelihood of irreparable harm when his intended speech has already been held outside the scope of cyberstalking law. He thus faces no risk that either Attorney General Ferguson or Kitsap County Prosecutor Robinson would seek to prosecute him for engaging in the type of speech for which he seeks relief. Rynearson also cannot show that the balance of equities are in his favor or that an injunction is in the public interest. Washington's cyberstalking law, including its (1)(b) provisions, serves an important purpose of protecting victims of stalking from being terrorized through electronic means.

1. **Rynearson Has Not Shown He Is Likely to Prevail on His Overbreadth Challenge to Wash. Rev. Code § 9.61.260(1)(b)**

   a. **Overbreadth doctrine is strong medicine and requires Rynearson to show real and substantial overbreadth judged in relation to the statute's plainly legitimate sweep**

Rynearson's overbreadth challenge has no merit. The Supreme Court has repeatedly "recognized that the overbreadth doctrine is 'strong medicine' and [has] employed it with hesitation, and then 'only as a last resort.'" *New York v. Ferber*, 458 U.S. 747, 769 (1982) (quoting *Broadrick v. Oklahoma*, 413 U.S. 601, 613 (1973)). This is because the overbreadth doctrine seeks to balance the "harmful effects" of "invalidating a law that in some of its applications is perfectly constitutional" against the possibility that "the threat of enforcement of an overbroad law [will] dete[r] people from engaging in constitutionally protected speech[.]" *United States v. Williams*, 553 U.S. 285, 292 (2008). Accordingly, the Court has "vigorously enforced the requirement that a statute's overbreadth be *substantial*, not only in an absolute sense, but also relative to the statute's plainly legitimate sweep," before it may be invalidated.

DEFENDANTS' MOTION TO DISMISS
AND OPPOSITION TO PLAINTIFF'S
RENEWED MOTION FOR
PRELIMINARY INJUNCTION --
NO. 3:17-CV-05531-RBL

8

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA 98504-0100
(360) 753-6200

*Id.* This is particularly true "where conduct and not merely speech is involved." *Broadrick*, 413 U.S. at 615.

In determining whether a statute's alleged overbreadth is substantial, courts consider a statute's application to real-world conduct, not "fanciful hypotheticals." *Williams*, 553 U.S. at 301-02. "[T]he mere fact that one can conceive of some impermissible applications of a statute is not sufficient to render it susceptible to an overbreadth challenge." *Members of the City Council of the City of Los Angeles v. Taxpayers for Vincent*, 466 U.S. 789, 800 (1984). Rather, "there must be a realistic danger that the statute itself will significantly compromise recognized First Amendment protections of parties not before the Court for it to be facially challenged on overbreadth grounds." *Id.* at 801.

Here, Rynearson fails to meet his burden to prove "from the text of [the law] *and from actual fact*," that substantial overbreadth exists because (1) Wash. Rev. Code § 9.61.260(1)(b)'s plainly legitimate sweep is wide and it covers primarily stalking conduct; and (2) there are few—if any—unconstitutional applications of the statute as evidenced by how the statute has in fact been applied in Washington State. *Virginia v. Hicks*, 539 U.S. 113, 122 (2003) (alteration in original) (emphasis added).

### b. The statute's plainly legitimate sweep is extensive because it regulates mostly conduct, not speech

"The first step in overbreadth analysis is to construe the challenged statute" to determine if and to what extent it reaches protected speech. *Williams*, 553 U.S. at 293. To do so, this Court must interpret the law the same as would the Washington Supreme Court, which is to ascertain and carry out the Washington Legislature's intent through the statute's plain meaning. *Powell's Books, Inc. v. Kroger*, 622 F.3d 1202, 1209 (9th Cir. 2010); *State Dep't of Ecology v. Campbell & Gwinn, LLC*, 146 Wash. 2d 1, 9-10, 43 P.3d 4 (2002). "Plain meaning 'is to be discerned from the ordinary meaning of the language at issue, the context of the statute in which that provision is found, related provisions, and the statutory scheme as a whole.' " *State v. Gonzalez*, 168 Wash.

DEFENDANTS' MOTION TO DISMISS
AND OPPOSITION TO PLAINTIFF'S
RENEWED MOTION FOR
PRELIMINARY INJUNCTION --
NO. 3:17-CV-05531-RBL

9

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA 98504-0100
(360) 753-6200

2d 256, 263, 226 P.3d 131 (2010). Here, the language of Wash. Rev. Code § 9.61.260(1)(b) indicates that its plainly legitimate sweep is considerable because it primarily regulates the conduct of harassment and stalking, as evidenced by the specific intent provision in the statute, which requires proof of an "intent to harass, intimidate, torment, or embarrass any other person." Wash. Rev. Code § 9.61.260(1).

Rynearson relies on selective definitions to argue that these terms suggest that "public figures and public officials could be subject to criminal prosecution and punishment if they are seen as intended to persistently 'vex' or 'annoy' those public figures, or to embarrass or make them 'self-conscious' about something." Mot. at 5:10-26. But this approach is squarely at odds with the rule that courts should construe statutes to avoid constitutional infirmities. *See, e.g.*, *INS v. St. Cyr*, 533 U.S. 289, 299 (2001). This is particularly true when the terms at issue are in fact susceptible to a narrower construction. Indeed, a facial challenge fails if the statute is susceptible to a narrowing construction that would cure its constitutional infirmity. *See Dombrowski v. Pfister*, 380 U.S. 479, 497 (1965) (allowing for "benefit of limiting construction"); *Ala. Fed'n of Labor, Local Union 103 v. McAdory*, 325 U.S. 450, 470 (1945) (one of primary ways to avoid unnecessary constitutional decisions is "to construe a statute, whenever reasonably possible, so that it may be constitutional rather than unconstitutional"); *Ashwander v. Tenn. Valley Auth.*, 297 U.S. 288, 348 n.8 (1936) (Brandeis, J., concurring) (citing cases). "[W]here an otherwise acceptable construction of a statute would raise serious constitutional problems, the Court will construe the statute to avoid such problems unless such construction is plainly contrary to the intent of [the Legislature]." *Edward J. DeBartolo Corp. v. Fla. Gulf Coast Bldg. & Constr. Trades Council*, 485 U.S. 568, 575 (1988) (citing *NLRB v. Catholic Bishop of Chi.*, 440 U.S. 490, 499-501, 504 (1979)).

As Rynearson must concede, the Washington Supreme Court has already "very narrowly" defined the term "intimidate" to include only "compel[ling] to action or inaction (as by threats)." *City of Seattle v. Huff*, 111 Wash. 2d 923, 929, 767 P.2d 572 (1989) (alteration in

DEFENDANTS' MOTION TO DISMISS
AND OPPOSITION TO PLAINTIFF'S
RENEWED MOTION FOR
PRELIMINARY INJUNCTION --
NO. 3:17-CV-05531-RBL

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA 98504-0100
(360) 753-6200

orginal); *see also* Mot. at 5:14-15. Further, Rynearson fails to mention that the dictionary primarily defines "harass" as "to lay waste" and "to worry and impede by repeated attacks." *Harass*, Webster's Third New International Dictionary of the English Language 1031 (2002). Similarly, the definition of "torment" includes "the infliction of torture . . . to punish or coerce someone." *Torment*, Webster's at 2412. And the term "embarrass" includes "to place in doubt, perplexity or difficulties," as well as "to hamper or impede the movement or freedom of movement of [a person]." *Embarrass*, Webster's at 739. Consistent with these dictionary definitions, Wash. Rev. Code § 9.61.260 can be narrowly construed to proscribe unwanted harassment and stalking conduct intended to cause victims extreme and persistent distress.

Moreover, the cyberstalking statute requires intent to form when the person "makes an electronic communication"—that is when the communication is sent or initiated (before anything is read or received). This is further evidence that Wash. Rev. Code § 9.61.260 proscribes conduct—the act of making an electronic communication with the intent to harass—and not speech. *Cf. State v. Lilyblad*, 163 Wash. 2d 1, 4, 10, 177 P.3d 686 (2008) ("to make" a telephone call includes only "the point of connection" so defendant must "form the specific intent to harass at the time the defendant initiates the call to the victim"); *accord State v. Sloan*, 149 Wash. App. 736, 744-45, 205 P.3d 172 (2009); *State v. Meneses*, 149 Wash. App. 707, 713, 205 P.3d 916 (2009) ("[t]he word 'makes' is critical" because it means "to begin or initiate the telephone call").

Further, under subsection (1)(b), the electronic communication must be made "anonymously and repeatedly *whether or not conversation occurs*." Wash. Rev. Code § 9.61.260(1)(b) (emphasis added). In other words, liability does not turn on conversation or even speech, but rather repeated and anonymous harassment. Cyberstalkers can easily use the Internet to send hundreds, even thousands, of frightening messages in a matter of minutes, which over days, weeks, or even years can cause extreme trauma to the victim, even if the messages

DEFENDANTS' MOTION TO DISMISS
AND OPPOSITION TO PLAINTIFF'S
RENEWED MOTION FOR
PRELIMINARY INJUNCTION --
NO. 3:17-CV-05531-RBL

11

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA 98504-0100
(360) 753-6200

were in fact received by third persons.[2] This is true even if the thousands of messages contain a seemingly friendly message like "I love you." If sent with the requisite intent repeatedly and anonymously, it would still be conduct that constituted harassment notwithstanding the content of the message. Rynearson's argument that the statute criminalizes "pure speech, without any associated noncomunicative conduct," simply misreads the statute. Mot. at 7.

Wash. Rev. Code § 9.61.260's legislative history further confirms that the Washington Legislature did not intend for the cyberstalking statute to regulate constitutionally protected speech. Rather, it was intended to regulate the use of new technologies to stalk and harass victims. H.B. Rep. on Engrossed Substitute H.B. 2771, 58th Leg., Reg. Sess. (Wash. 2004) (cyberstalking statute was enacted to prevent predators from "us[ing] technology to terrorize their victims"). Indeed, testimony for the bill notes that "[c]yberstalking is an expression of an old crime: violence against women"—a nod to the federal cyberstalking law which was enacted as part of the Violence Against Women's Act and an acknowledgment that the statute was not meant to broaden criminal liability for protected speech, but rather to target violent acts that had simply found a new medium—the Internet. *Id*. at 4. Another bill report similarly notes that there are already "three criminal laws in Washington that prohibit harassment and stalking" but another is needed to address "the use of new technologies" to stalk and harass victims. S.B. Rep. on Engrossed Substitute H.B. 2771, at 2, 58th Leg., Reg. Sess. (Wash. 2004).

Finally, an identical intent provision in the telephone harassment statute, Wash. Rev. Code § 9.61.230, resulted in state courts narrowly construing that statute to reach only the conduct of harassment. *See State v. Dyson*, 74 Wash. App. 237, 245 n.5, 872 P.2d 1115 (1994) (telephone harassment statute "is clearly directed against specific conduct—making telephone calls with the intent to harass, intimidate, or torment another" (*id*. at 243); *State v. Alexander*, 76

---

[2] *See, e.g.*, Denver Pratt, *He was sent to jail for harassing her. A year later, the threatening messages started again*, Bellingham Herald, Oct. 17, 2018, https://www.courts.wa.gov/content/publicupload/eclips/2018%2010%2017%20He%20was%20sent%20to%20jail%20for%20harassing%20her%20A%20year%20later%20the%20threatening%20messages%20started%20again.pdf.

DEFENDANTS' MOTION TO DISMISS
AND OPPOSITION TO PLAINTIFF'S
RENEWED MOTION FOR
PRELIMINARY INJUNCTION --
NO. 3:17-CV-05531-RBL

12

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA 98504-0100
(360) 753-6200

Wash. App. 830, 839, 888 P.2d 175 (1995) ("the specific intent requirement, which places the focus of the statute on the caller, sufficiently narrows the scope of the proscribed conduct" with minimal—if any—impact on protected speech); *State v. Alphonse*, 147 Wash. App. 891, 903, 197 P.3d 1211 (2008) ("the statute regulates conduct implicating speech, not speech itself").

Washington courts have consistently found that intent to "harass, intimidate, torment or embarrass" does not render the telephone harassment statute overbroad and there is no reason to construe the intent provision in the cyberstalking statute broader where the plain language is identical, the terms are susceptible to a narrower construction, and both statutes are clearly intended to target harassing conduct. *See Alexander*, 76 Wash. App. at 839; *Huff*, 111 Wash. 2d at 923-29; *see also Holmes v. Lovick*, No. C11-1097-RSM-BAT, 2012 WL 1357028, at *5 (W.D. Wash. Jan. 30, 2012) ("[t]here has been no successful challenge to this statute on the basis of overbreadth or vagueness"), *report and recommendation adopted*, 2012 WL 1327813 (W.D. Wash. Apr. 16, 2012); *State v. Sanchez*, 177 Wash. 2d 835, 843-44, 306 P.3d 935 (2013) (faced with undefined terms, courts "look to related statutes," and will read them together "to achieve a harmonious total statutory scheme" (internal quotation marks omitted)).[3] Indeed, in an unpublished opinion, a Washington state court recently rejected an argument that "intent to 'harass' is overbroad" in the cyberstalking statute, noting that the "cyberstalking statute mirrors the telephone harassment statute, [Wash. Rev. Code §] 9.61.230, which has been upheld against numerous constitutional challenges." *State v. Stanley*, 200 Wash. App. 1035, *6 (2017) (footnote omitted), *review denied*, 189 Wash. 2d 1036 (2018), *cert. denied*, 138 S. Ct. 1702 (2018), *reh'g denied*, 138 S. Ct. 2670 (2018).

---

[3] Washington courts have construed other parts of the cyberstalking statute narrowly and there is also no reason to think they would take a different approach to subsection (1)(b). *See, e.g., State v. Bell*, 183 Wash. App. 1029 (2014) (requiring a finding of a "true threat" to sustain a cyberstalking conviction under subsection (1)(c)); *State v. Kohonen*, 192 Wash. App. 567, 370 P.3d 16 (2016) (same; blog posts stating that defendant wanted to punch alleged victim in the throat and containing a hashtag stating that victim "must die" did not constitute a "true threat," so as to lose their status as protected speech where speech was hyperbolic).

DEFENDANTS' MOTION TO DISMISS
AND OPPOSITION TO PLAINTIFF'S
RENEWED MOTION FOR
PRELIMINARY INJUNCTION --
NO. 3:17-CV-05531-RBL

13

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA 98504-0100
(360) 753-6200

1     Rynearson argues that the requirement of bad purpose does not salvage Wash. Rev. Code

2 § 9.61.260(1)(b) because a speaker's intent is irrelevant to First Amendment analysis. Mot.

3 at 8:21-10:10. But the cases he cites do not involve cyberstalking—or any harassment statutes—

4 and instead involve statutes and torts that, if applicable, would have the potential of suppressing

5 the highest form of protected speech, i.e., political speech, if an intent-based test were to be

6 adopted. *See, e.g.*, *Snyder v. Phelps*, 562 U.S. 443, 454-56 (2011) (picketing of a funeral involved

7 matters of public concern); *Hustler Magazine, Inc. v. Falwell*, 485 U.S. 46 (1988) (First

8 Amendment protects parodies of public figures); *Fed. Election Comm'n v. Wis. Right To Life,*

9 *Inc.*, 551 U.S. 449, 467 (2007) (rejecting intent-based test for determining if ad is functional

10 equivalent of express advocacy); *Garrison v. Louisana*, 379 U.S. 64, 73 (1964) ("debate on

11 public issues" may be in inhibited if speaker fears he will be prosecuted for speaking out of

12 hatred); *Hustler Magazine, Inc.*, 485 U.S. at 53 ("while such a bad motive may be deemed

13 controlling for purposes of tort liability in other areas of the law, we think the First Amendment

14 prohibits such a result in the area of public debate about public figures"); *Sheehan v. Gregoire*,

15 272 F. Supp. 2d 1135, 1142, 1149 (W.D. Wash. 2003) ("true threats do not hinge on a speaker's

16 subjective intent" where "there is cause for concern when the Legislature enacts a statute

17 proscribing a type of political speech in a concerted effort to silence particular speakers").

18     By contrast, intent can and has been properly considered when analyzing challenges to

19 cyberstalking harassment statutes. Rynearson ignores the overwhelming consensus across

20 jurisdictions finding that cyberstalking statutes with a mens rea element constitutionally

21 criminalize the conduct of harassment.[4] Thus, the plain language of Wash. Rev. Code

22

23     [4] Federal courts have also upheld a similar federal cyberstalking statute which requires proof of an "intent to kill, injure, harass, intimidate, or place under surveillance" against overbreadth challenges, finding similarly that 18 U.S.C. § 2261A applies to conduct, not expression. *See United States v. Petrovic*, 701 F.3d 849, 856 (8th Cir. 2012) ("Because a substantial number of the statute's applications will not be unconstitutional, we decline to use the " 'strong medicine' of 'overbreadth[.]' "); *United States v. Osinger*, 753 F.3d 939 (9th Cir. 2014) (agreeing with reasoning in *Petrovic* and rejecting defendant's argument that, because the statute did not define "substantial emotional distress" or "harassment," it was overbroad); *United States v. Bowker*, 372 F.3d 365, 378 (6th Cir. 2004) (rejecting facial overbreadth challenge to a prior version of the statute and stating: "We fail to see how a law that prohibits interstate travel with the intent to kill, injure, harass or intimidate has a substantial sweep of

DEFENDANTS' MOTION TO DISMISS
AND OPPOSITION TO PLAINTIFF'S
RENEWED MOTION FOR
PRELIMINARY INJUNCTION --
NO. 3:17-CV-05531-RBL

14

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA 98504-0100
(360) 753-6200

§ 9.61.260(1)(b) and state courts' narrow construction of an identical intent provision in the telephone harassment statute make clear that the cyberstalking statute targets harassing conduct, making its legitimate sweep considerable both in an absolute sense and judged in relation to any potential overbreadth. As discussed further below, Rynearson has not even come close to meeting his burden of showing a "substantial" number of unconstitutional applications based on actual fact.

### c. Whatever hypothetical protected speech Wash. Rev. Code § 9.61.260(1)(b) may proscribe is marginal relative to its plainly legitimate sweep

The next question is whether the law burdens substantially more speech relative to the statute's plainly legitimate sweep. "[E]ven if there are marginal applications in which a statute would infringe on First Amendment values, facial invalidation is inappropriate if the 'remainder of the statute . . . covers a whole range of easily identifiable and constitutionally proscribable . . . conduct.'" *Ferber*, 458 U.S. at 770 n.25 (alterations in *Parker*) (quoting *Parker v. Levy*, 417 U.S. 733, 760 (1974)). As noted above, the cyberstalking statute criminalizes mostly conduct, and what little hypothetical speech it may reach does not render it overbroad because the statute is tailored to address concerns specific to cyberstalking conduct and the deleterious effects therefrom. Moreover, Rynearson has not shown a "realistic danger" of prosecution for any of the alleged hypotheticals. *Bd. of Airport Comm'rs of the City of Los Angeles v. Jews for Jesus, Inc.*, 482 U.S. 569, 574 (1987).

Recognizing the distinctive features of the Internet that make cyberstalking especially harmful, the Washington Legislature enacted the statute to include provisions regarding anonymity, repetitious communications, and third-party communications. Cyberstalking can

---

constitutionally protected conduct."), *vacated on other grounds*, 543 U.S. 1182 (2005), *reinstated in relevant part*, 125 Fed. App'x 701 (6th Cir. 2005); *United States v. Moreland*, 207 F. Supp. 3d 1222, 1227-28 (N.D. Okla. 2016) (federal cyberstalking law not facially overbroad because it required proof of course of conduct done with specific intent to injure, harass, or intimidate); *see also Burroughs v. Corey*, 92 F. Supp. 3d 1201, 1208 (M.D. Fla. 2015), *aff'd*, 647 Fed. App'x 967 (11th Cir. 2016) (upholding Florida's cyberstalking statute against overbreadth claim where statute regulated conduct).

DEFENDANTS' MOTION TO DISMISS
AND OPPOSITION TO PLAINTIFF'S
RENEWED MOTION FOR
PRELIMINARY INJUNCTION --
NO. 3:17-CV-05531-RBL

15

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA 98504-0100
(360) 753-6200

take many forms and due to the omnipresence of the Internet, cyberstalkers have the ability to instantly stalk and harass their victims by repeatedly sending e-mails or texts, widely dispersing messages on blogs or message boards, stalking from anywhere in the world, concealing their own identity, stealing their victim's identity, or stalking their victim through a third party.

The requirement of anonymity narrows the statute's scope and addresses the ease with which stalkers can utilize the Internet and other technologies to remain anonymous, hide, or even change identities, making it difficult for law enforcement to find and prosecute cyberstalkers while at the same time enabling cyberstalkers to use more threatening speech without fear of repercussion. *See* Nisha Ajmani, *Cyberstalking and Free Speech: Rethinking the Rangel Standard in the Age of the Internet*, 90 Or. L. Rev. 303, 314 n.75 (2011) (citing Scott Hammack, *The Internet Loophole: Why Threatening Speech On-Line Requires a Modification of the Courts' Approach to True Threats and Incitement*, 36 Colum. J.L. & Soc. Probs. 65, 83-84 (2002)). Anonymity also causes more fear and uneasiness in victims who have may have no idea who is stalking them, making it difficult to evaluate the threat. Ajmani, 90 Or. L. Rev. at 324. These were the exact concerns facing the Washington Legislature. Testimony advocating for enactment of Wash. Rev. Code § 9.61.260 stated that "[a]nonymity and randomness are the tools of the cyberstalker" who can harass victims "for any reason" and "for any length of time" making "the victim feel terrorized and alone." H.B. Rep. on Engrossed Substitute H.B. 2771, at 4, 58th Leg., Reg. Sess. (Wash. 2004). Rynearson's argument that an author's decision to remain anonymous is an aspect of protected speech is not applicable where the anonymity is solely for the purpose of harassing victims or evading law enforcement. *See* Mot. at 10:13-23.

The requirement of repetition similarly narrows the scope of the statute by targeting stalking behavior—that is, repeated harassment over some length of time. Cyberstalkers can threaten and harass victims instantaneously from virtually anywhere in the world and with more frequency than offline stalkers because the Internet is faster and cheaper than other forms of communication, such as regular mail. Ajmani, 90 Or. L. Rev. at 316. A cyberstalker could even

DEFENDANTS' MOTION TO DISMISS
AND OPPOSITION TO PLAINTIFF'S
RENEWED MOTION FOR
PRELIMINARY INJUNCTION --
NO. 3:17-CV-05531-RBL

16

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA  98504-0100
(360) 753-6200

set up his or her email account to send intimidating messages automatically and repeatedly. *Id.* at 315. Rynearson's argument that speech does not lose its protection because it is said more than once is a non-starter because passing out leaflets is not the same as stalking someone. Mot. at 10:24-11:4 (citing *Org. for a Better Austin v. Keefe*, 402 U.S. 415 (1971)).

Rynearson argues that the statute is overbroad because it criminalizes speech made to third parties. This feature of the cyberstalking statute admittedly broadens its scope but only to the extent necessary to address concerns that cyberstalkers could take on the identity of the victim, or encourage other like-minded individuals to stalk in their place. Indeed, the Washington Legislature was presented with testimony that an anonymous stalker had harassed a "constituent of the Senate and House prime sponsors" by sending malicious emails to the victim and victim's co-workers for over five years, and "pretended to be the victim in on-line chat rooms and posted her home and work phone number so that men seeking sexual liaisons could call her." S.B. Rep. on Engrossed Substitute H.B. 2771, at 2, 58th Leg., Reg. Sess. (Wash. 2004). Against this backdrop, the Legislature enacted a substitute bill that included communications to third parties. H.B. Rep. on Engrossed Substitute H.B. 2771, 58th Leg., Reg. Sess. (Wash. 2004).

Unfortunately, there are numerous examples of criminal cyberstalking behavior taking the form of communications to third parties. For example, in one case out of Maryland, the stalker used his ex-girlfriend's name and personal information to create Internet advertisements and fake social media accounts that implored men to visit the victim for sex. As a result, a number of strangers presented themselves at the victim's door seeking sexual intercourse, causing the victim terror and fear. *United States v. Sayer*, No. 2:11-CR-113-DBH, 2012 WL 1714746, at *1 (D. Me. May 15, 2012), *aff'd*, 748 F.3d 425 (1st Cir. 2014). In another case, a man took on his victim's identity and posted her phone number and address online, along with a message fantasizing about being raped. Several men went to her house, referring to the Internet solicitation that was posted in her name, and raped her. *See* Joanna Lee Mishler, *Cyberstalking: Can Communication Via the Internet Constitute a Credible Threat, and Should an Internet*

DEFENDANTS' MOTION TO DISMISS
AND OPPOSITION TO PLAINTIFF'S
RENEWED MOTION FOR
PRELIMINARY INJUNCTION --
NO. 3:17-CV-05531-RBL

17

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA 98504-0100
(360) 753-6200

*Service Provider Be Liable If It Does?*, 17 Santa Clara Computer & High Tech. L.J. 115, 116 (Dec. 2000). Another woman found a message posted on the Internet, listing her home phone number, her address, and a message that read, "[she] was available for sex anytime of the day or night." *Id.* at 116-17 (alteration in orginal). Numerous individuals called the victim in response to the posting. *Id.* at 117. In yet another example, a cyberstalker devoted a website to fuel his obsession with his victim. He chronicled her daily activities and expressed thoughts about harming and killing her, which he finally did when he murdered her at her dentist office. Neither the victim nor her family were aware of the website, which had been live for two years. *Id.* at 129-30.

As evidenced by these horrific real-life examples, a requirement that the stalker convey a threat specifically to the target would fail to reach a substantial amount of cyberstalking conduct because cyberstalkers can and have posted alarming and frightening language online or used technology to incite other individuals to commit violence against a specific person. Likewise, a requirement that the victim tell the stalker to stop (*see* Mot. at 7) would insulate criminal conduct from liability in cases where the victim is completely unaware of the stalker's activities.

Importantly, Washington courts have not applied the telephone harassment statute to situations where "there was little doubt from the circumstances of the conduct that it formed a clear and particularized political or social message very much understood by those who viewed it." *Young v. New York City Transit Auth.*, 903 F.2d 146, 153 (2d Cir. 1990); *see, e.g.*, *Bini v. City of Vancouver*, No. C16-5460 BHS, 2017 WL 2226233, at *6 (W.D. Wash. May 22, 2017) (plaintiff sent emails to Smith's family and several of her business associates with attachments and links to a blog that grossly disparaged Smith's character, claiming that she was a "fraud," "an excessive drinker," and that the injuries she sustained at the hands of her incarcerated husband were actually the result of her "own alcohol-induced rage"); *Stanley*, 200 Wash. App. at 1035 (defendant sent hundreds of messages over the course of four years threatening to kill

DEFENDANTS' MOTION TO DISMISS
AND OPPOSITION TO PLAINTIFF'S
RENEWED MOTION FOR
PRELIMINARY INJUNCTION --
NO. 3:17-CV-05531-RBL

18

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA  98504-0100
(360) 753-6200

his targets, including from accounts using a made up name, to "break [the women] down," "increase their stress," and to "scare" them (alteration in original)); *Bell*, 183 Wash. App. 1029 (conviction after defendant kicked and choked his wife, drove away, and then sent her a text message in which he called her a "bitch," and threatened to kill her). Thus, there is little danger that a person who "anonymously and repeatedly" makes electronic communications for the sole purpose of communicating a message—even one others might find objectionable—would be culpable under the statute.

And, as noted previously, a limiting construction could ameliorate any potential overbreadth concerns, as would partial severance of any unconstitutional applications; courts prefer these to facial invalidation which ought to be used "[r]arely, if ever." *Hicks*, 539 U.S. at 118-19, 124 (2003). If a particular word in the statute appears to cover both protected and unprotected speech, the correct remedy is not to "excise[] the word from the statute entirely" but to declare the application unconstitutional. *Brockett v. Spokane Arcades, Inc.*, 472 U.S. 491, 505 (1985) (severing application of obscenity statute). Here, like the statute in *Brockett*, Washington's cyberstalking statute explicitly authorizes courts to sever not just statutory provisions, but applications as well. 2004 Wash. Sess. Laws 326 ("If any provision of this act or its application to any person or circumstance is held invalid, the remainder of the act or the application of the provision to other persons or circumstances is not affected."); *see also* Mot. at 1:18-19. The fact that the statute covers both protected and unprotected speech further compels this court to reject Rynearson's facial invalidation request.

In sum, Rynearson presents a weak case for facial invalidity. The statute's legitimate sweep is considerable, and it is difficult to show a "substantial" number of unconstitutional applications. His musings on Hillary Clinton and Donald Trump's tweets, or the woman who breaks up with her boyfriend and then posts on Facebook how she feels, or criticism of local and political leaders do not satisfy this requirement because they are based on speculation and inconsistent with how the statute has been applied in Washington State. Mot. at 8. Rynearson

DEFENDANTS' MOTION TO DISMISS
AND OPPOSITION TO PLAINTIFF'S
RENEWED MOTION FOR
PRELIMINARY INJUNCTION --
NO. 3:17-CV-05531-RBL

19

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA 98504-0100
(360) 753-6200

does not—nor can he—point to a single case where the statute has been construed to criminalize his posited hypotheticals. Thus, any arguably impermissible applications of the statute amount to a tiny fraction of the materials within the statute's reach and the court "[should not] assume that the [Washington] courts will widen the possibly invalid reach of the statute by giving an expansive construction[.]" *Ferber*, 458 U.S. at 773.

### 2. Wash. Rev. Code § 9.61.260(1)(b) is not facially invalid for failure to meet intermediate or strict scrutiny

At the outset, Rynearson argues that the preliminary injunction factors are met only as to his theory that Wash. Rev. Code § 9.61.260(1)(b) is facially overbroad, and makes no argument regarding the statute's alleged invalidity due to failure to meet strict scrutiny. *See Ashcroft v. ACLU*, 535 U.S. 564, 585-86 (2002) (overbreadth differs from strict scrutiny; majority of the court found statute was not overbroad in violation of the First Amendment, but expressed no view on whether statue would survive strict scrutiny).[5] Thus, Rynearson has waived his right to an injunction based on his alleged theory that Washington's cyberstalking statute fails strict scrutiny. *Cf. Thalheimer v. City of San Diego*, 645 F.3d 1109, 1115 (9th Cir. 2011) (district court "properly considered the remaining *Winter* elements only as to claims it concluded were meritorious").

Further, Rynearson's facial challenge based on this theory fails because he has not shown that the statute can never be validly applied. An ordinance may be facially unconstitutional in one of two ways: "either [ ] it is unconstitutional in every conceivable application, or [ ] it seeks

---

[5] Justice Thomas delivered the opinion of the Court in *Ashcroft* and, for this particular point, was joined by Justices Rehnquist, O'Connor, Scalia, and Breyer. Justice Stevens' dissenting opinion also affirms that overbreadth is a separate inquiry from whether a law survives strict scrutiny. *See Ashcroft*, 535 U.S. at 610 n.6 (Stevens, J., dissenting) (noting that Justice Kennedy's concerns went mostly to "whether [the law] survives strict scrutiny, not overbreadth"); *see also Ashcroft v. Free Speech Coal.*, 535 U.S. 234, 263 (2002) (O'Connor, J., dissenting in part) (answering question of whether statute fails strict scrutiny prior to addressing overbreadth claim); *S.O.C., Inc. v. Cty. of Clark*, 152 F.3d 1136, 1142 n.5, *as amended by*, 160 F.3d 541 (9th Cir. 1998) (concluding that ordinance was overbroad and therefore declining to reach the issue of whether ordinance constituted a restriction on commercial speech triggering strict scrutiny review); *Klein v. San Diego Cty.*, 463 F.3d 1029, 1038 (9th Cir. 2006) (analyzing the two theories separately).

DEFENDANTS' MOTION TO DISMISS
AND OPPOSITION TO PLAINTIFF'S
RENEWED MOTION FOR
PRELIMINARY INJUNCTION --
NO. 3:17-CV-05531-RBL

20

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA 98504-0100
(360) 753-6200

to prohibit such a broad range of protected conduct that it is unconstitutionally 'overbroad.'" *Members of the City Council of the City of Los Angeles*, 466 U.S. at 796; *see also id.* at 796 n.15 (citing cases); *accord Foti v. City of Menlo Park*, 146 F.3d 629, 635 (9th Cir. 1998), *as amended on denial of reh'g* (July 29, 1998). In other words, "a plaintiff whose conduct *is* protected may bring a facial challenge to a statute he contends is unconstitutional, without having to employ the overbreadth doctrine, [only] by arguing that the statute could never be applied in a valid manner and would chill the speech of others." *4805 Convoy, Inc. v. City of San Diego*, 183 F.3d 1108, 1112 n.4 (9th Cir. 1999). Rynearson does not even attempt to meet this standard and instead concedes that there are constitutional applications of the cyberstalking statute. *See* Mot. at 7 (repeated unwanted emails could be constitutionally prohibited if victim asked speaker to stop).

Rynearson's argument fails for the additional reason that the statute survives constitutional scrutiny. There are a number of reasons this Court should apply intermediate rather than strict scrutiny to Wash. Rev. Code § 9.61.260(1)(b). First, the statute is content neutral because it is not directed at particular groups or viewpoints and seeks to regulate cyberstalking behavior in an even-handed and neutral manner. *See Broadrick v. Oklahoma*, 413 U.S. 601, 616 (1973) (although breach-of-the-peace statute regulated in political expression, it was not directed at particular viewpoints and thus regulated an even-handed manner and was not overbroad). Indeed, a kind message (such as "Hey beautiful"), or a seemingly benign message (such as "I saw your daughter"), or even messages with only images could fall within the statute's reach if spoken (or typed) with the requisite intent repeatedly and anonymously.

Second, rather than targeting the content of speech, the cyberstalking statute targets the consequences of speech—or the "secondary effects." *See, e.g.*, *City of Los Angeles v. Alameda Books, Inc.*, 535 U.S. 425, 437-42 (2002) (government must have leeway to address secondary effects of speech). Specifically, the cyberstalking statute targets speech that causes "deleterious

DEFENDANTS' MOTION TO DISMISS
AND OPPOSITION TO PLAINTIFF'S
RENEWED MOTION FOR
PRELIMINARY INJUNCTION --
NO. 3:17-CV-05531-RBL

21

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA 98504-0100
(360) 753-6200

1  effects" associated with cyberstalking, and the state's interests in privacy and safety of stalking

2  victims is unrelated to the content of the speech. *See id*. at 446.

3  Third, the speech punished by the cyberstalking statute will rarely touch on matters of

4  public concern because stalking is often fueled by a pre-existing *personal* relationship or

5  conflict. *See Snyder*, 562 U.S. at 451-54 (whether the First Amendment prohibits regulation

6  largely turns on "whether speech is of public or private concern" because speech on matters of

7  public concern are at the "heart" of the First Amendment). Finally, cyberstalkers will

8  undoubtedly invade the homes of their victims through messages via cell phone, tablet, or

9  computer thereby invading victims' privacy and holding them "captive" to repeated harassing

10  messages through the use of technology. *See FCC v. Pacifica Found.*, 438 U.S. 726, 759 (1978)

11  (home is "the one place where people ordinarily have the right not to be assaulted by uninvited

12  and offensive sights and sounds"); *Frisby v. Schultz*, 487 U.S. 474, 486 (1988) ("even if some

13  such picketers have a broader communicative purpose, their activity nonetheless inherently and

14  offensively intrudes on residential privacy").

15  Applying intermediate scrutiny, Washington's cyberstalking statute furthers an

16  important or substantial governmental interest unrelated to the suppression of free speech, and

17  reaches no broader than necessary to further that interest. *See Turner Broad. Sys., Inc. v. FCC*,

18  512 U.S. 622, 661-62 (1994). The rise of the Internet created a new medium for stalking

19  behavior. The resulting harm to stalking victims spans a wide spectrum, leaving victims scared,

20  traumatized, and depressed for years after stalking incidents. "Cyberstalking can make a victim

21  feel fearful, powerless, frustrated, enraged, and isolated." H.B. Rep. on Engrossed Substitute

22  H.B. 2771, at 4, 58th Leg., Reg. Sess. (Wash. 2004). To address these dangers, the Legislature

23  enacted Wash. Rev. Code § 9.61.260. And as discussed above, the statute reaches no broader

24  than necessary to further that interest. For these same reasons, even applying strict scrutiny, the

25  statute survives.

26

DEFENDANTS' MOTION TO DISMISS
AND OPPOSITION TO PLAINTIFF'S
RENEWED MOTION FOR
PRELIMINARY INJUNCTION --
NO. 3:17-CV-05531-RBL

22

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA 98504-0100
(360) 753-6200

**C. Rynearson Has Not Shown He Will Suffer Immediate Irreparable Harm**

Rynearson improperly "collapse[s the remaining *Winter* factors] into the merits" factor. *DISH Network Corp. v. FCC*, 653 F.3d 771, 776 (9th Cir. 2011). Although a colorable First Amendment claim "raises the specter" of irreparable harm and public interest considerations, proving the likelihood of success on the merits—a showing Rynearson has not made here—is not enough to satisfy *Winter. See Vivid Entm't, LLC v. Fielding*, 774 F.3d 566, 577 (9th Cir. 2014) (citing *Stormans, Inc.*, 586 F.3d at 1138); *see also Gresham v. Picker*, 705 Fed. App'x 554, 557 (9th Cir. 2017). Even in a First Amendment case, the moving party bears the burden of meeting *all four factors*, and therefore Rynearson must separately prove irreparable injury, that the balance of equities weighs in his favor, and that an injunction would be in the public interest. *DISH Network Corp.*, 653 F.3d at 776-77.

To establish "irreparable harm," Rynearson must show "immediate threatened injury" that is non-speculative. *Caribbean Marine Servs. Co. v. Baldrige*, 844 F.2d 668, 674 (9th Cir. 1988); *Goldie's Bookstore, Inc. v. Superior Court of California*, 739 F.2d 466, 472 (9th Cir. 1984). This requirement is strictly applied where, as here, plaintiff seeks "injunctive relief against government actions[.]" *Orantes-Hernandez v. Thornburgh*, 919 F.2d 549, 557 (9th Cir. 1990) (when seeking injunctive relief against government actions which allegedly violate the law, "the injury or threat of injury must be both 'real and immediate,' not 'conjectural' or 'hypothetical' ") (quoting *City of Los Angeles v. Lyons*, 461 U.S. 95, 101-02 (1983)).

Here, as with Rynearson's issues of standing, there is no current, let alone immediate, threat of prosecution or harm to Rynearson. Rynearson cannot credibly allege that he faces immediate and irreparable harm due to his fear of a hypothetical criminal prosecution where a state court has already determined that he is engaged in protected speech; the Kitsap County Prosecutor has not pursued any action against Rynearson; and Attorney General Ferguson has never taken any action that would result in Rynearson being prosecuted under Wash. Rev. Code § 9.61.260(1)(b).

DEFENDANTS' MOTION TO DISMISS
AND OPPOSITION TO PLAINTIFF'S
RENEWED MOTION FOR
PRELIMINARY INJUNCTION --
NO. 3:17-CV-05531-RBL

23

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA 98504-0100
(360) 753-6200

**D.    The Balance of Equities and Public Interest Do Not Favor an Injunction**

The balance of equities and public interest considerations do not favor an injunction because there is a strong public interest in prohibiting cyberstalking conduct, and the statute can and already has been given a narrowing construction to avoid concerns that it will reach beyond that to issues of public concern.

In considering the equities, the court "must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief." *Winter*, 555 U.S. at 24. Since this case involves the government, the balance of equities factor merges with the fourth factor, public interest. *Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073, 1092 (9th Cir. 2013). Here, Wash. Rev. Code § 9.61.260(1)(b) reflects the State's considered judgment of what policies and laws would effectively protect victims of cyberstalking from harassment, violence, and invasions of privacy through electronic means. The stated purpose of the cyberstalking statute is "for the immediate preservation of the public peace, health, or safety." 2004 Wash. Sess. Laws 326; *see also* H.B. Rep. on Engrossed Substitute H.B. 2771, 58th Leg., Reg. Sess. (Wash. 2004) (noting negative effects that cyberstalking has on victims). Thus, this Court "should give due weight to the serious consideration of the public interest in this case that has already been undertaken by the responsible state officials in Washington[.]" *Stormans, Inc.*, 586 F.3d at 1140. Moreover, the statute is narrowly drawn to address issues particular to cyberstalking and the negative effects that result, and Rynearson has not shown that any person in Washington advancing political or religious rhetoric or public discussion has ever been prosecuted under Wash. Rev. Code § 9.61.260(1)(b). Where a plaintiff has "not shown a likelihood of success on the merits of [a] First Amendment claim," this fact weighs against finding the public interest favors an injunction. *Preminger v. Principi*, 422 F.3d 815, 826 (9th Cir. 2005).

DEFENDANTS' MOTION TO DISMISS
AND OPPOSITION TO PLAINTIFF'S
RENEWED MOTION FOR
PRELIMINARY INJUNCTION --
NO. 3:17-CV-05531-RBL

24

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA  98504-0100
(360) 753-6200

# IV. CONCLUSION

This Court should dismiss Rynearson's case for lack of constitutional standing. In the alternative, Rynearson has not met his burden to obtain injunctive relief and, therefore, his motion for preliminary injunction should be denied.

DATED this 26th day of October 2018.

ROBERT W. FERGUSON
*Attorney General*

*s/ Callie A. Castillo*
CALLIE A. CASTILLO, WSBA 38214
*Deputy Solicitor General*

*s/ Megan Lin*
MEGAN D. LIN, WSBA 53716
*Solicitor General's Office Fellow*

PO Box 40100
Olympia, WA 98504-0100
360-753-6200
CallieC@atg.wa.gov
MeganL@atg.wa.gov

DEFENDANTS' MOTION TO DISMISS
AND OPPOSITION TO PLAINTIFF'S
RENEWED MOTION FOR
PRELIMINARY INJUNCTION --
NO. 3:17-CV-05531-RBL

25

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA 98504-0100
(360) 753-6200

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

**CERTIFICATE OF SERVICE**

I hereby certify that on October 26, 2018, I electronically filed the foregoing document with the Clerk of the Court of the United States District Court Western District of Washington using the CM/ECF system. Service of such filing will be accomplished by the CM/ECF system upon all participants.

s/ *Stephanie N. Lindey*
STEPHANIE N. LINDEY
*Legal Assistant*

DEFENDANTS' MOTION TO DISMISS
AND OPPOSITION TO PLAINTIFF'S
RENEWED MOTION FOR
PRELIMINARY INJUNCTION  --
NO. 3:17-CV-05531-RBL

26

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA  98504-0100
(360) 753-6200