The Honorable RONALD B. LEIGHTON

**UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA**

| | |
|---|---|
| RICHARD LEE RYNEARSON, III,<br><br>Plaintiff,<br><br>v.<br><br>ROBERT FERGUSON, Attorney General of the State of Washington,<br><br>and<br><br>TINA R. ROBINSON, Prosecuting Attorney for Kitsap County,<br><br>Defendants. | NO. 3:17-cv-05531-RBL<br><br>DEFENDANTS' RESPONSE TO AMICI CURIAE ELECTRONIC FRONTIER FOUNDATION AND AMERICAN CIVIL LIBERTIES UNION OF WASHINGTON |

DEFENDANTS' RESPONSE TO AMICI CURIAE ELECTRONIC FRONTIER FOUNDATION AND AMERICAN CIVIL LIBERTIES UNION OF WASHINGTON
-- NO. 3:17-CV-05531-RBL

i

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA 98504-0100
(360) 753-6200

# TABLE OF CONTENTS

I. INTRODUCTION ..................................................................................................... 1

II. ARGUMENT .............................................................................................................. 2

    A.   Amici Have Not Shown That Wash. Rev. Code § 9.61.260(1)(b)
        Is Overbroad ..................................................................................................... 2

        1.   "Electronic Communication" Does Not Render the Statute Overbroad ............ 2

        2.   "Embarrass" Does Not Render The Statute Overbroad ..................................... 3

        3.   Far From Raising Overbreadth Concerns, the Statute's Intent
            Requirement Narrows Its Reach ........................................................................ 4

        4.   The Requirement That the Electronic Communication
            Be Made "Anonymously or Repeatedly" Does Not Render
            The Statute Overbroad ...................................................................................... 5

        5.   Lack Of An Express Harm Requirement Does Not Render
            The Statute Overbroad ...................................................................................... 6

    B.   The Court Should Reject Amici's New Argument That Wash. Rev.
        Code § 9.61.260(1)(b) Is Unconstitutionally Vague .................................................. 7

    C.   Internet Harassment Is Similar To Telephone Harassment For Purposes
        Of This Constitutional Analysis ............................................................................... 12

III. CONCLUSION ........................................................................................................ 13

DEFENDANTS' RESPONSE TO AMICI
CURIAE ELECTRONIC FRONTIER
FOUNDATION AND AMERICAN CIVIL
LIBERTIES UNION OF WASHINGTON
-- NO. 3:17-CV-05531-RBL

ii

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA 98504-0100
(360) 753-6200

# TABLE OF AUTHORITIES

**Cases**

*Artichoke Joe's Cal. Grand Casino v. Norton*,
  353 F.3d 712 (9th Cir. 2003) .................................................................................................. 8

*Ashcroft v. ACLU*,
  542 U.S. 656 (2004) ................................................................................................................ 2

*Boos v. Barry*,
  485 U.S. 312 (1988) ................................................................................................................ 3

*Boyce Motor Lines, Inc. v. United States*,
  342 U.S. 337 (1952) .............................................................................................................. 10

*Buckley v. Am. Constitutional Law Found., Inc.*,
  525 U.S. 182 (1999) ................................................................................................................ 6

*Church of Am. Knights of Ku Klux Klan v. City of Erie*,
  99 F. Supp. 2d 583 (W.D. Pa. 2000) ..................................................................................... 11

*City of Chicago v. Morales*,
  527 U.S. 41 (1999) .................................................................................................................. 9

*City of Seattle v. Huff*,
  11 Wash. 2d 923, 767 P.2d 572 (1989) ................................................................................. 10

*Cmty. Ass'n for Restoration of the Env't, Inc. v. Cow Palace, LLC*,
  No. 13-CV-3016-TOR, 2015 WL 12868223 (E.D. Wash. Jan. 14, 2015) .............................. 1

*Colautti v. Franklin*,
  439 U.S. 379 (1979) ................................................................................................................ 9

*Colten v. Kentucky*,
  407 U.S. 104 (1972) ................................................................................................................ 8

*Doe v. 2TheMart.com Inc.*,
  140 F. Supp. 2d 1088 (W.D. Wash. 2001) .............................................................................. 6

*Fisher v. Kealoha*,
  976 F. Supp. 2d 1200 (D. Haw. 2013) .................................................................................... 1

*Galloway v. State*,
  365 Md. 599, 781 A.2d 851 (2001) ....................................................................................... 11

*Hustler Magazine, Inc. v. Falwell*,
  485 U.S. 46 (1988) .................................................................................................................. 3

DEFENDANTS' RESPONSE TO AMICI
CURIAE ELECTRONIC FRONTIER
FOUNDATION AND AMERICAN CIVIL
LIBERTIES UNION OF WASHINGTON
-- NO. 3:17-CV-05531-RBL

iii

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA 98504-0100
(360) 753-6200

*Intermountain Fair Housing Council v. Boise Rescue Missions Ministries*,
 657 F.3d 988 (9th Cir. 2011) ............................................................................................. 1

*McIntyre v. Ohio Elections Comm'n*,
 514 U.S. 334 (1995) .......................................................................................................... 6

*Members of City Council of Los Angeles v. Taxpayers for Vincent*,
 466 U.S. 789 (1984) .......................................................................................................... 7

*NAACP v. Claiborne Hardware Co.*,
 458 U.S. 886 (1982) .......................................................................................................... 3

*New York Times Co. v. Sullivan*,
 376 U.S. 254 (1964) .......................................................................................................... 3

*New York v. Ferber*,
 458 U.S. 747 (1982) .......................................................................................................... 4

*People v. Ewing*,
 76 Cal. App. 4th 199, 90 Cal. Rptr. 2d 177 (1999),
 *as modified on denial of reh'g* (Dec. 2, 1999) ............................................................... 11

*People v. Marquan M.*,
 24 N.Y.3d 1, 19 N.E.3d 480 (2014) .................................................................................. 4

*People v. Stuart*,
 100 N.Y.2d 412, 797 N.E.2d 28 (2003) .......................................................................... 10

*People v. Sucic*,
 401 Ill. App. 3d 492, 928 N.E.2d 1231 (2010) ............................................................... 11

*Screws v. United States*,
 325 U.S. 91 (1945) ............................................................................................................ 9

*State v. Alexander*,
 76 Wash. App. 830, 888 P.2d 175 (1995) ......................................................................... 9

*State v. Alphonse*,
 142 Wash. App. 417, 174 P.3d 684 (2008) .................................................................... 10

*State v. Bishop*,
 368 N.C. 869, 787 S.E.2d 814 (2016) ........................................................................... 2, 4

*State v. Bryan*,
 259 Kan. 143, 910 P.2d 212 (1996) ................................................................................ 11

*State v. Dyson*,
 74 Wash. App. 237, 872 P.2d 1115 (1994) .................................................................. 5, 12

*State v. Flores*,
 164 Wn.2d 1, 86 P.3d 1038 (2008) ................................................................................... 3

DEFENDANTS' RESPONSE TO AMICI
CURIAE ELECTRONIC FRONTIER
FOUNDATION AND AMERICAN CIVIL
LIBERTIES UNION OF WASHINGTON
-- NO. 3:17-CV-05531-RBL

iv

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA 98504-0100
(360) 753-6200

*State v. Richards*,
  127 Idaho 31 896 P.2d 357 (Ct. App. 1995) ............................................................................ 11

*State v. Saunders*,
  302 N.J. Super. 509, 695 A.2d 722 (Ct. App. Div. 1997) ...................................................... 11

*Survivors Network of Those Abused by Priests, Inc. v. Joyce*,
  779 F.3d 785 (8th Cir. 2015) .................................................................................................... 6

*Talley v. California*,
  362 U.S. 60 (1960) .................................................................................................................... 6

*Terminiello v. City of Chicago*,
  337 U.S. 1 (1949) ...................................................................................................................... 4

*Turner Broadcasting System, Inc. v. FCC*,
  512 U.S. 622 (1994) .................................................................................................................. 7

*United States v. Alvarez*,
  567 U.S. 709 (2012) .................................................................................................................. 7

*United States v. Bowker*,
  372 F.3d 365 (6th Cir. 2004) .................................................................................................. 11

*United States v. Conlan*,
  786 F.3d 380 (5th Cir. 2015) .................................................................................................. 11

*United States v. Gonzalez*,
  905 F.3d 165 (3d Cir. 2018) ................................................................................................... 10

*United States v. Osinger*,
  753 F.3d 939 (9th Cir. 2014) ............................................................................................. 8, 11

*United States v. Petrovic*,
  701 F.3d 849 (8th Cir. 2012) .................................................................................................. 11

*United States v. Saver*,
  748 F.3d 425 (1st Cir. 2014) .................................................................................................. 11

*United States v. Shrader*,
  675 F.3d 300 (4th Cir. 2012) ............................................................................................ 10, 11

*United States v. Williams*,
  553 U.S. 285 (2008) ............................................................................................................. 2-4

*United States. v. Gementera*,
  379 F.3d 596 (9th Cir. 2004) .................................................................................................... 1

*Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*,
  455 U.S. 489 (1982) ................................................................................................................ 10

DEFENDANTS' RESPONSE TO AMICI
CURIAE ELECTRONIC FRONTIER
FOUNDATION AND AMERICAN CIVIL
LIBERTIES UNION OF WASHINGTON
-- NO. 3:17-CV-05531-RBL

v

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA  98504-0100
(360) 753-6200

*Ward v. Rock Against Racism*,
  491 U.S. 781 (1989)..................................................................................................... 8

*Zwickler v. Koota*,
  389 U.S. 241 (1967)..................................................................................................... 8

**Constitutional Provisions**

U.S. Const amend. I............................................................................................... 2- 3, 5, 8

U.S. Const. amend. V ................................................................................................... 8

U.S. Const. amend. XIV ................................................................................................ 8

**Statutes**

Wash. Rev. Code § 9.61.260(1)................................................................................... 3, 7

Wash. Rev. Code § 9.61.260(1)(b) .............................................................1-2, 4, 7-8, 10, 13

**Other Authorities**

Webster's Third New International Dictionary of the English Language (2002) ................... 3, 9

DEFENDANTS' RESPONSE TO AMICI
CURIAE ELECTRONIC FRONTIER
FOUNDATION AND AMERICAN CIVIL
LIBERTIES UNION OF WASHINGTON
-- NO. 3:17-CV-05531-RBL

vi

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA  98504-0100
(360) 753-6200

## I. INTRODUCTION

Amici Curiae Electronic Frontier Foundation and American Civil Liberties Union of Washington assert overbreadth arguments about Washington's cyberstalking law already made by Plaintiff Rynearson and refuted by the Defendants Attorney General Ferguson and Kitsap County Prosecutor Robinson. *See* Defs.' Mot. Dismiss & Opp. Mot. Prelim. Inj. at 3-20 (Dkt. No. 53). Such repetition is not helpful to the Court. *Cf. Cmty. Ass'n for Restoration of the Env't, Inc. v. Cow Palace, LLC*, No. 13-CV-3016-TOR, 2015 WL 12868223 (E.D. Wash. Jan. 14, 2015). Amici also raise a new vagueness claim not asserted or argued by Rynearson, which this Court should decline to consider as improper. *See Fisher v. Kealoha*, 976 F. Supp. 2d 1200, 1209 n.14 (D. Haw. 2013) (citing *United States. v. Gementera*, 379 F.3d 596, 607-08 (9th Cir. 2004); *Intermountain Fair Housing Council v. Boise Rescue Missions Ministries*, 657 F.3d 988, 996 n.6 (9th Cir. 2011)).

In any event, this Court can reject Amici's arguments. Amici attack individual components of Wash. Rev. Code § 9.61.260(1)(b) as overbroad and vague while ignoring the actual scope, context, and fair application of the law. When properly construed as prohibiting stalking conduct made through electronic means, the statute's plainly legitimate sweep overshadows any potential reach toward protected speech. Likewise, the ordinary meaning of Wash. Rev. Code § 9.61.260(1)(b)'s statutory terms and a common sense understanding of the crime the statute intends to prevent (i.e., stalking) provide adequate notice and prevent arbitrary enforcement. In sum, Washington's cyberstalking statute is a constitutionally viable means to protect victims from criminal conduct achieved online and through other modes of electronic communication. This Court should reject Rynearson and Amici's claims to the contrary.

DEFENDANTS' RESPONSE TO AMICI CURIAE ELECTRONIC FRONTIER FOUNDATION AND AMERICAN CIVIL LIBERTIES UNION OF WASHINGTON -- NO. 3:17-CV-05531-RBL

1

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA 98504-0100
(360) 753-6200

## II. ARGUMENT

### A. Amici Have Not Shown That Wash. Rev. Code § 9.61.260(1)(b) Is Overbroad

#### 1. "Electronic Communication" Does Not Render the Statute Overbroad

Amici argue that the statute is facially overbroad because "electronic communication" is defined broadly to include "internet-based communications" which are subject to First Amendment protections. Amicus Br. at 2, 4. But just because the First Amendment protects online speech does not mean Wash. Rev. Code § 9.61.260(1)(b) is overbroad if a substantial number of its applications are constitutional. *United States v. Williams*, 553 U.S. 285, 292 (2008). As the State Defendants have shown, the plainly legitimate sweep of the cyberstalking statute is wide compared to any alleged overbreadth. *See* Dkt. No. 53, at 9-15. Amici have not shown otherwise.

Moreover, the cases cited by Amici are inapposite as they concern enactment of a blanket prohibition on Internet speech after Congress explicitly found that there was a less restrictive and more effective alternative (*Ashcroft v. ACLU*, 542 U.S. 656, 666-68 (2004)), and a content-based restriction on Internet speech that was found to sweep too broadly because the state advocated for a broad interpretation of the intent requirement (*State v. Bishop*, 368 N.C. 869, 875-79, 787 S.E.2d 814 (2016)). Here, there is no blanket prohibition on Internet speech and the statute is tailored to address unique attributes of electronic modes of communication that make it easier for cyberstalkers to reach their victims repeatedly from anywhere at any time. *See* Dkt. No. 53, at 12, 15-17. Moreover, the State has not advocated for a broad interpretation of the statute—in fact, quite the opposite. *See* Dkt. No. 53, at 10-11. Thus, while "electronic communications" includes many modes of communications, Wash. Rev. Code § 9.61.260(1)(b) properly proscribes only a small subset of repeated or anonymous communications specifically made with the intent to harass, intimidate, torment, or embarrass another person.

DEFENDANTS' RESPONSE TO AMICI
CURIAE ELECTRONIC FRONTIER
FOUNDATION AND AMERICAN CIVIL
LIBERTIES UNION OF WASHINGTON
-- NO. 3:17-CV-05531-RBL

2

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA 98504-0100
(360) 753-6200

## 2. "Embarrass" Does Not Render the Statute Overbroad

Amici argue that the "embarrass" provision sweeps too broadly because the First Amendment protects messages intended to embarrass. Amicus Br. at 3-5. But "a single word in a statute should not be read in isolation. Rather, the meaning of a word may be indicated or controlled by reference to associated words." *State v. Flores*, 164 Wash. 2d 1, 12, 186 P.3d 1038 (2008). "In applying this principle to determine the meaning of a word in a series, a court 'should take into consideration the meaning naturally attaching to them from the context . . . .'" *Id.*; *accord Williams*, 553 U.S at 294 (recognizing words can be given more precise content by the neighboring words with which they are associated).

Here, "embarrass" is part of a series of scienter requirements, appearing next to "harass, intimidate, [and] torment." Wash. Rev. Code § 9.61.260(1). And its dictionary definition includes "to place in doubt, perplexity or difficulties," as well as "to hamper or impede the movement or freedom of movement of a person." See Dkt. No. 53, at 11 (citing *Embarrass*, Webster's Third New International Dictionary of the English Language 739 (2002)). Read in context with the other terms, "embarrass" can be narrowly construed to proscribe unwanted harassment and stalking conduct intended to restrain the freedom of the victim.

The cases cited by Amici hold that citizens must tolerate insulting or embarrassing speech in order to further "public debate" on issues of public importance—not to enable cyberstalkers to harm their intended victims. *Boos v. Barry*, 485 U.S. 312, 322 (1988) (regulating signs critical of government and governmental policies); *Hustler Magazine, Inc. v. Falwell*, 485 U.S. 46, 53 (1988) (First Amendment protects "public debate about public figures"); *NAACP v. Claiborne Hardware Co.*, 458 U.S. 886, 909-10 (1982) (names of nonparticipants in boycott were read out loud to urge their participation; court found that this type of speech does not lose protection simply because it might embarrass others); *New York Times Co. v. Sullivan*, 376 U.S. 254, 270 (1964) ("we consider this case against the background of a profound national commitment to the principle that debate on public issues should be uninhibited, robust, and wide-open, and that it

DEFENDANTS' RESPONSE TO AMICI
CURIAE ELECTRONIC FRONTIER
FOUNDATION AND AMERICAN CIVIL
LIBERTIES UNION OF WASHINGTON
-- NO. 3:17-CV-05531-RBL

3

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA 98504-0100
(360) 753-6200

may well include vehement, caustic, and sometimes unpleasantly sharp attacks on government and public officials"); *Terminiello v. City of Chicago*, 337 U.S. 1, 4 (1949) (speech to over eight hundred persons in an auditorium in Chicago protected because the "vitality of civil and political institutions in our society depends on free discussion"). Accordingly, the reasoning in those cases does not apply here.

Finally, Amici's hypotheticals regarding "embarrassing" communications are irrelevant because they do not concern electronic communications made anonymously or repeatedly and therefore do not fall within the statute challenged in this case (Wash. Rev. Code § 9.61.260(1)(b)). *See* Amicus Br. at 4-5. They are also entirely unlike how the statute has been applied in Washington State. *See Williams*, 553 U.S. at 301 (in determining whether a statute's alleged overbreadth is substantial, courts consider a statute's application to real-world conduct, not "fanciful hypotheticals"). Amici do not point to a single case where the statute has been construed to criminalize their posited hypotheticals or anything remotely similar. Thus, any arguably impermissible applications of the statute to speech intended to "embarrass" is outweighed by the statute's plainly legitimate reach and the court should not "assume that [Washington] courts will widen the possibly invalid reach of the statute by giving an expansive construction[.]" *New York v. Ferber*, 458 U.S. 747, 773 (1982).

### 3. Far From Raising Overbreadth Concerns, the Statute's Intent Requirement Narrows Its Reach

Amici repeat Plaintiff's argument that the statute is overbroad because it criminalizes speech made with the intent to "harass, intimidate, [or] torment." Amicus Br. at 5-6. To support this argument, Amici ignore Washington authority construing an identical intent provision in the telephone harassment statute and instead cite cases from other jurisdictions construing statutes with broader intent requirements. *See Bishop*, 368 N.C. at 879 (reading intent provision broadly where the state advocated for broad definitions of "intimidate" and "torment"); *People v. Marquan M.*, 24 N.Y.3d 1, 9, 19 N.E.3d 480 (2014) ("the provision pertains to electronic

DEFENDANTS' RESPONSE TO AMICI
CURIAE ELECTRONIC FRONTIER
FOUNDATION AND AMERICAN CIVIL
LIBERTIES UNION OF WASHINGTON
-- NO. 3:17-CV-05531-RBL

4

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA 98504-0100
(360) 753-6200

communications that are meant to 'harass, annoy . . . taunt . . . [or] humiliate' any person or entity, not just those that are intended to 'threaten, abuse . . . intimidate, torment' ") (alterations in original).

As explained more fully in the opposition to the motion for preliminary injunction, Washington courts have found that intent to "harass, intimidate, torment, or embarrass" does not render the telephone harassment statute overbroad and there is no reason to construe the intent provision in the cyberstalking statute broader where the plain language is identical, the terms are susceptible to a narrower construction, and both statutes are clearly intended to target harassing conduct. *See* Dkt. No. 53, at 12-13. Thus, like the telephone harassment statute, the intent provision in the cyberstalking statute does not render it overbroad but instead narrows it to reach primarily—if not solely—the conduct of *making* harassing electronic communications. *Cf. State v. Dyson*, 74 Wash. App. 237, 243, 245 n.5, 872 P.2d 1115 (1994) (telephone harassment statute "is clearly directed against specific conduct—making telephone calls with the intent to harass, intimidate, or torment another").

**4. The Requirement That the Electronic Communication Be Made "Anonymously or Repeatedly" Does Not Render The Statute Overbroad**

Next, Amici repeat yet another of Plaintiff's argument that the statute is overbroad because it criminalizes anonymous and repeated speech—both of which have found First Amendment protection in other contexts. Amicus Br. at 6-8. But as the State has explained, these requirements focus the statute's scope by targeting stalking conduct, and are narrowly tailored to address the ease with which cyberstalkers can stalk and harass their victims by repeatedly sending e-mails or texts, widely dispersing messages on blogs or message boards, stalking from anywhere in the world, concealing their own identity, stealing their victim's identity, or stalking their victim through a third party. *See* Dkt. No. 53, at 15-17.

Indeed, Amici's cited cases confirm that the policies behind protecting anonymous speech are not at issue here because cyberstalking is not an "honorable tradition of advocacy [or]

DEFENDANTS' RESPONSE TO AMICI
CURIAE ELECTRONIC FRONTIER
FOUNDATION AND AMERICAN CIVIL
LIBERTIES UNION OF WASHINGTON
-- NO. 3:17-CV-05531-RBL

5

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA 98504-0100
(360) 753-6200

of dissent," and protecting the anonymity of cyberstalkers does not "protect unpopular individuals from retaliation—and their ideas from suppression—at the hand of an intolerant society." *McIntyre v. Ohio Elections Comm'n*, 514 U.S. 334, 357 (1995) (anonymous pamphleteering); *see also Talley v. California*, 362 U.S. 60, 64 (1960) (anonymous distribution of handbills); *John Doe v. 2TheMart.com Inc.*, 140 F. Supp. 2d 1088, 1092 (W.D. Wash. 2001) (protection extends to Internet specifically because through the use of online speech, any person "can become a pamphleteer"); *Buckley v. Am. Constitutional Law Found., Inc.*, 525 U.S. 182 (1999) (protecting anonymous solicitation of ballot access signatures). While "[a]nonymous pamphlets, leaflets, brochures and even books have played an important role in the progress of mankind" the same is not true for cyberstalking or any type of stalking for that matter. *Talley*, 362 U.S. at 64.

Likewise, the argument that speech does not lose its protection because it is said "repeatedly" is a non-starter because gathering outside a Catholic church to address sexual abuse by priests and other "matters of public concern" is not the same as stalking someone. *See* Amicus Br. at 8 (citing *Survivors Network of Those Abused by Priests, Inc. v. Joyce*, 779 F.3d 785 (8th Cir. 2015)). And contrary to Amici's argument, the State does have a compelling interest in banning repeated electronic communications intended to harass victims. *See* Amicus Br. at 8. And the mere fact that recipients could block repeat messages is not sufficient because a sender could instantly create a new phone number, email address, blog, webpage, or other forum to continue sending harassing messages. Thus, the anonymity and repetition requirements do not raise overbreadth concerns and instead are narrowly tailored to proscribe online stalking behavior.

**5. Lack Of An Express Harm Requirement Does Not Render The Statute Overbroad**

Amici argue that the statute is overboard because it lacks a harm requirement. Amicus Br. at 8-9. To support this argument, Amici cite *Turner Broadcasting System, Inc. v. FCC*, 512

DEFENDANTS' RESPONSE TO AMICI CURIAE ELECTRONIC FRONTIER FOUNDATION AND AMERICAN CIVIL LIBERTIES UNION OF WASHINGTON -- NO. 3:17-CV-05531-RBL

6

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA 98504-0100
(360) 753-6200

U.S. 622, 664 (1994). However, this passage in *Turner Broadcasting* addresses the government's burden of showing that its asserted interest in passing a statute or regulation is to protect against real, non-conjectural harms. Here, there is no real dispute that the cyberstalking statute was enacted to protect cyberstalking victims against the real harms associated with cyberstalking. And Justice Breyer's concurrence in *United States v. Alvarez*, 567 U.S. 709 (2012), supports the State's argument that Wash. Rev. Code § 9.61.260(1)(b)—though not explicitly requiring proof of injury—is targeted to protect against "a subset of [cyberstalking behavior] where specific harm is more likely to occur." *Id*. at 736 (Breyer, J., concurring) (discussing different types of statutes that require some likelihood of harm).

In sum, Wash. Rev. Code § 9.61.260(1)(b)'s plainly legitimate sweep is considerable because it regulates primarily the conduct of harassment and stalking, as evidenced by the specific intent provision in the statute, which mirrors the intent provision in the telephone harassment statute and requires proof of an "intent to harass, intimidate, torment, or embarrass any other person." Wash. Rev. Code § 9.61.260(1). "[T]he mere fact that one can conceive of some impermissible applications of a statute is not sufficient to render it susceptible to an overbreadth challenge." *Members of City Council of Los Angeles v. Taxpayers for Vincent*, 466 U.S. 789, 800 (1984). Rather, "there must be a realistic danger that the statute itself will significantly compromise recognized First Amendment protections of parties not before the Court for it to be facially challenged on overbreadth grounds." *Id.* at 801. Amici's recycled and largely unsupported arguments, as well as their irrelevant hypotheticals, do not meet this high burden.

**B.    The Court Should Reject Amici's New Argument That Wash. Rev. Code § 9.61.260(1)(b) Is Unconstitutionally Vague**

Amici advance a new and meritless argument that the statute is vague in violation of the due process clause. Amicus Br. at 9-11. At the outset, the court should decline to consider any vagueness challenge to the statute as it is raised only by Amici, and Amici have not demonstrated

DEFENDANTS' RESPONSE TO AMICI
CURIAE ELECTRONIC FRONTIER
FOUNDATION AND AMERICAN CIVIL
LIBERTIES UNION OF WASHINGTON
-- NO. 3:17-CV-05531-RBL

7

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA  98504-0100
(360) 753-6200

that exceptional circumstances exist. *See Artichoke Joe's Cal. Grand Casino v. Norton*, 353 F.3d 712, 719 n.10 (9th Cir. 2003) (absent "exceptional circumstances" court will not address issues raised only in amicus at district court). The overbreadth and void for vagueness doctrines are interrelated but conceptually distinct. *See Zwickler v. Koota*, 389 U.S. 241, 249-50 (1967). While the overbreadth doctrine is based on the free speech rights of the First Amendment, the void for vagueness doctrine is based on the due process protection of the Fifth and Fourteenth Amendments of the United States Constitution. Rynearson has not alleged a vagueness challenge in his complaint or otherwise argued this theory in the motion for preliminary injunction. Thus, this Court should decline to consider Section III.B of the Amicus Brief.

In any case, Wash. Rev. Code § 9.61.260(1)(b) is not unconstitutionally vague. Courts will find a statute unconstitutionally vague only "if it fails to provide a person of ordinary intelligence fair notice of what is prohibited, or is so standardless that it authorizes or encourages seriously discriminatory enforcement[.]" *United States v. Osinger*, 753 F.3d 939, 944-45 (9th Cir. 2014). The vagueness doctrine recognizes that legislatures encounter "practical difficulties in drawing criminal statutes both general enough to take into account a variety of human conduct and sufficiently specific to provide fair warning that certain kinds of conduct are prohibited." *Colten v. Kentucky*, 407 U.S. 104, 110 (1972). For this reason, notwithstanding that a statute's "standards are undoubtedly flexible, and the officials implementing them will exercise considerable discretion, perfect clarity and precise guidance have never been required even of regulations that restrict expressive activity." *Ward v. Rock Against Racism*, 491 U.S. 781, 794 (1989).

Here, an ordinary person would see that Wash. Rev. Code § 9.61.260(1)(b) proscribes a specific course of conduct that is intended to cause harm or distress to the intended victim and does not apply to public speech. In fact, it does not apply to such speech. A Washington superior court has already found that Rynearson's speech was protected and thus could not be subject to

DEFENDANTS' RESPONSE TO AMICI
CURIAE ELECTRONIC FRONTIER
FOUNDATION AND AMERICAN CIVIL
LIBERTIES UNION OF WASHINGTON
-- NO. 3:17-CV-05531-RBL

8

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA 98504-0100
(360) 753-6200

a stalking protection order brought under the cyberstalking statute. There is no reason to believe that other Washington courts would apply a different interpretation in other contexts.

Far from rendering the statute vague, both the "repeatedly" element and the requirement of specific intent sufficiently inform both citizens and law enforcement officers of what acts constitute cyberstalking. Amici argue that "repeatedly" is vague because messaging online tends to resemble real-time oral conversation. Amicus Br. at 10. But that makes no sense. "Repeatedly" is no less exact in the oral context—common sense makes clear that saying something "repeatedly" means to say it more than once, and in this context, with the intent to harass. The dictionary confirms that "repeatedly" means "recurring again and again." *Repeated*, Webster's at 1924. And a Washington court has specifically found that the definition of "repeatedly" in a telephone harassment ordinance was sufficiently "clear to persons of common intelligence" and that it means "'said, made, or done again, or again and again.'" *State v. Alexander*, 76 Wash. App. 830, 842, 888 P.2d 175 (1995) (quoting *Webster's New World Dictionary* 633 (2d ed. 1975)). "Moreover, 'repeatedly' does not invite subjective evaluation by law enforcement." *Id.* Thus, read in light of the statute as a whole, "repeatedly" means to make an electronic communication again and again for the purpose of harassing the target.

Amici next argue that the intent to "harass, intimidate, torment, or embarrass" is vague. Amicus Br. at 10-11. To the contrary, the Supreme Court has long recognized that a scienter requirement alone tends to defeat vagueness challenges to criminal statutes. *Screws v. United States*, 325 U.S. 91, 101 (1945). This is because if "the punishment imposed is only for an act knowingly done with the purpose of doing that which the statute prohibits, the accused cannot be said to suffer from lack of warning or knowledge that the act which he does is a violation of law." *Id.* at 102; *see also Gonzales v. Carhart*, 550 U.S. 124, 149 (2007) ("scienter requirements alleviate vagueness concerns"); *City of Chicago v. Morales*, 527 U.S. 41, 55 (1999) (describing impermissibly vague criminal law as one that "contains no *mens rea* requirement"); *Colautti v. Franklin*, 439 U.S. 379, 395 & n.13 (1979) ("the constitutionality of a vague statutory standard

DEFENDANTS' RESPONSE TO AMICI
CURIAE ELECTRONIC FRONTIER
FOUNDATION AND AMERICAN CIVIL
LIBERTIES UNION OF WASHINGTON
-- NO. 3:17-CV-05531-RBL

9

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA 98504-0100
(360) 753-6200

is closely related to whether that standard incorporates a requirement of *mens rea*"); *Boyce Motor Lines, Inc. v. United States*, 342 U.S. 337, 342 (1952) (requirement of specific intent does much to destroy any argument that statute is vague).

Here, the inclusion of a specific intent requirement provides notice to individuals engaging in any non-criminal Internet activities that they are not cyberstalking their targets within the meaning of Wash. Rev. Code § 9.61.260(1)(b) unless they intend to do so or knowingly do so. Amici's claim that the intent element of the statute is inadequately defined is in tension with the Supreme Court's instruction that, rather than being a source of fatal vagueness, a scienter requirement "mitigate[s] a law's vagueness, especially with respect to the adequacy of notice to the complainant that his conduct is proscribed." *Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 499 (1982).

Moreover, as with the term "repeatedly," Washington courts have already upheld this identical intent provision as sufficiently precise. *State v. Alphonse*, 142 Wash. App. 417, 438, 174 P.3d 684 (2008) (telephone harassment statute "includes a specific [intent] element which further serves to dispel any vagueness concerns"); *City of Seattle v. Huff*, 111 Wash. 2d 923, 929, 767 P.2d 572 (1989) ("intimidate," "harass" and "torment" in Seattle telephone harassment ordinance are narrowly defined "so that persons of common intelligence can ascertain when their intent falls within the ordinance's prohibitions"). Indeed, the widely-accepted understanding of what constitutes stalking has resulted in numerous unsuccessful void-for-vagueness challenges brought against state stalking laws. *See People v. Stuart*, 100 N.Y.2d 412, 418 n.4, 797 N.E.2d 28 (2003) (collecting state court decisions upholding stalking statutes, noting that vagueness challenges to stalking statutes have almost uniformly been rejected by reviewing courts).[1]

---

[1] Nearly every state and federal court faced with a vagueness challenge to stalking statutes that employ similar—if not identical—terms have concluded that these terms are not unconstitutionally vague. *United States v. Shrader*, 675 F.3d 300, 310 (4th Cir. 2012) (observing that "harass" is not an "obscure word[ ]"; "Most people would readily understand [harass] to mean 'to disturb persistently; torment, as with troubles or cares; bother continually; pester; persecute[.]"); *United States v. Gonzalez*, 905 F.3d 165 (3d Cir. 2018) (federal cyberstalking

DEFENDANTS' RESPONSE TO AMICI CURIAE ELECTRONIC FRONTIER FOUNDATION AND AMERICAN CIVIL LIBERTIES UNION OF WASHINGTON -- NO. 3:17-CV-05531-RBL

10

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA 98504-0100
(360) 753-6200

1   The two cases cited by Amici are islands in a sea of contrary authority and are in any case inapposite. *State v. Bryan*, 259 Kan. 143, 153-54, 910 P.2d 212 (1996), found that the Kansas state stalking statute was different from most other stalking statutes that had survived vagueness challenges due to its "use of subjective terms such as 'alarms' or 'annoys.'" *Id*. at 153-54. These terms are not at issue here. And *Church of American Knights of Ku Klux Klan v. City of Erie*, 99 F. Supp. 2d 583, 592 (W.D. Pa. 2000), found that an anti-mask ordinance was vague, in part because of testimony from the police department that it was "unsure how to apply the Ordinance in the context of the Klan's planned demonstration." There is no such testimony here, and in fact the superior court ruling makes clear that speech like that of Rynearson's is protected.

Amici's vagueness argument boils down to a claim that the terms "harass, intimidate, torment, or embarrass" subject a speaker to the particular sensibilities of each individual victim. Amicus Br. at 8-9. But that simply misreads the statute—the terms set forth an intent requirement, not an injury requirement. The ordinary meaning of the statutory terms and a common sense understanding of the crime the statute intends to prevent (i.e., stalking) provide

---

statute was not unconstitutionally vague as it used readily understandable terms such as "harass" and "intimidate"); *accord United States v. Conlan*, 786 F.3d 380, 385-86 (5th Cir. 2015); *United States v. Osinger*, 753 F.3d 939, 944-45 (9th Cir. 2014); *United States v. Sayer*, 748 F.3d 425, 436 (1st Cir. 2014); *United States v. Petrovic*, 701 F.3d 849, 854-56 (8th Cir. 2012); *United States v. Shrader*, 675 F.3d 300, 310 (4th Cir. 2012); *United States v. Bowker*, 372 F.3d 365, 379-83 (6th Cir. 2004); *People v. Sucic*, 401 Ill. App. 3d 492, 928 N.E.2d 1231 (2010) (requirement under state cyberstalking statute that conduct "alarms, torments, or terrorizes" the victim not vague); *Galloway v. State*, 365 Md. 599, 628, 781 A.2d 851 (2001) ("harass" is a term "commonly understood by ordinary people and, as such, provide[s] fair notice to potential offenders and adequate guidance for enforcement"); *People v. Ewing*, 76 Cal. App. 4th 199, 207, 90 Cal. Rptr. 2d 177 (1999), *as modified on denial of reh'g* (Dec. 2, 1999) ("torment" has a "clear and understandable dictionary definition"); *State v. Saunders*, 302 N.J. Super. 509, 695 A.2d 722 (Ct. App. Div. 1997) (upholding stalking statute because "annoy" is not unconstitutionally vague); *State v. Richards*, 127 Idaho 31, 38-39, 896 P.2d 357 (Ct. App. 1995) ("harass" is a word "commonly employed in ordinary conversation").

DEFENDANTS' RESPONSE TO AMICI
CURIAE ELECTRONIC FRONTIER
FOUNDATION AND AMERICAN CIVIL
LIBERTIES UNION OF WASHINGTON
-- NO. 3:17-CV-05531-RBL

11

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA 98504-0100
(360) 753-6200

1 adequate notice and prevent arbitrary enforcement. Accordingly, Amici have not shown that the cyberstalking statute is unconstitutionally vague.

### C. Internet Harassment Is Similar To Telephone Harassment For Purposes Of This Constitutional Analysis

Last, in an attempt to avoid addressing contrary authority in the State of Washington upholding the telephone harassment statute, Amici argue generally that telephones are different from the Internet. Amicus Br. at 12-13. While that may be true in some respects, the invasive features of a telephone are perhaps even more extreme in Internet communications. With the advent of the iPhone and other smart phones, online communications are just as readily accessible and just as intrusive as a phone call. But because there are myriad ways to communicate via Internet—e.g., emails, texts, Facebook posts and messages, Google voice calls, WhatsApp calls and messages, Instagram posts—online speech is in actuality likely to be more intrusive for most people. Contrary to Amici's argument, just like the phone, the Internet "presents to some people a unique instrument through which to harass and abuse others." *Dyson*, 74 Wash. App. at 244.

Amici argue that online communications are different because unlike a phone call, an online message such as a Facebook post or a blog can be directed at many people. Amicus Br. at 12-13. But because the cyberstalking statute targets messages that are intended to harass a specific person, the fact that a message may appear in a public place weighs less heavily. *See* Dkt. No. 53, at 15-16, 22. Last, Amici argue that the recipients of electronic communications can more easily avoid unwanted messages whereas the same is not true of a telephone. Amicus Br. at 13. But, in today's online society, it is all but impossible to avoid such communications. Thus, for all practical purposes, this feature does not distinguish a phone from an electric communication.

DEFENDANTS' RESPONSE TO AMICI CURIAE ELECTRONIC FRONTIER FOUNDATION AND AMERICAN CIVIL LIBERTIES UNION OF WASHINGTON -- NO. 3:17-CV-05531-RBL

12

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA 98504-0100
(360) 753-6200

## III. CONCLUSION

For these reasons, this Court should reject Rynearson and Amici's request to enjoin Wash. Rev. Code § 9.61.260(1)(b). The cyberstalking statute is neither unconstitutionally overbroad nor vague, and should be upheld.

DATED this 9th day of November 2018.

ROBERT W. FERGUSON
*Attorney General*

*s/ Callie A. Castillo*
CALLIE A. CASTILLO, WSBA 38214
*Deputy Solicitor General*

*s/ Megan Lin*
MEGAN D. LIN, WSBA 53716
*Solicitor General's Office Fellow*

PO Box 40100
Olympia, WA 98504-0100
360-753-6200
CallieC@atg.wa.gov
MeganL@atg.wa.gov

DEFENDANTS' RESPONSE TO AMICI CURIAE ELECTRONIC FRONTIER FOUNDATION AND AMERICAN CIVIL LIBERTIES UNION OF WASHINGTON -- NO. 3:17-CV-05531-RBL

13

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA 98504-0100
(360) 753-6200

# CERTIFICATE OF SERVICE

I hereby certify that on November 9, 2018, I electronically filed the foregoing document with the Clerk of the Court of the United States District Court Western District of Washington using the CM/ECF system. Service of such filing will be accomplished by the CM/ECF system upon all participants.

s/ *Stephanie N. Lindey*
STEPHANIE N. LINDEY
*Legal Assistant*

DEFENDANTS' RESPONSE TO AMICI CURIAE ELECTRONIC FRONTIER FOUNDATION AND AMERICAN CIVIL LIBERTIES UNION OF WASHINGTON -- NO. 3:17-CV-05531-RBL

14

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA 98504-0100
(360) 753-6200