HONORABLE RONALD B. LEIGHTON

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| RICHARD L. RYNEARSON, III,<br><br>　　　　　　　Plaintiff,<br><br>　v.<br><br>ROBERT FERGUSON, Attorney General of the State of Washington, and TINA R. ROBINSON, Prosecuting Attorney for Kitsap County,<br><br>　　　　　　　Defendant. | CASE NO. C17-5531RBL<br><br>ORDER GRANTING MOTION FOR PRELIMINARY INJUNCTION |

THIS MATTER is before the Court on Plaintiff Rynearson's Renewed Motion for a Preliminary Injunction[1] [Dkt. #44]. Rynearson seeks a declaration that RCW 9.61.260(1)(b) is unconstitutional under the First Amendment to the United States Constitution, as made applicable to the States through the Fourteenth Amendment. In this motion, Rynearson asks this

---

[1] The party seeking injunctive relief bears the burden of establishing that (1) he is likely to succeed on the merits; (2) he is likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in his favor; and (4) an injunction is in the public interest. *Id*. at 20. Any preliminary relief "must be tailored to remedy the specific hard alleged" and can only apply to the specific plaintiff before the Court. *McCormack v. Hiedeman*, 695 F.3d 1004, 1019 (9th Cir. 2012); *see also Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1140 (9th Cir. 2009). Moreover, "neither declaratory nor injunctive relief can directly interfere with enforcement of contested statutes or ordinances except with respect to the particular federal plaintiffs, and the State is free to prosecute others who may violate the statute." *McCormack*, 694 F.3d at 1020 (quoting *Doran v. Salem Inn, Inc.*, 422 U.S. 922, 931 (1975)).

Court to declare 9.61.260(1)(b) facially overbroad and to enjoin the defendants from enforcing this particular section as against him.

Rynearson first filed this motion for a preliminary injunction in July 2017. The Court dismissed the suit on abstention grounds under *Younger v. Harris*, 401 U.S. 37 (1971) in light of a then-pending civil protection order case in state court. In an expedited appeal, the Ninth Circuit reversed and remanded the case. *Rynearson v. Ferguson*, No. 17-35853, 2018 WL 4263253 (9th Cir. Sept. 7, 2018). In the intervening months between the District Court decision and the Ninth Circuit's order, the Kitsap County Superior Court dismissed the stalking protective order because the communication and the conduct in this case falls under the umbrella of constitutionally protected speech. No. 17-2-01463-1, 2018 WL 733811 (Wash. Super. Co., Jan. 10, 2018).

For this renewed motion, the Court has received and reviewed the memoranda from Rynearson [Dkt. #44 and #55], the memoranda from the defendants including a Motion to Dismiss [Dkt. #53 and #56], the Complaint [Dkt. #1], Brief of Amici Curiae Electronic Frontier Foundation and American Civil Liberties Union of Washington in Support of Plaintiff's Motion for Preliminary Injunction [Dkt. #52], and Defendants' Response to Amici Curiae Electronic Frontier Foundation and American Civil Liberties Union of Washington [Dkt. #54]. The Court also conducted oral argument on the issues central to this dispute. For the following reasons, the Preliminary Injunction requested by Rynearson and Amici Curiae is **GRANTED**.

## I. FACTS

Rynearson is an online author and activist who regularly writes online posts and comments to the public related to civil liberties, including about police abuse and the expansion of executive power in the wake of September 11. Rynearson's writings are often critical—and sometimes harshly so—of local public figures and government officials. These writings are well

within the traditions of independent American political discourse, and are intended both to raise the awareness of other citizens regarding the civil-liberties issues that Rynearson writes about, and to hold civic and political leaders accountable to the community through pointed criticism. This sort of expression is at the very heart of political speech which the First Amendment most strongly protects.

Many of Rynearson's online posts and comments relate to a detention provision in the National Defense Authorization Act ("NDAA") of 2012. Specifically, Section 1021, which was found for authorizing the (unconstitutional) detention of American citizens without trial under the laws of war. *See Hedges v. Obama*, 890 F. Supp. 2d 424, 458 (S.D.N.Y. 2012), *rev'd for lack of jurisdiction*, 724 F.3d 170 (2d Cir. 2013). Given his interest in indefinite-detention issues, Rynearson became interested years ago in public and civic organizations in the Seattle area that memorialize and seek to present the lessons of the Japanese-American internment in World War II, such as the Bainbridge Island Japanese-American Exclusion Memorial and Seattle-based Densho.

In the past, Rynearson has regularly posted on public Facebook pages criticizing the leadership of public and civic organizations, either because their leaders failed to condemn the NDAA or because they vocally and strongly support politicians who voted for or signed the NDAA, such as Governor Jay Inslee and former President Barack Obama. For example, in February 2017, Rynearson wrote a series of public posts on Facebook criticizing Clarence Moriwaki, the founder of the Bainbridge Island Japanese-American Exclusion Memorial ("Memorial"), for failing to criticize Governor Inslee and President Obama for voting for/signing the NDAA. The thrust of Rynearson's posts was that Moriwaki should be removed from his role as board member and de facto spokesperson for the Memorial because Moriwaki used the

1    lessons of the internment, and his role with the Memorial, to criticize Republican politicians
2    (chiefly, President Trump) in many media articles or appearances related to the Memorial, but
3    failed to criticize Democratic politicians.

4    Rynearson's posts often include invective, ridicule, and harsh language (but no profanity,
5    obscenity, or threats) intended to criticize or call into question the actions and motives of these
6    civic leaders and other public figures. He reasonably fears prosecution under the cyberstalking
7    statute for such posts. In fact, the Bainbridge Island Police Department referred a police report to
8    the Kitsap County Prosecutor finding probable cause for cyberstalking based on such critical
9    posts to and about Moriwaki. The prosecutor has not brought charges, but sent an email stating
10   that she would revisit her decision regarding charges based on Rynearson's future behavior,
11   including his future speech.

12   For a period of time, from March 2017 to January 2018, Rynearson was also subject to a
13   civil protection order imposed by the Bainbridge Island Municipal Court based on posts critical
14   of Moriwaki. *Moriwaki v. Rynearson*, No. 17-2-01463-1, 2018 WL 733811, at *12 (Wash. Sup.
15   Ct. Jan. 10, 2018). The cyberstalking statute was one of the statutes invoked by the Municipal
16   Court in imposing the protection order. *Moriwaki*, 2018 WL 733811, at *5. The order imposed
17   sharp limits on Rynearson's speech, such as barring the use of Moriwaki's name in the titles or
18   domain names of webpages. The order has now been vacated on the ground that it was
19   impermissibly based on Rynearson's constitutionally-protected speech. *Moriwaki*, 2018 WL
20   733811, at *12.

## II. ISSUES

**A.  In Light of Rynearson's Exoneration by the State Court of Violating the Cyberstalking Statute, Does He Have Standing to Challenge Washington's Law?**

**B.  Is the Cyberstalking Statute Overbroad and Unconstitutional Ruiring Injunctive Relief?**

## III. DECISION

**A.  Rynearson Has Standing to Challenge Washington's Cyberstalking Statute.**

On January 10, 2018 the Kitsap County Superior Court Reversed and Vacated the Municipal Court's decision to grant the stalking protection order and remanded the matter back to the Municipal Court for entry of an order of dismissal. Despite the order exonerating Rynearson in the State Court, he nevertheless filed this renewed motion for Preliminary Injunction. The defendants in this matter argue that Rynearson lacks standing to challenge Washington's Cyberstalking Statute. They point out that the U.S. Constitution limits the judicial power of federal courts to "cases" and "controversies." *Flast v. Cohen*, 392 U.S. 83, 94 (1968). "Standing to bring a claim is a controlling element in the definition of a case or controversy." *Alaska Right to Life Political Action Comm. v. Feldman*, 504 F.3d 840, 848 (9th Cir. 2007). "Standing requires proof (1) that the plaintiff suffered an injury in fact that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical;' (2) of a causal connection between that injury and the complained-of conduct; and (3) that a favorable decision will likely redress the alleged injury." *Id.* (quoting *Lujan v. Defs. Of Wildlife*, 504 U.S. 555, 560-61 (1992)). The plaintiff must establish a "personal stake in the outcome" so as to assure "concrete adverseness" in the controversy. *Baker v. Cerr*, 369 U.S. 186, 204 (1962).

The Supreme Court has adopted a "relaxed approach" to standing when First Amendment overbreadth is asserted, but it has done so only upon a showing that the plaintiff is "immediately in danger of sustaining a direct injury as a result of an [executive or legislative] action." *Alaska*

*Right to Life*, 504 F.3d at 851. When the plaintiff challenges the constitutionality of a statute because it may "unconstitutionally chill" the First Amendment rights of others, the plaintiff must still satisfy the "rigid constitutional requirement" of having a personal, credible injury or threat of injury from the challenged statute. *Lopez v. Gandaele*, 630 F.3d 775, 785 (9th Cir. 2010).

Rynearson argues that he can meet the necessary requirements of standing because (1) he is suffering "the constitutionally recognized injury of self-censorship," *Cal. Pro-Life Council, Inc. v. Getman*, 328 F.3d 1088, 1095 (9th Cir. 2003), (2) his intended speech arguably falls within the Statute's reach, which established a "well-founded fear that the law will be enforced," *Id.*, and (3) enjoining the local prosecution and the Attorney General would redress his injury. If the plaintiff's intended speech arguably falls within the Statute's reach, then a well-founded "fear of prosecution will . . . inure." *Cal. Pro-Life Council*, 328 F.3d at 1095.

For the reasons given in the following section, Rynearson's intended speech at least arguably falls within the Cyberstalking Statute's reach, which is enough to establish a well-founded fear of prosecution and that plaintiff is suffering an injury-in-fact that confers standing.

**B.  RCW 9.61.260(1) is Unconstitutional and Overbroad and Requires Injunctive Relief.**

In 2004, Washington enacted one of the first state statutes directly criminalizing cyberstalking. The statute provides:

> A person is guilty of cyberstalking if he or she, with intent to harass, intimidate, torment, or embarrass any other person, and under circumstances not constituting telephone harassment, makes an electronic communication to such other person or a third party:
>
> (a) Using any lewd, lascivious, indecent, or obscene words, images, or language, or suggesting the commission of any lewd or lascivious act;
>
> (b) Anonymously or repeatedly whether or not conversation occurs; or

ORDER GRANTING MOTION FOR
PRELIMINARY INJUNCTION - 6

(c) Threatening to inflict injury on the person or property of the
           person called or any member of his or her family or household.

WASH. REV. CODE § 9.61.260(1)(2018).

Rynearson's suit and motion target RCW 9.61.260(1)(b). He rightly argues that 9.61.260(1)(b) criminalizes plainly protected speech under the First Amendment. Section 9.61.260(1)(b) provides that a "person is guilty of cyberstalking if he or she, with intent to harass, intimidate, torment, or *embarrass* any other person, . . . makes an electronic communication to such other person or a third party . . . *anonymously* or *repeatedly* whether or not conversation occurs." (emphasis added).

The statute separately criminalizes electronic speech that contains "any lewd, lascivious, indecent, or obscene words, images, or language," 9.61.260(1)(a), or that "threatens to inflict injury on the person or property of the person called or any member of his or her family or household," 9.61.260(1)(c).

Over the years, the Supreme Court has enumerated certain "well-defined and narrowly limited' classes of speech that remain unprotected by the First Amendment. *See Chaplinsky v. New Hampshire*, 315 U.S. 568, 571-72 (1949). The unprotected speech is limited to, (a) obscenity, *Roth v. United States*, 354 U.S. 476; (b) defamation, *Beauharnais v. Illinois*, 343 U.S. 250, 254-255 (1952); (c) fraud, *Virginia Board of Pharmacy v. Virginia Citizens Consumer Council, Inc.*, 425 U.S. 748 (1976); (d) incitement, *Brandenbury v. Ohio*, 395 U.S. 444, 447-49 (1969); (e) true threats, *Watts v. United States*, 394 U.S. 705 (1969); and (f) speech integral to criminal conduct, *Giboney v. Expire Storate & Ice Co.*, 336 U.S. 490, 498 (1949). Speech that does not fall into these exceptions remains protected. *See United States v. Stevens*, 559 U.S. 460 (2010).

ORDER GRANTING MOTION FOR
PRELIMINARY INJUNCTION - 7

1    Section 9.61.260(1)(b)'s breadth—by the plain meaning of its words—includes protected speech that is not exempted from protection by any of the recognized areas just described. Section 9.61.260(1)(b) criminalizes a large range of non-obscene, non-threatening speech, based only on (1) purportedly bad intent and (2) repetition or anonymity. The terms "harass, intimidate, torment, or embarrass" are not defined by the statute. When statutory terms are undefined, Washington courts generally give them their ordinary meaning, including the dictionary definition. The dictionary definition of "harass" includes "to vex, trouble, or annoy continually or chronically." Webster's Third New International Dictionary, Unabridged (online ed. 2017), and the meaning of "torment" incudes "to cause worry or vexation to," *Id*. "Embarrass" means "to cause to experience a state of self-conscious distress," *Id*. As a result even public criticisms of public figures and public officials could be subject to criminal prosecution and punishment if they are seen as intended to persistently "vex" or "annoy" those public figures, or to embarrass them.

The defendants rely on two unpublished state court opinions in which the judges successfully navigated the constitutional challenges presented by Washington's cyberstalking statute by differentiating between protected and unprotected speech under the First Amendment. In the first case, *State v. Stanley*, 2017 WL 3868480 (Wash. Ct. Apps., Sept. 5, 2017), the Court affirmed a criminal conviction without wholly and directly dealing with the unconstitutionality plank of the appeal. In the second case, the Kitsap County Superior Court ruled that Rynearson's speech about Moriwaki was protected, and therefore that the cyberstalking statute should never have been employed in support of a stalking protection order against him. *Moriwaki v. Rynearson*, 2018 WL 733811 (2018). In *Stanley*, the conduct or speech (actual threat) fell clearly within the sphere of unprotected speech; *Moriwaki* demonstrates why the speech was protected.

There is a third scenario. The Municipal Court in *Moriwaki* relied on the plain meaning of the statute and issued a protection order in Moriwaki's favor, and against Rynearson. It found probable cause to enter a stalking protection order on the basis of anonymous speech intended "to harass, intimidate, torment, or *embarrass*." RCW 9.61.260(1)(b) (emphasis added). The opportunity for repeating this "plain meaning" view of the statute to criminalize protected speech calls out for a prompt curative response.

The Washington Court of Appeals in *Washington v. Stanley* was presented with a criminal convicted of nine counts of felony cyberstalking after making true threats to several women. On appeal, Stanley challenged the cyberstalking statute as unconstitutionally overbroad and vague in violation of the First Amendment. The Court's analysis focused on the criminal intent language in 9.61.260(1): "Harass, intimidate, torment, or embarrass any other person." Stanley argued that the statute is facially overbroad to the extent that it criminalizes communications made with intent to "harass" or "embarrass." The Court of Appeals looked to analogous statutes and reviewing court decisions to conclude that the term "harass" is not unconstitutionally vague. As for the "intent to embarrass" provision of the cyberstalking statute, the Court was troubled by the breadth of the language:

> Although the telephone harassment statute cases have held that the intent to embarrass is not unconstitutionally overbroad, contemporary electronically communication, social media, and internet postings are broad in scope. A variety of political and social commentary, including caustic criticism of public figures, may be swept up as an intent to embarrass someone while using rough language. Stanley's opening brief was filed prior to our Supreme Court's decision in *Trey-M*. He emphasized the true threat issue. The briefs contain a limited discussion of free speech in the context of electronic communications with intent to embarrass. In view of the limited briefing, we do not decide whether the intent to embarrass in the cyberstalking statute renders the statute unconstitutionally overbroad. Even assuming the term is

        unconstitutionally overbroad, any error is harmless beyond a reasonable doubt in this setting.

*Id*. * 9. The "setting" referred to is actual threats to kill the female cyberstalking victims. In the setting of a true threat of harassment, the speech is not protected by the First Amendment. *State v. Trey M*, 186 Wash.2d 884 (2016).

      In contrast to the controlling facts of *Stanley*, the circumstances surrounding the Rynearson stalking protective order persuaded the Superior Court judge to reverse the Municipal Court and remand the matter back to the trial court with instructions to dismiss the matter. The Superior Court correctly categorized Rynearson's speech as protected under the First Amendment. He reached his conclusions in large measure on the persuasive analysis from *U.S. v. Cassidy*, 814 F.Supp.2d 574 (Md. 2011) which declared a similar federal statute unconstitutional as applied.

      The federal stalking statute, 18 U.S.C. § 2261 A(2) (criminalized a course of conduct, with intent to harass or cause substantial emotional distress, by use of interactive computer service and in fact causes emotional distress to a person. The District Court traced the long history of protecting "anonymous" and uncomfortable and emotionally distressing speech:

> From our nation's founding, there has been a tradition of protecting anonymous speech, particularly anonymous political or religious speech. *See Watchtower Bible & Tract Society v. Village of Stratton*, 536 U.S. 150, 162, 122 S.Ct. 2080, 153 L.Ed.2d 205 (2002); *Lefkoe v. Jos. A. Bank Clothiers, Inc.*, 577 F.3d 240, 248 (4th Cir. 2009) ("Courts have typically protected anonymity under the First Amendment when claimed in connection with literary, religious, or political speech.") For example, the Federalist Papers, written by James Madison, Alexander Hamilton, and John Jay, but published under the pseudonym "Publius," are in and of themselves the best example of anonymous political speech. *See McIntrye v. Ohio Elections Comm'n*, 514 U.S. 334, 343 n. 6, 115 S.Ct. 1511, 131 L.Ed.2d 426 (1995). And the opponents of the federalists, the anti-federalists, also used pseudonyms to publish their views anonymously. *Id*. In 1960, the Supreme Court

> recognized the importance of this type of core anonymous speech stating that "leaflets, brochures and even books have played an important role in the progress of mankind [as] [p]ersecuted groups and sects from time to time throughout history have been able to criticize oppressive practices and laws either anonymously or not at all." *Talley v. California*, 362 U.S. 60, 65, 80 S.Ct. 536, 4 L.Ed.2d 559 (U.S. 1960). This is because anonymous speech allows individuals to express themselves freely without "fear of economic or official retaliation . . . [or] concern about social ostracism." *McIntyre*, 514 U.S. at 341-42, 115 S.Ct. 1511.

*Id* 581.

Moreover, the Supreme Court has consistently classified emotionally distressing or outrageous speech as protected, especially where that speech touches on matters of political, religious or public concern. This is because "in public debate our own citizens must tolerate insulting, and even outrageous, speech in order to provide 'adequate breathing space' to the freedoms protected by the First Amendment." *See Boos v. Barry*, 485 U.S. 312, 322, (1988) (citing *Hustler Magazine, Inc. v. Falwell*, 485 U.S. 46, 56, (1988)); *See also New York Times Co. v. Sullivan*, 376 U.S. 254, 270, (1964); *Snyder v. Phelps*, 562 U.S. 443, (2011) (Because the emotionally distressing "speech was at a public place on a matter of public concern, that speech is entitled to 'special protection' under the First Amendment. Such speech cannot be restricted simply because it is upsetting or arouses contempt").

The Court went on to find the speech to be protected, content-based which could not survive strict scrutiny. Because the provision in question focused only on the content of the speech and the direct impact that speech had on viewers, the provision was a content-based restriction. *United States v. Playboy Entm't Grp., Inc.*, 529 U.S. 80-3, 813 (2000). The District Court declared the provision unconstitutional as applied but deferred the question of facial unconstitutionality.

The State Court in Rynearson limited the decision to the question of protected versus unprotected speech. The Court resolved the case or controversy before it by correctly determining that the speech was protected and that it did not violate the statute's intent.

The case before this Court is a different one. Here the dispute is four square about the constitutionality of RCW 9.61.260(1)(b). Based on the record before the Court it is highly likely that in the final analysis the Court will declare the provision is unconstitutional and therefore unenforceable.

*Anonymous* speech uttered or typed with the intent to *embarrass* a person as here, is protected speech. The plain meaning of the italicized words render 9.61.260(1)(b) unconstitutional.

For the reasons given here, this Court concludes that RCW 9.61.260(1)(b) is facially unconstitutional.[2]

Dated this 22nd day of February, 2019.

_____
Ronald B. Leighton
United States District Judge

---

[2] To prevail in a facial challenge based on the First Amendment, a plaintiff must either demonstrate that "no set of circumstances exists under which [the regulation] would be valid," or that "a substantial number of its applications are unconstitutional, judged in relation to the statue's plainly legitimate sweep." *United States v. Stevens*, 559 U.S. 460, 472-73 (2010) (internal quotation marks omitted).